Rinat Klier-Erlich (State Bar No. 188933)
rerlich@zelmserlich.com
Brian T. Smith (State Bar No. 234651)
bsmith@zelmserlich.com
**ZELMS ERLICH & MACK**
20920 Warner Center Lane, Suite B
Woodland Hills, California 91367
Telephone: (480) 608-2114
Facsimile: (818) 999-9155

Attorneys for Defendants CHARLES Z. STEIN, ESQ. a/k/a CHARLIE STEIN and
DAVIDOVICH STEIN LAW GROUP, LLP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADICAL INVESTMENTS, LTD | Case No. 2:22-cv-02752-SVW-AFMx |
| Plaintiff, | Hon. Stephen V. Wilson, Crtrm 10A |
| v. | **COMPENDIUM OF EXHIBITS PART 2 TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** |
| GOOD VIBRATIONS ENTERTAINMENT, LLC; ALEX LEE MOORE, JR. a/k/a ALEX MOORE a/k/a FLEX MOORE; PRESTIGE PEGASUS, LLC; MONILADAE COLEY a/k/a MONILADAID COLEY; CHARLES Z. STEIN, ESQ. a/k/a CHARLIE STEIN; and DAVIDOVICH STEIN LAW GROUP, LLP, | **Filed Concurrently with** Notice of Motion and Motion for Judgment on the Pleadings, Request for Judicial Notice, Compendium of Exhibits Part 1, and [Proposed] Order |
| Defendants. | **DATE:** July 11, 2022 **TIME:** 1:30 p.m. **CRTRM:** 10A |
| | *Pretrial Conference: July 25, 2022* *Jury Trial: August 9, 2022* |

/ / /

/ / /

# EXHIBIT "B"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:21-cv-81761-CANNON/REINHART

RADICAL INVESTMENTS, LTD.,

      Plaintiff,

v.

GOOD VIBRATIONS ENTERTAINMENT,
LLC; ALEX LEE MOORE, JR. a/k/a ALEX
MOORE a/k/a FLEX MOORE; PRESTIGE
PEGASUS, LLC; MONILADAE COLEY a/k/a
MONILADAI D. COLEY; **CHARLES Z.
STEIN, ESQ. a/k/a CHARLIE STEIN**; and
**DAVIDOVICH STEIN LAW GROUP, LLP,**

      Defendants.

_____/

### STEIN DEFENDANTS' MOTION TO QUASH SERVICE OF SUMMONS AND DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

      Specially-Appearing Defendants, CHARLES Z. STEIN, ESQ. a/k/a CHARLIE STEIN ("Stein") and DAVIDOVICH STEIN LAW GROUP, LLP ("DSLG" and, with Stein, the "Stein Defendants"), pursuant to Local Rule 7.1, file this motion to quash service of summons and dismiss *Plaintiff's*, *First Amended Complaint Pursuant to 28 U.S.C. Diversity of Citizenship With Jury Demand* (DE # 13, the "Complaint"), based on the following:

      1.     This action was originally filed on September 17, 2021.

      2.     In response to an Order (DE # 9) from the Court requiring Plaintiff to clarify citizenship, on September 29, 2021, Plaintiff filed the Complaint.

      3.     On October 4, 2021, this Court entered its Order Requiring Combined Responses (DE # 14) which requires that the "Defendants shall submit a single combined response or separate answers" within the time period prescribed therein.

4.     On December 31, 2021, this Court entered an order granting the Stein Defendants leave of Court to file a separate response to the Complaint (DE # 29).

5.     Mr. Stein and DSLG are citizens of California and have been brought into this lawsuit despite the absence of minimum contacts with Florida.  The Stein Defendants understood the parties to the subject transaction to be located in California and St. Lucia, and the transfers of funds for the subject transaction were to/from banks in St. Lucia, California, and New York.  In fact, the nexus of this lawsuit to Florida, under any legal standard, is tenuous at best.

6.     Closely related to the above, all of the transactional documents state that the seller and buyer are located in California and St. Lucia and, furthermore, such documents set forth the parties' agreement that California law applies to any dispute which may arise thereunder.  The escrow agreement – to which Stein is a party – identifies him as a California licensee with a bank account in California.  This agreement similarly states that California law governs it.  Not the faintest reference to Florida can be found in either the purchase agreement or the escrow agreement.

7.     Second, and equally important, exercise of personal jurisdiction over the Stein Defendants would not comport with the Due Process Clause of the Fourteenth Amendment.  The Stein Defendants did not aim any purported tortious act at the citizens of Florida, nor did they cause any harm to Florida.  Mr. Stein understood the transaction in which he was the escrow agent to involve a buyer located in St. Lucia.  Additionally, the exercise of personal jurisdiction over the Stein Defendants would be inconsistent with Due Process of law, since Plaintiff has already agreed – months ago – in a settlement agreement with Stein, that "The sole venue for adjudication of any dispute or claim …" related to the matters alleged in the Complaint is the courts of Los Angeles, California. Complaint, Ex. 21, p. 3.  Plaintiff cannot, at this late hour, litigate with the Stein Defendants over whether they committed a tortious act.  Rather, the sole issue which perhaps may

be litigated between Plaintiff and the Stein Defendants is whether the settlement agreement has been performed – which issue must be litigated in the forum the Plaintiff and Mr. Stein voluntarily agreed: *i.e.*, Los Angeles, California. Certainly, this Honorable Court – and the judiciary as a whole – have a paramount interest in allowing parties to settle their own disputes and in enforcing the settlement agreements into which they have entered. This comports with Due Process of law, as well as public policy.

8. Finally, even if the Court were to find personal jurisdiction over the Stein Defendants and determine that it could adjudicate issues arising out of the settlement agreement, this case – as to the Stein Defendants – should be transferred to the United States District Court for the Central District of California on the basis of *forum non conveniens*. Plaintiff has already validated California as an appropriate forum in which to litigate any claim against the Stein Defendants by selecting it in the settlement agreement.

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ 3

Factual Background ............................................................................................................. 4

Memorandum of Law .......................................................................................................... 8

Table of Authorities ............................................................................................................ 8

The Law Governing Personal Jurisdiction.......................................................................... 8

       i.    The burden of proof. ...................................................................... 9

       ii.    Specific Jurisdiction and General Jurisdiction................................ 9

       iii.    The Due Process Clause of the Fourteenth Amendment. ............... 9

A.    There is No Basis for Specific Jurisdiction Nor General Jurisdiction over the Stein Defendants. ........................................................................... 10

B.    Personal Jurisdiction over the Stein Defendants Would Not Comport with Due Process of Law Under the Fourteenth Amendment. ..................................... 13

C.    At a Minimum, the Case Against the Stein Defendants Should be Transferred to the U.S. District Court for the Central District of California........ 18

Conclusion ......................................................................................................................... 19

## FACTUAL BACKGROUND

9.      Charles Stein resides in Los Angeles, California and is an attorney admitted to practice law in California.  He is a partner in DSLG, which has its sole office in North Hollywood, California.  Mr. Stein's legal practice consists of representing clients in litigation and transactional matters in California. Declaration of Charles Z. Stein ("Stein Decl."), ¶¶ 1-2.  He does not practice law in Florida nor in any jurisdiction other than California, which is the only jurisdiction where he is admitted to the bar.  Mr. Stein, thus, does not have an office in Florida, does not advertise in Florida, and does not have a business presence, of any nature, in Florida. Stein Decl., ¶ 2.

10.      Mr. Stein has been to Florida on only one occasion, to attend a friend's wedding in 2019.  He arrived in Florida for the wedding, attended it that same day, and departed Florida the next morning to return home to California.  In total, he was present in Florida for approximately 24 hours. Stein Decl., ¶ 3.

11.      Mr. Stein first met Alex Moore (a/k/a "Flex" Moore) through a client of Stein's and was informed by Moore that he was the CEO of Good Vibrations Entertainment ("GVE") and that this company was located in Santa Monica, California.  Mr. Stein has meet Mr. Moore in-person on only one occasion and that was in Southern California.  At that time, Mr. Stein understood Mr. Moore to be living in Los Angeles, California. Stein Decl., ¶ 4.

12.      Mr. Moore asked Mr. Stein in April 2021 if he would be willing to serve as an escrow agent for transactions involving the sale of the COVID-19 vaccine.  He advised Mr. Stein that Stein would hold funds in his law firm's bank account, as a neutral agent of the buyer and seller, and disburse these funds from the same account pursuant to escrow instructions.  Mr. Stein agreed to serve as an escrow agent for such a transaction and that the funds would be held in his bank account at Bank of the West, at 9401 Wilshire Boulevard, Beverly Hills, California.  Based

thereon, Mr. Stein would receive a fee from the funds held in his account, pursuant to the terms of the escrow agreement of the buyer and seller. Stein Decl., ¶ 5.

13.     Plaintiff alleges that the Stein Defendants committed tortious acts in Florida and conspired with co-defendants. Complaint, ¶¶ 18 & 19.  In his communications with Mr. Moore concerning his role as an escrow agent, Mr. Stein communicated with Moore by phone, in addition to by email.  When Mr. Stein called Mr. Moore, he called him at a cell phone with area code "(310)" which Stein knew to be the area code for West Los Angeles, California, including Santa Monica, California where he had been told Good Vibrations has its office. Stein Decl., ¶¶ 4 & 6.

14.     Mr. Moore then introduced Mr. Stein to Olivia Watson, who advised Stein that she was an attorney representing a company located in the island nation of St. Lucia, known as Radical Investments, Ltd. ("RIL") and that RIL would be the buyer of the COVID-19 vaccines in the transaction wherein GVE would be acting as the intermediatory for the manufacturer.  Mr. Stein understood that Ms. Watson resided in and practiced law in St. Lucia.  Furthermore, she advised that RIL was buying the vaccines on behalf of the government of the country of Barbados. Thereafter, RIL and GVE entered into a sales and purchase agreement (the "purchase agreement") for the sale of COVID-19 vaccines by GVE, as the seller, and RIL, as the buyer.  The Stein Defendants were not involved in drafting the purchase agreement. Stein Decl., ¶ 7.

15.     The Stein Defendants' only involvement in the subject transaction was as the escrow agent.  In that regard, Mr. Stein agreed to be the escrow agent relating to the purchase agreement based on instructions that were provided to him.  He did not draft these instructions and does not know who did.  The purchase agreement includes as an attachment thereto an escrow and paymaster agreement ("escrow agreement") which is signed by GVE as seller; RIL as buyer; and Mr. Stein as escrow agent/paymaster.  RIL is represented in the agreement to be a St. Lucia company; GVE is represented in the agreement as a Santa Monica, California company; and DSLG

is represented in the agreement as a California licensee. The escrow agreement outlines Mr.

Stein's function as the escrow agent. Choice of law in the escrow agreement, paragraph 4, is

California, as it states:

> Choice of Law. All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the exhibits and schedules hereto shall be governed by, and construed in accordance with, the laws of the State of California without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of California or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of California.

After the purchase agreement and the escrow agreement were executed, there was a deposit of

$12.2 million into Mr. Stein's bank account at Bank of the West in Beverly Hills, California. Stein

Decl. ¶ 8 and Exhibit A thereto, ¶ 4.

16.     Plaintiff contends that the Stein Defendants made misrepresentations to it

concerning the payment of funds from the escrow account and were negligent with respect to the

payment of such funds. Complaint, ¶¶ 263, 266-267, 276, 379-380 and 386. However, the Stein

Defendants' communications with RIL were directed to St. Lucia and the intended beneficiary of

the subject transaction was the country of Barbados. Complaint, ¶¶ 380 and 386. When Mr. Moore

introduced Mr. Stein to Ms. Watson, Moore set up conference calls between the three of them

which took place through the app known as "What's App," an app for messaging and calling

to/from cell phones in international locations. When Mr. Stein was on these conference calls, he

understood Ms. Watson to be in St. Lucia. Ms. Watson and Mr. Stein also spoke by phone

themselves and, when they did so, the phone number that she called Stein from had a "(246)" area

code, which is the area code for Barbados. Ms. Watson and Mr. Stein also corresponded by email

and letter regarding his role as escrow agent and, when they did so, her letterhead had an address

in St. Lucia. Stein Decl., ¶¶ 9 & 10 and Exhibit B.

17.     After GVE and RIL entered into the purchase agreement, Mr. Stein sent a letter to Mark Maloney, the principal of RIL, via e-mail, addressed to Mr. Maloney as the "Executive Chairman" of RIL in Castries, St. Lucia.  While Mr. Stein was serving as the escrow agent for the subject transaction, he always understood Mr. Maloney to be located in St. Lucia. Stein Decl., ¶ 11 and Exhibit C.

18.     Plaintiff alleges that the Stein Defendants misrepresented that the funds in escrow had been transferred in accordance with the escrow agreement. Complaint, ¶¶ 263-265 and 276-277.  The incoming and outgoing transfers, however, lack a nexus to Florida.  The transfer of funds into Mr. Stein's trust account came from a bank in St. Lucia.  The outgoing wire transfers from Mr. Stein's trust account to GVE were made to an account at Bank of America in New York, NY, and the transfer to Prestige was made to an account at Wells Fargo in San Francisco, California.  Additionally, a transfer was made to an international shipping company, RDS, through an account at Santander Bank in Poland. Stein Decl., ¶¶ 11-12.

19.     When a dispute arose between RIL and Stein about the transfers which had been made to GVE and Prestige, Mr. Stein discussed this with RIL so as to amicably resolve it and, based thereon, entered into a settlement agreement with RIL.  This agreement, signed by RIL and Mr. Stein, has a broad release of all claims and states it is "… made and entered into in the State of California and shall in all respects be interpreted and enforced by and under the laws of this state."  It furthermore has a choice of jurisdiction clause, paragraph 5d, which provides that the jurisdiction is Los Angeles, California: "The sole venue for adjudication of any dispute or claim arising out of or related to the matters set forth above and/or in this Release shall be in a court of competent jurisdiction located within Los Angeles County." Stein Decl., ¶ 14 and Exhibit D, ¶ 5.

20.     Based on this settlement agreement, Stein returned the funds which remained in his trust account to RIL.  The return transfer was made to 1st National Bank in St. Lucia.  No funds

were ever received into his account from a bank account in Florida, nor were any transferred into

an account in Florida at any time. Stein Decl., ¶ 15.

**MEMORANDUM OF LAW**

**TABLE OF AUTHORITIES**

**Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503 (1994) ...................... 12, 13

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ......................................................... 15

*Bush v. Superior Court*, 10 Cal. App. 4th 1374 (1893) ................................................ 17

*Calder v. Jones*, 465 U.S. 783 (1984) .................................................................... 14

*Fraser v. Smith*, 594 F. 3d 842 (11th Cir. 2010) ....................................................... 14

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................ 10

*Louis Vuitton Malletier S. A. v. Mosseri,* 736 F.3d 1339 (11th Cir. 2013) ............................. 9, 15

*Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990) ....................................................... 9

*McClure v. McClure*, 100 Cal. 339 (1893) .............................................................. 17

*Mutual Serv. Ins. Co. v. Frit Indus., Inc.,* 358 F.3d 1312 (11th Cir. 2004) ............................ 10

*Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273 (1992) .............................................. 17

*Oldfield v. Pueblo de Bahia Lora S. A.*, 558 F. 3d 1210 (11th Cir. 2009) ............................ 15

*PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802 (11th Cir. 2010) ............... 8

*United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009) ...................................... 9

**Statutes**

§ 48.193(1), Fla. Stat. .................................................................................. 9, 10, 12, 13

28 U.S.C. § 1404 ....................................................................................... 18

**THE LAW GOVERNING PERSONAL JURISDICTION.**

21.    A court has personal jurisdiction over a non-resident defendant if (1) the state's

long-arm statute provides jurisdiction, and (2) the exercise of such jurisdiction comports with the

Due Process Clause of the Fourteenth Amendment. *PVC Windoors, Inc. v. Babbitbay Beach*

*Constr., N.V.*, 598 F.3d 802, 807, 811 (11th Cir. 2010).   A federal court sitting in diversity

jurisdiction undertakes a two-step inquiry in determining whether personal jurisdiction exists.  The

exercise of jurisdiction must: (1) be appropriate under the state's long arm statute and (2) not

violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

### i.     The burden of proof.

22.     A plaintiff seeking to establish personal jurisdiction over a non-resident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier S. A. v. Mosseri,* 736 F.3d 1339, 1355 (11th Cir. 2013), quoting *United Techs Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). When a defendant challenges personal jurisdiction, "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

### ii.     Specific Jurisdiction and General Jurisdiction.

23.     A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, by specific jurisdiction – through acts which are enumerated in § 48.193(1), Fla. Stat., and which the lawsuit arises out of or relates to; and second, by general jurisdiction – if the defendant engages in "substantial and not isolated activity" in Florida, whether or not the lawsuit involves defendant's acts in the state. § 48.193(2), Fla. Stat.

### iii.     The Due Process Clause of the Fourteenth Amendment.

24.     A court's exercise of specific personal jurisdiction comports with due process when (1) the non-resident defendant "purposefully availed himself" of the privilege of conducting activities within the forum state, (2) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state, and (3) the exercise of personal jurisdiction is in accordance with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier S. A.*, 736 F. 3d at 1355. The exercise of personal jurisdiction must not violate the Due Process Clause of the United States Constitution, "which requires that the defendant have minimum

contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Mutual Serv. Ins. Co. v. Frit Indus., Inc.,* 358 F.3d 1312, 1319 (11th Cir. 2004), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**A.** **There is No Basis for Specific Jurisdiction Nor General Jurisdiction over the Stein Defendants.**

25.     Florida's "Long Arm Statute," § 48.193, Fla. Stat., enumerates nine acts which give rise to personal jurisdiction in Florida.  Plaintiff RIL alleges one of them – committing a tortious act within this state (§ 48.913(1)(a)(2)) – to buttress its assertion of personal jurisdiction over the Stein Defendants. Complaint ¶¶ 18 & 19.  This is infirm on multiple grounds.  Charles Stein resides in and practices law in California at his law firm DSLG, with its sole office in North Hollywood, CA.  He does not have an office in Florida, advertise in Florida, nor have any business presence in Florida. Stein Decl., ¶ 2.  He has been to Florida on one occasion, for a friend's wedding, for one day in 2019. Stein Decl., ¶ 3.

26.     At all times alleged in Plaintiff's Complaint, the Stein Defendants, in serving as escrow agent, understood the seller and buyer to be in California and St. Lucia, respectively, based on the representations which these persons had made to them.  Mr. Moore represented to Mr. Stein that he was the CEO of GVE located in Santa Monica, California and that he lived in Southern California.  Mr. Stein called him at a Santa Monica, California phone number. Stein Decl. ¶¶ 4 & 6.  Mr. Stein's role in the subject transaction was as escrow agent for the buyer and seller.  To that end, he entered into an escrow agreement on April 16, 2021, with RIL (the buyer), and GVE (the seller).  This agreement outlines his functions.  This agreement, on its first page, identifies the parties thereto.  GVE is represented to be, "**Good Vibrations Entertainment, LLC** of 2219 Main St., Santa Monica, CA 90405, United States … represented herein by Alex Moore, the duly

authorized CEO …".[1]  In light of this written agreement, which was signed by Mr. Moore, Mr. Stein's belief that he was dealing with a business in California was well-founded. Stein Decl., ¶ 8 and Exhibit A, p. 1.  Based on the above, the Stein Defendants' interactions with GVE and/or Mr. Moore cannot be considered contact with the state of Florida and do not constitute the commission of "a tortious act within" Florida.

27.    As to the Stein Defendants' alleged interactions with Plaintiff RIL, the same conclusion applies.  The Stein Defendants sent Mark Maloney a letter via e-mail addressed to him as the "Executive Chairman of RIL in Castries, St. Lucia."  In fact, Mr. Stein understood Mr. Maloney to be in St. Lucia while Stein was acting as the escrow agent. Stein Decl., ¶ 11.  In the escrow agreement, into which GVE, RIL, and the Stein Defendants entered, Plaintiff RIL represented to the Stein Defendants that it was "situate [sic] at 20 Micoud Street, Castries, St. Lucia …". Stein Decl., ¶ 8 and Exhibit A, p. 1.  Therefore, the Stein Defendants' interactions with Plaintiff lack a nexus to Florida and cannot be the commission of "a tortious act within" Florida.

28.    Mr. Moore introduced Mr. Stein to Olivia Watson who told Stein that she was an attorney for RIL, which was a company in St. Lucia, and that RIL was buying the vaccines on behalf of the government of Barbados.  Mr. Stein also understood Ms. Watson to reside in and practice law in St. Lucia.  When he had conference calls with Mr. Moore and Ms. Watson, Mr. Stein understood Watson to be in St. Lucia.  When he spoke with Ms. Watson by phone, she was on a phone number with a "(246)" area code, which is a Barbados area code.  Ms. Watson's written correspondence with Mr. Stein also demonstrated her affiliation with RIL and with St. Lucia. Stein Decl., ¶¶ 7, 9 & 10.  Accordingly, the Stein Defendants' interactions with Ms. Watson similarly lack a nexus to Florida and cannot be the commission of "a tortious act within" Florida.

---

[1] Although Mr. Stein is not a party to it, the purchase agreement also identifies GVE as located at "2219 Main St., Santa Monica, CA 90405 …". Complaint, Ex. 2, page 1.

29.     The incoming transfer of funds into Mr. Stein's trust account came from a bank in St. Lucia.  The outgoing transfers of funds from this account to GVE were made to an account at Bank of America in New York, NY; the outgoing transfer to Prestige was made to an account at Wells Fargo in San Francisco, CA.  After RIL and Mr. Stein entered into a settlement agreement, Stein returned the funds which remained in his trust account to RIL.  The return transfer was made to 1st National Bank in St. Lucia.  No funds were ever received into Mr. Stein's account from a bank account in Florida nor were any transferred into an account in Florida at any time.  Clearly, the handling of the funds in the subject transaction does not support the position that the Stein Defendants committed "a tortious act within Florida."  Based on the foregoing, Plaintiff has failed to present facts which subject the Stein Defendants to specific jurisdiction under § 48.193, Fla. Stat.

30.     In an attempt to circumvent the plain language of this Florida statute, the Complaint also asserts that the Stein Defendants were members of a conspiracy and that somehow this subjects them to personal jurisdiction in Florida. Complaint, ¶¶ 13, 18 & 19.  However, this tact fails, too, since the Stein Defendants interacted with parties they understood to be in jurisdictions other than Florida. Stein Decl., ¶¶ 4, 6, 7, 9, 10 & 11.  Moreover, civil conspiracy is not a tort in and of itself.  Rather, it is a legal doctrine which imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 510-12 (1994).[2]  Since conspiracy is not in the nature of true "tort claim," the Court should decline to treat it as a tort under § 48.913(1)(a)(2).  Furthermore, conspiracy as a purported basis for personal jurisdiction fails since the damages resulting therefrom also lack a nexus to Florida.  As

---

[2] The Stein Defendants apply California law since their settlement agreement with Plaintiff states that California law applies. Stein Decl., ¶ 14 and Exhibit D, ¶ 5d.

explained in *Applied Equipment Corp.*, "the major significance of conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong …" *Id.* at 510-11.  In the case at bar, Plaintiff alleges that the damages caused by the alleged misconduct of the Defendants were incurred by Plaintiff (itself a company in St. Lucia) and, furthermore, to the detriment of the country of Barbados. Complaint ¶¶ 82 & 125.  Thus, examining the damages in the case under a conspiracy theory also does not support specific jurisdiction in Florida.

31.     Turning to general jurisdiction, this type of jurisdiction is found where the defendants engage in, "substantial and not isolated activity in Florida." §48.193(a), Fla. Stat.  The Stein Defendants can hardly be considered to have engaged in such activity in Florida.  Charles Stein resides in California and practices law in California where DSLG has its only office. Stein Decl., ¶ 2.  Mr. Stein has been to Florida on one occasion for a friend's wedding in 2019 and he was in Florida for only about 24 hours before returning to California. Stein Decl., ¶ 3.  Thus, there are no allegations in the Complaint or other evidence to support the exercise of general jurisdiction over the Stein Defendants in Florida.

**B.     Personal Jurisdiction over the Stein Defendants Would Not Comport with Due Process of Law Under the Fourteenth Amendment.**

32.     In determining whether personal jurisdiction would comport with Due Process of Law under the Fourteenth Amendment of the U.S. Constitution, whether or not the defendants ***purposefully availed*** themselves of the privilege of conducting activities in the state of Florida is fundamental.  In the case at bar, the Stein Defendants cannot reasonably be considered to have purposefully availed themselves of the privilege of conducting activities in Florida.  The Stein Defendants have their sole law office in California.  The parties to the escrow agreement represented to the Stein Defendants that they were located in California and St. Lucia, respectively.  The wire transfers, incoming and outgoing, all involved banks in St. Lucia, California, and New

York.  In this regard, *Calder v. Jones*, 465 U.S. 783 (1984), is instructive.  It provides that a non-resident defendant's single tortious act can establish purpose availment when: the tort was intentional, [was] aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state. *Id.*, at 1285-1288.  Applying these principles, the Stein Defendants' purported acts were not aimed at the forum state – they understood the persons they were working with to be located in California and St. Lucia.  Similarly, the Stein Defendants could not have possibly anticipated that their acts or omissions would cause harm that would be suffered in Florida.  Plaintiff is located in St. Lucia and, moreover, the ultimate recipient of the vaccines was the country of Barbados.  Plaintiff's Complaint certainly does not pass this test.

33.     This Court may also be guided by *Fraser v. Smith*, 594 F. 3d 842, 852 (11th Cir. 2010), which explains that the foreseeability which is "… critical to the due process analysis is not the mere likelihood that a product will finds its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being hauled into court there."  The Stein Defendants' function as an escrow agent, pursuant to an escrow agreement between a seller and buyer identified to be in California and St. Lucia, respectively, does not give rise to the conclusion that Mr. Stein and his law firm would reasonably anticipate being hauled into court in Florida.

34.     As to whether the plaintiff's claims ***arise out of or relate to*** the defendants' alleged contacts with the forum state, the Stein Defendants entered into an escrow agreement with parties who represented to the Stein Defendants that they were located in California and St. Lucia and understood these parties to be located therein.  No funds were ever received into Mr. Stein's trust account from an account in Florida, nor were any funds sent from his trust account to an account in Florida – at any time.  The Stein Defendants, in fact, lacked contacts with Florida and, therefore, it cannot reasonably be concluded that Plaintiff's claims arise out of or relate to any contacts of

the Stein Defendants with Florida. Furthermore, injury in Florida was not a "foreseeable consequence" of any purported contact of these defendants with Florida. *Oldfield v. Pueblo de Bahia Lora S. A.*, 558 F. 3d 1210, 1220 (11th Cir. 2009). Assuming, *arguendo*, that Mr. Stein erred as an escrow agent, the foreseeable consequence would be to RIL in St. Lucia and, indirectly, to Barbados.

35. Equally important, the exercise of personal jurisdiction over the Stein Defendants would be contrary to "***traditional notions of fair play and substantial justice***." *Louis Vuitton Malletier S. A.*, 736 F.3d at 1355. Additional case law illuminates an evaluation of this particular issue. *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985), explains that five factors are to be evaluated: (1) the burden on the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering the fundamental substantive social policies.

     a. First, the burden on the Stein Defendants in defending this lawsuit in Florida would be quite high and onerous. The Stein Defendants reside in California and Mr. Stein has been to Florida on only one occasion in his lifetime. He should not be compelled to defend a lawsuit across the nation – especially when the parties to the lawsuit and evidence thereto are likely strewn across multiple states and international jurisdictions. This factor weighs in favor of the Court declining personal jurisdiction over the Stein Defendants.

     b. Second, the forum state's interest in adjudicating the dispute is *de minimus*, if any. The injured person, Plaintiff RIL, is a company in St. Lucia, and the ultimate recipient of the vaccines is the country of Barbados. Thus, Florida has no interest in vindicating the rights of any of its citizens. The transactional documents also demonstrate

that Florida has no interest in adjudicating this dispute – the purchase agreement identifies seller and buyer as citizens in jurisdictions other than Florida; selects choice of law as a jurisdiction other than Florida (*i.e.,* California); and selects "ICC ADR" as the preferred method of dispute resolution. Complaint, Ex. 2, p. 1 & p. 6, Articles 13 & 14. This second factor also weighs in favor of the Court not exercising jurisdiction over the Stein Defendants.

        c.      Third, the Plaintiff's interest in obtaining convenient and effective relief also falls short of establishing jurisdiction. Plaintiff knowingly agreed to enter into a transaction for the benefit of the country of Barbados and it then similarly entered into an escrow agreement which identifies a seller in California and an escrow agent in California. Furthermore, the bank account wherein the escrow agent would hold the funds was explicitly set forth as being in California. Stein Decl., Exhibit A. Given Plaintiff's interactions with the Stein Defendants in California, it cannot reasonably be concluded that Plaintiff has an interest in obtaining relief in Florida.

        d.      Fourth, the interstate judicial system's interest in obtaining the efficient resolution of controversies is grounded in honoring settlement agreements entered into between parties to such controversies. Plaintiff and the Stein Defendants found themselves engulfed in disagreement over the payments made from the trust account; they discussed the dispute and then entered into a settlement agreement so as to amicably resolve such dispute. Stein Decl., Exhibit D. The settlement agreement, in fact, includes a broad release of all claims, known and unknown, that they have or may have against each other and, thus, **bars** Plaintiff's Complaint. Stein Decl., Exhibit D. Plaintiff and the Stein Defendants therefore, at this point, are *only* allowed to litigate the performance and enforcement of this settlement agreement. Plaintiff and the Stein Defendants unquestionably agreed that the

"… *sole venue for adjudication of any dispute claim arising out of or related to the matters set forth above, and/or in this Release shall be in a court of competent jurisdiction located within Los Angeles County.*" Stein Decl., Exhibit D, ¶ 5d (emphasis added). This Honorable Court and the judiciary as a whole surely have an interest in allowing parties to resolve their disputes themselves and enforcing the settlement agreements they entered into. Considering California law, which Plaintiff and the Stein Defendant selected as the law governing their settlement agreement (Stein Decl., Exhibit D, ¶ 5d), there is a paramount interest in disposition of litigation through settlement. California Courts have long recognized that settlement agreements "… are highly favored as productive of peace and good will in the community, as well as reducing the expense and persistency of litigation." *Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 277 (1992), quoting *McClure v. McClure*, 100 Cal. 339 (1893). Indeed, "it is fundamental that the law favors settlements." *Bush v. Superior Court*, 10 Cal. App. 4th 1374, 1382 (1893). Therefore, in considering the interstate judicial system's interest in efficient resolution of disputes, this Could should enforce the parties' settlement agreement, which mandates that California is the forum for any further litigation between Plaintiff and the Stein Defendants. Additionally, should the Court be inclined to consider the location of witnesses and evidence in determining this personal jurisdictional issue, this too does not lend support to the exercise of jurisdiction over the Stein Defendants in Florida. RIL is in St. Lucia and the Stein Defendants are in California. Evidence which they may have would also be located in these two jurisdictions. Therefore, it cannot be concluded that litigation, if any, between these parties could efficiently be conducted in Florida. In sum, evaluation of this fourth factor clearly demonstrates that the Court should decline to exercise personal jurisdiction over the Stein Defendants.

      e.      Fifth, the shared interest of the States in furthering fundamental substantive social policies unquestionably weighs against personal jurisdiction. Similar to the fourth factor above, this Court and State jurisdictions have a shared and paramount interest in furthering the substantive social policy of allowing parties to resolve their disputes through settlement without litigation. The instant jurisdictional objection can be resolved simply by following the settlement agreement entered into between Plaintiff and the Stein Defendants. No social policy could be greater than permitting persons in conflict to reach an amicable agreement, without the intervention of a higher authority. Plaintiff RIL and the Stein Defendants did just that – by their settlement agreement. If there is a dispute concerning the performance of that agreement it must be raised in California. Accordingly, this Honorable Court should decline to exercise personal jurisdiction over the Stein Defendants and dismiss them from this action.

**C.**     **At a Minimum, the Case Against the Stein Defendants Should be Transferred to the U.S. District Court for the Central District of California.**

    36.    28 U.S.C. § 1404 provides that, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …". Based on the settlement agreement between Plaintiff and the Stein Defendants, any claims against them should have been brought in the U.S. District Court, for the Central District of California. Accordingly, there is good cause for transfer of the claims against the Stein Defendants to the District Court in California. Furthermore, the Stein Defendants are located in California and, thus, transfer to California would allow for convenience as to their defense of this litigation. That Plaintiff is located elsewhere is, in balance, immaterial since Plaintiff consented to California as the jurisdiction where further litigation, if any, would take place.

## CONCLUSION

WHEREFORE, Specially-Appearing Defendants, CHARLES Z. STEIN, ESQ. a/k/a CHARLIE STEIN and DAVIDOVICH STEIN LAW GROUP, LLP, respectfully request that this motion be granted and that the Court quash service of the summons in this action and dismiss them with prejudice from the Plaintiff's First Amended Complaint.

Dated: January 10, 2022

**Seth A. Kolton**
Seth A. Kolton, Esq. (Florida Bar No. 0021045)
Attorney E-mail address: seth@shendellpollock.com
Shendell & Pollock, P.L.
2700 N Military Trail, Suite 150
Boca Raton, FL 33431
Telephone:     (561) 241-2323

- and -

**Brian T. Smith**
Brian T. Smith (PHV)
Attorney E-mail address: bsmith@zelmserlich.com
Zelms, Erlich & Mack, LLP
20920 Warner Center Lane, Suite B
Woodland Hills, CA 91367
Telephone:     (408) 608-2114

*Attorneys for Davidovich Stein Law Group, LLP*
*and Charles Z. Stein*

# EXHIBIT "C"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 21-81761-CIV-CANNON/Reinhart**

**RADICAL INVESTMENTS LTD.**,

      Plaintiff,

v.

**GOOD VIBRATIONS**
**ENTERTAINMENT, LLC, et al.**,

      Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**THE STEIN DEFENDANTS' MOTION AND TRANSFERRING CASE**

**THIS CAUSE** comes before the Court upon Defendants Charles Z. Stein and Davidovich Stein Law Group, LLC's Motion to Quash Service of Summons and Dismiss First Amended Complaint for Lack of Personal Jurisdiction (the "Motion") [ECF No. 29], filed on January 10, 2022. The Court has reviewed the Motion, Plaintiff's Response in Opposition [ECF No. 33], the Reply [ECF No. 38], and the full record, and held a hearing on the Motion on April 22, 2022 [ECF No. 56]. Following review, the Motion [ECF No. 29] is **GRANTED IN PART AND DENIED IN PART**, and this action is **TRANSFERRED** to the United States District Court for the Central District of California.

**BACKGROUND**

Plaintiff Radical Investments LTD is a foreign company that was authorized to procure COVID-19 vaccines for the country of Barbados [ECF No. 13 ¶¶ 1, 30]. To that end, Plaintiff advanced approximately $12.2 million in a seemingly legitimate transaction, expecting those funds to cover the purchase and delivery of one million AstraZeneca vaccines [ECF No. 13 ¶¶ 26, 35].

As alleged, those vaccines never came. After only $5.4 million was returned to Plaintiff, it filed this suit to recover the outstanding amount [ECF No. 13 ¶ 82].

The instant Motion is brought by Defendants Charles Z. Stein and Davidovich Stein Law Group, LLC (the "Stein Defendants"). The Stein Defendants are citizens of California who were retained to serve as the "Paymaster" in charge of distributing to the vaccine suppliers the $12.2 million that Plaintiff deposited into an escrow account [ECF No. 13 ¶¶ 7–8, 43; ECF No. 13-1 pp. 25–32]. Plaintiff alleges that the Stein Defendants were part of an "elaborate scam" and distributed the funds to their coconspirators without any intent for Plaintiff to receive the contemplated vaccines [ECF No. 13 ¶¶ 18–19, 26, 43–48]. On July 9, 2021, prior to the start of this lawsuit, Plaintiff entered into a settlement agreement with the Stein Defendants, releasing all of its claims against them [ECF No. 13-1 pp. 98–100 (the "Release Agreement")]. That Agreement required the Stein Defendants to wire the leftover balance in the escrow account to Plaintiff and to assist Plaintiff in recovering the remaining outstanding amount [ECF No. 13-1 pp. 98–99]. The Agreement also contains a forum selection provision that states: "[t]he sole venue for adjudication of any dispute or claim arising out of or related to the matters set forth above and/or this Release shall be in a court or competent jurisdiction located within Los Angeles County" [ECF No. 13-1 p. 100]. Dissatisfied with its unsuccessful recovery attempts, Plaintiff initiated this action on September 17, 2021, naming as Defendants Charles Z. Stein and Davidovich Stein Law Group, LLC [ECF Nos. 1, 13].

Plaintiff also has named as Defendants Moniladae Coley, Prestige Pegasus LLC, Alex Moore, and Good Vibrations Entertainment LLC—the Stein Defendants' alleged coconspirators [ECF Nos. 1, 13]. Coley and Prestige Pegasus LLC have failed to appear in this action and are subject to a Clerk's Default [ECF No. 39]. Moore and Good Vibrations Entertainment LLC filed an Answer and Counter/Cross Complaint [ECF No. 36]. The Stein Defendants are the only

Defendants who are parties to the Release Agreement containing the forum selection clause at issue.

In the instant Motion, the Stein Defendants claim that this Court has no personal jurisdiction over them, and that, in any event, the Release Agreement requires Plaintiff to bring its claims against them in Los Angeles County [ECF No. 29]. Plaintiff maintains that personal jurisdiction exists as to the Stein Defendants based on their contacts with Florida pursuant to an alleged conspiracy to defraud Plaintiff [ECF No. 33 pp. 3–15]. And Plaintiff asks the Court to disregard the Release Agreement because, among other reasons, Plaintiff allegedly entered it under duress [ECF No. 33 pp. 16–18].

The Motion is ripe for adjudication.

## LEGAL STANDARD

The federal statute governing change of venue states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). In weighing the factors to transfer venue under Section 1404(a), the court should consider a choice of forum clause "a significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). "Thus, while other factors might 'conceivably' militate against a transfer . . . the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). "The burden is on the party opposing the enforcement of the forum selection

clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute. *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citing *In re Ricoh Corp.*, 870 F.2d at 573).

## DISCUSSION

The Court agrees with the Stein Defendant that the plain terms of the parties' forum selection clause warrant transfer to the Central District of California. It is undisputed that Plaintiff's claims against the Stein Defendants in this action are "related to the matters set forth [in the Release Agreement]" and thus are covered by the parties' forum selection clause [ECF No. 13-1 p. 100]. That clause selects Los Angeles County as the "sole venue for adjudication" [ECF No. 13-1 p. 100].[1] Accordingly, the broad language of the Release Agreement indicates that Plaintiff's claims against the Stein Defendants should be adjudicated in a court of competent jurisdiction in Los Angeles County.

To resist this plain reading, Plaintiff argues that the forum selection clause speaks only in terms of "venue," and does not establish exclusivity of "jurisdiction." The Court is not persuaded. The broad language of the Release Agreement clearly establishes Los Angeles County as the "sole venue for adjudication of any dispute or claim arising out of or related to the matters set forth [in the Settlement Agreement]," and the Southern District of Florida does not encompass Los Angeles County [ECF No. 13-1 p. 100]. Thus, this Court is not an appropriate forum under the terms of the parties' contract.

Plaintiff also argues that it is not bound by the forum selection clause because it entered the Release Agreement under duress, and, moreover, because the Stein Defendants allegedly breached the Release Agreement's terms before Plaintiff filed suit [ECF No. 33 pp. 16–17]. Those

---

[1] Los Angeles County—the forum selected by the Release Agreement—falls entirely within the Central District of California.

allegations can be tested in the Central District of California and, as presented, do not provide sufficient grounds to disregard the forum selection clause.

Aside from those direct attacks on the meaning and propriety of the forum selection clause, Plaintiff has offered only minimal argument as to the other factors relevant to a transfer decision [ECF No. 33 p. 15]. To the extent the Court is permitted to consult factors outside of the parties' bargained-for agreement, *see Atl. Marine Const. Co.*, 571 U.S. at 64, it has done so and finds no basis to disrupt the parties' preselected forum. Any inconvenience that arises from transferring Plaintiff's claims against the Stein Defendants to the Central District of California is undercut by the location and convenience of the Stein Defendants. More importantly, this action is not one of the "most unusual cases" in which it would be against the interest of justice to "hold[] parties to their bargain." *Id.* at 66. Plaintiff and the Stein Defendants agreed to make Los Angeles County their exclusive forum. They formalized that agreement in a written contract. The law respects that decision.

In giving effect to the forum selection clause at issue, the Court finds it appropriate to transfer the entire action to the Central District of California pursuant to 28 U.S.C. § 1404(a). When presented with a forum selection clause that applies to only some of the parties, courts should consider: (1) the language of the forum selection clauses, (2) the private and public interests relevant to the non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests. *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 404 (3d Cir. 2017) (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 674–83 (5th Cir. 2014)). The Court has considered all of those factors and finds that, on balance, they counsel in favor of transfer of the entire action. Plaintiff has not presented the Court with any compelling argument against transfer of its claims to the Central District of California. Moreover, at the hearing, the non-contracting parties (Defendants

Moore and Good Vibrations Entertainment LLC) indicated no resistance or legal objection to transfer of the full action. And it is clear that the interest of efficiency—both public and private—is promoted by transferring the entire action, since Plaintiff's claims against the different parties "likely revolve around similar evidence, witnesses, and legal questions." *Clausen v. Burns & Wilcox, LTD*, No. 19-CV-605-FTM-60NPM, 2020 WL 2425671, at *3 (M.D. Fla. May 12, 2020). Accordingly, transfer of the entire action is warranted.

## CONCLUSION

For the reasons discussed above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants Charles Z. Stein and Davidovich Stein Law Group, LLC's Motion to Quash Service of Summons and Dismiss First Amended Complaint for Lack of Personal Jurisdiction [ECF No. 29] is **GRANTED IN PART AND DENIED IN PART**.

    a. The Stein Defendants' transfer request is **GRANTED**.

    b. The Stein Defendants' motion to dismiss for lack of jurisdiction is **DENIED AS MOOT**.

    c. The Stein Defendants' motion to quash service of summons is **DENIED**.

2. Pursuant to 28 U.S.C. § 1404(a), the above-captioned matter, Case No. 21-81761-CIV-CANNON, shall be **TRANSFERRED** to the United States District Court for the Central District of California for all purposes, including trial.

    **DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 25th day of April 2022.

    **AILEEN M. CANNON**
    **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of Service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 20920 Warner Center Lane, Suite B, Woodland Hills, California 91367.

On June 2, 2022, I served True copies of the following document(s) described as **COMPENDIUM OF EXHIBITS - PART 2 - TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** on the interested parties in this action.

## SEE ATTACHED SERVICE LIST

BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system . Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 2, 2022 at Woodland Hills, California.

_____

Rosa E. Rojas

ZELMS ERLICH & MACK
CALIFORNIA | ARIZONA

SERVICE LIST
Radical Investment Ltd v. Good Vibrations, et al.
Case No.:  2:22-cv-02752-SVW-AFM

| | |
|---|---|
| Gerardo A. Vazquez, Esq.<br>gv@gvazquez.com<br>RalphR. Longo, IV, Esq.<br>rl@gvazquez.com<br>Steven B.  Herzberg, Esq.<br>sh@gvazquez.com<br><br>Attorneys for Plaintiff Radical<br>Investments, Ltd. | Maurice David Pessah, Esq.<br>Maurice@Pessahgrou.com<br>Jsunshine@pessahgroup.com<br>sbenson@pessahgroup.com<br>vusov@pessahgroup.com<br><br>Attorneys for Plaintiff Radical<br>Investments, Ltd. |
| John D. Shwalb, Esq.<br>john@jdschwalb.com<br><br>Attorneys for Alex Moore and Good<br>Vibrations Entertainment, LLC | Ronald Jay Cohen, Esq.<br>Ecf.rcohen@rprslaw.com<br><br>Attorneys for Alex Moore and Good<br>Vibrations Entertainment, LLC |
| Michael Stoller, Esq.<br>michael.stoller@stollerlawgroup.com<br><br>Attorneys for Alex Moore and Good<br>Vibrations Entertainment, LLC | |