GERARDO A. VAZQUEZ (admitted *Pro Hac Vice*)
gv@gvazquez.com
RALPH R. LONGO, IV (admitted *Pro Hac Vice*)
rl@gvazquez.com
STEVEN B. HERZBERG (admitted *Pro Hac Vice*)
sh@gvazquez.com
**VAZQUEZ & ASSOCIATES, P.A.**
1111 Brickell Ave., Suite 1550
Miami, Florida 33131
Tel. (305) 371-8064

MAURICE D. PESSAH (SBN: 275955)
maurice@pessahgroup.com
SUMMER E. BENSON (SBN: 326398)
sbenson@pessahgroup.com
**PESSAH LAW GROUP, PC**
9100 Wilshire Blvd., Suite 850E
Beverly Hills, CA 90212
Tel. (310) 772-2261

Attorneys for Plaintiff,
RADICAL INVESTMENTS LTD.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADICAL INVESTMENTS LTD., a St. Lucia Company,<br><br>Plaintiff,<br><br>v.<br><br>GOOD VIBRATIONS ENTERTAINMENT LLC, a Florida Limited Liability Company, et al.,<br><br>Defendants. | Case No. 2:22-cv-02752-SVW-AFM<br>*Assigned to the Hon. Stephen V. Wilson*<br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1**<br><br>[Filed concurrently with Notice of Motion and Motion; Declaration of Olivia Watson; Declaration Ralph R. Longo IV; [Proposed] Judgment]<br><br>Date:   November 21, 2022<br>Time:   1:30 p.m.<br>Courtroom:   10A |

1

Pursuant to Local Rule ("L.R.") 56-1, Plaintiff Radical Investments, Ltd. ("Plaintiff" or "RIL") files the following Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment as to Defendants Good Vibrations Entertainment LLC ("GVE") and Alex Lee Moore, Jr. ("Moore") (collectively, "Defendants"), and states as follows:

## STATEMENT OF UNCONTROVERTED FACTS

| UNDISPUTED MATERIAL FACT | Supporting Evidence |
|---|---|
| 1. In or around early 2021, the Country of Barbados was seeking COVID-19 vaccines, but due to various reasons, was having difficulty obtaining them. | Declaration of Olivia Warson ["Watson Decl."] ¶ 3 |
| 2. RIL was authorized to procure AstraZeneca vaccines on behalf of the Government of Barbados, acting through the Ministry of Health and Wellness. | Watson Decl. ¶ 4<br><br>Declaration of Ralph R. Longo IV ["Longo Decl."] ¶ 4; Exh. 1 |
| 3. In or around late March/early April 2021, RIL was introduced to Moore. | Watson Decl. ¶ 7 |
| 4. Moore, by and through his company, GVE, represented that he had a solid commercial track record with respect to sourcing and commercializing COVID-19 Personal Protective Equipment, including being able to source vaccines (specifically AstraZeneca vaccines). | Watson Decl. ¶ 8 |
| 5. Moore provided RIL with a Sales and Purchase Agreement (the "Contract") for the purchase of vaccines through GVE. | Watson Decl. ¶ 9; Exh. A<br><br>Longo Decl. ¶ 5; Exh. 2 |
| 6. The Contract identified, Defendant Charles Z. Stein, Esq. ("Stein") as the escrow agent/paymaster ("Escrow Agent"). | Watson Decl. ¶ 10; Exh. B at p. 3, Art. 4<br><br>Longo Decl. ¶ 5; Exh. 2 at p. 3, Art. 4 |

2

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1

| | | |
|---|---|---|
| 7. | Stein is a partner at Defendant Davidovich Stein Law Group ("DS Law"), a California law firm. Stein and DS Law were entrusted with safeguarding the RIL's funds. RIL and Stein executed an Escrow and Paymaster Agreement, dated April 16, 2021. | Watson Decl. ¶ 10; Exh. B |
| 8. | As compensation, Stein/DS Law were to be paid a .2% fee, equal to $24,400.00. | Watson Decl. ¶ 11; Exh. B at p. 2, para 2(d)(i) |
| 9. | The Contract was executed by RIL and GVE on or around April 16, 2021. | Watson Decl. ¶ 12; Exh. A<br><br>Longo Decl. ¶ 5; Exh. 2 |
| 10. | Per the terms of the Contract, RIL was to pay $10.2. million ("Purchase Price") for one million AstraZeneca vaccines ("Vaccines"), and a $2 million commission to GVE upon delivery of the Vaccines ("GVE Commission"). GVE was to deliver the Vaccines within seven days of receipt of an invoice from AstraZeneca. | Watson Decl. ¶ 13; Exh. A at pp. 3-4, Art. 4<br><br>Longo Decl. ¶ 5; Exh. 2 at pp. 3-4, Art. 4 |
| 11. | Delivery of the Vaccines was determined upon RIL's receipt of an original bill of lading ("Original Bill of Lading"), evidencing delivery via air to Barbados. | Watson Decl. ¶ 13; Exh. A at p. 4, Art. 5<br><br>Longo Decl. ¶ 5; Exh. 2 at pp. 3-4, Art. 5 |
| 12. | Upon execution of the Contract, RIL was to deposit the sum of $12.2 million (collectively, the "Funds") into the Stein/DS Law escrow account ("Escrow Account"), to be released in accordance with the terms set forth in the Escrow Agreement. RIL did, in fact, deposit the Funds into the Escrow Account. | Watson Decl. ¶ 14; Exh. A at p. 4, Art. 5<br><br>Longo Decl. ¶¶ 5, 8; Exh. 2 at pp. 3-4, Art. 5; Exh. 5 |

3

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1

| | | |
|---|---|---|
| 13. | The Escrow Agreement provides: "WHEREAS the Buyer desires assurances that the funds placed into the escrow account will be released to the Manufacturer of the Products in accordance with the terms of the Purchase Agreement and that the commission due to Seller will be released red upon delivery of the original bill of lading to the Buyer in respect of the Products shipped by AstraZeneca to the Buyer within the timeline stated in the Purchase Agreement." | Watson Decl. ¶ 16; Exh. B at p. 1 |
| 14. | If the Vaccines were delivered, and full performance was rendered under the Contract, RIL would instruct Defendant Stein, vis-à-vis written instructions, to release from the Escrow Account the remaining sum of $2 million as payment for the GVE Commission. | Watson Decl. ¶ 18 |
| 15. | Moore/GVE were to provide RIL with an invoice from AstraZeneca within 24 hours of the Funds being escrowed. On or about April 22, 2021, after numerous demands, Moore/GVE provided RIL with a highly redacted copy of an invoice allegedly from AstraZeneca. | Watson Decl. ¶ 19; Exh. C<br><br>Longo Decl. ¶ 6; Exh. 3 |
| 16. | Subsequently, RIL demanded production of an unredacted version of the invoice – containing the information required further to the terms of the Contract. Despite RIL's repeated demands that Moore/GVE provide a conforming AstraZeneca Invoice - Moore stated that he could | Watson Decl. ¶¶ 20-24; Exh. D<br><br>Longo Decl. ¶ 7; Exh. 4 |

4

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1

| | | |
|---|---|---|
| | not do so, due to confidentiality provisions with certain intermediaries. Notwithstanding the issues with the invoice, Moore assured RIL that everything was fine and that he would provide RIL with opinion letters from Stein/DS Law and the law firm of Warner Norcross + Judd, LLP, confirming and assuring RIL in writing that GVE had negotiated contracts with AstraZeneca and accordingly would be able to source and deliver the vaccines as per the terms of the Contract. | |
| 17. | As early as April 20, 2021, prior to Escrow Agent's receipt of the Funds, Moore communicated with Stein, unbeknownst to RIL, and told him that Moore/GVE stood to make $8 million of the $12.2 million, and that Moore would make Stein a "millionaire." | Watson Decl. ¶¶ 25-26; Exh. E at pp. 5-6 (RIL00004-RIL00006)<br><br>Longo Decl. ¶ 10; Exh. 7 at pp. 5-6 (RIL00004-RIL00006) |
| 18. | After the Funds were transferred to the Escrow Agent, Moore disclosed that the Funds could not be sent directly to AstraZeneca as provided for in the Contract and Escrow Agreement – but instead needed to go through an authorized supplier with a specific AstraZeneca supply contract and allocation. | Watson Decl. ¶ 28 |
| 19. | Moore identified co-Defendant Prestige Pegasus LLC ("Prestige") and its CEO, co-Defendant Moniladai Coley ("Coley") as being an authorized supplier with a specific AstraZeneca supply contract and allocation holder. | Watson Decl. ¶ 28 |

5

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1

| # | | |
|---|---|---|
| 20. | Moore represented that GVE had a supply contract with Prestige to procure RIL's Vaccines. | Watson Decl. ¶ 28 |
| 21. | On or about April 27, 2021 and May 3, 2021, and as later confirmed by Stein to RIL, Stein made the following wire transfers in direct violation of the Escrow Agreement:<br>(i) $4.2 million total to Moore via GVE in two separate wire transfers;<br>(ii) $2 million to Coley via Prestige;<br>(iii) $485,000 to RDS Cargo Group, a foreign freight company, supposedly based out of Dubai. | Watson Decl. ¶¶ 31-32<br><br>Longo Decl. ¶ 10; Exh. 6 |
| 22. | RIL did not authorize any other disbursement of the Funds which were deposited into the Escrow Account other than the following: $10.2 million to AstraZeneca or Prestige as a "qualified intermediary." | Watson Decl. ¶ 33 |
| 23. | Moore and Stein were working together against RIL's interest, and contrary to RIL's understanding that Stein/DS Law were neutral and disinterested in the transaction. | Watson Decl. ¶ 34<br><br>*See generally* Exh. 7 to Longo Decl. |
| 24. | Moore offered Stein a "Bonus" if the transaction was successful, compromising his duty as a third-party escrow agent. | Watson Decl. ¶ 34; Exh. F<br><br>Longo Decl. ¶ 20; Exh. 17 |
| 25. | Moore offered to make Stein a millionaire if the transaction closed. | Watson Decl. ¶ 34; Exh. E at p. 6 (RIL00006)<br><br>Longo Decl. ¶ 10; Exh. 7 at p. 6 (RIL00006) |
| 26. | Based on communications between Moore and Stein, the GVE | Watson Decl. ¶ 36; Exh. E at pp. 5-6 (RIL00004-RIL00006) |

| | | |
|---|---|---|
| | Commission was to go to Moore's "brokers." | Longo Decl. ¶ 10; Exh. 7 at pp. 5-6 (RIL00004-RIL00006) |
| 27. | The Vaccines were never delivered to Barbados, despite Moore's repeated assurances. | Watson Decl. ¶ 38 |
| 28. | In or about June 2021, RIL sought to terminate the transaction as the Vaccines were not delivered to Barbados per the terms of the Contract. RIL sought the return of its Funds. | Watson Decl. ¶ 38<br><br>Longo Decl. ¶ 11; Exh. 8 |
| 29. | RIL learned that Stein had misappropriated the Funds, and that GVE had actually received $4.2 million, which RIL did not authorize at any time. | Watson Decl. ¶ 32, 37<br><br>*See generally* Exh. 6 to Longo Decl. |
| 30. | Moore was asked via e-mail by RIL, Stein, and by his own attorney, Jonathan Sutton, to return the Funds. The Funds were never returned. | Longo Decl. ¶ 17; Exh. 14 |
| 31. | Moore/GVE spent or withdrew the majority (if not all) of the $4.2 million in RIL Funds wired by Stein. The monies were used at various nightclubs and gentlemen's clubs, to purchase, *inter alia*, luxury vehicles, plastic surgery, expensive trips, and to fund the lifestyles of multiple exotic dancers. | Watson Decl. ¶ 42<br><br>Longo Decl. ¶ 19; Exh. 16 [Moore Deposition Transcript] at pp. 164-178.<br><br>*See generally* Exh. 15 to Longo Decl. |
| 32. | Moore withdrew $10,000.00 in cash from the GVE bank account more than one-hundred times between May and August of 2021. | *See generally* Exh. 15 to Longo Decl. |
| 33. | Moore spent hundreds of thousands of dollars on exotic dancers in West | Longo Decl. ¶ 19; Exh. 16 |

7

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1

| | | |
|---|---|---|
| | Palm Beach, Florida. Moore gave a woman named "Nyla Tito" whom he met at the Rhino Gentleman's Club $300,000.00-$500,000.00. Moore gave up to $100,000.00 to another exotic dancer named Roxie Romero, whom he also met at the Rhino Gentleman's club. | [Moore Deposition Transcript] at pp. 165-168

*See generally* Exh. 15 to Longo Decl. |
| 34. | Moore spent $100,000.00 on a BMW 850i. | Longo Decl. ¶ 19; Exh. 16 [Moore Deposition Transcript] at p. 177

*See generally* Exh. 15 to Longo Decl. |
| 35. | Moore gave his mother Joyce Moore $200,000.00 | Longo Decl. ¶ 19; Exh. 16 [Moore Deposition Transcript] at p. 170

*See generally* Exh. 15 to Longo Decl. |
| 36. | Because the Vaccines were never delivered per the terms of the Contract, Moore/GVE had no entitlement to the Funds or any portion thereof. | Watson Decl. ¶ 42; Exh. A

Longo Decl. ¶ 5; Exh. 2 |
| 37. | With respect to Moore/GVE, RIL has been damaged in the amount of $4.2 million. | Watson Decl. ¶ 42 |

8

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1

# CONCLUSIONS OF LAW

1. A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

2. The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *Id*. at 324. "A mere scintilla of evidence supporting the nonmoving party's position is insufficient; there must be evidence on which a jury could reasonably find for the non-moving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

3. Piercing the corporate veil is proper in this instance because there is a unity of interest and ownership between Defendant Moore, on the one hand, and Defendant GVE, on the other hand, such that any individuality and separateness between Moore and GVE have ceased; and failure to pierce the corporate veil will result in an injustice. *See Williams v. Yamaha Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017).

4. Defendants GVE and Moore have engaged in unlawful, unfair or fraudulent business acts or practices in violation of California's Unfair Competition Law. *See* Cal. Bus. & Prof. Code § 17200, *et seq*.

5. Defendants GVE and Moore knowingly made material misrepresentations and/or omissions with the intent to induce Plaintiff's reliance; and Plaintiff did, in fact, justifiably rely on these material misrepresentations and/or

omissions, resulting in damages to Plaintiff. *See Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996).

6. Defendants GVE and Moore negligently made material misrepresentations and/or omissions with the intent to induce Plaintiff's reliance; and Plaintiff did, in fact, justifiably rely on these material misrepresentations and/or omissions, resulting in damages to Plaintiff. *See Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986).

7. Defendants GVE and Moore, and each of them, acting in concert with co-Defendants Stein, DS Law Group, Prestige, and Coley, conspired to perpetrate a fraudulent act upon Plaintiff, resulting in damages to Plaintiff. *See AREI II Cases*, 216 Cal.App.4th 1004, 1022 (2013); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 504 (1994).

8. Defendants GVE and Moore have been unjustly enriched in the amount of $4,200,000.00 at the expense of Plaintiff. *See Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583 (2008).

9. Defendants GVE and Moore, via fraudulent means, acquired and retained the sum of $4,200,000.00 from Plaintiff, property to which Plaintiff has an immediate right of possession. *See Regent Alliance Ltd. v. Rabizadeh*, 231 Cal.App.4th 1177, 1181 (2014); *Plummer v. Day/Eisenberg, LLP*, 184 Cal.App.4th 38, 45 (2010); *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998).

10. Plaintiff and Defendant GVE entered into a valid, enforceable contract, the Sales and Purchase Agreement (the "Contract"), dated April 16, 2021. Plaintiff performed, substantially performed, or was excused from performing its obligations under the Contract. Defendants GVE and Moore breached the Contract by, inter alia, failing to procure and deliver the Vaccines, resulting in damages to Plaintiff. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

11. Based on the above statement of uncontroverted facts and its motion for summary judgment and the exhibits and declarations filed concurrently

10

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1

herewith, Plaintiff has met its burden of demonstrating that there is no genuine issue of material fact, and based on these conclusions of law, Plaintiff has shown that it is entitled to summary judgment as a matter of law, and therefore, Plaintiff's motion is properly granted.

Dated: October 31, 2022              **VAZQUEZ & ASSOCIATES, P.A.**

By: */s/ Ralph R. Longo IV*
   Gerardo A. Vazquez, Esq.
   Ralph R. Longo IV, Esq.
   Steven B. Herzberg, Esq.
   Attorneys for Plaintiff,
   RADICAL INVESTMENTS, LTD.

11

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF RADICAL INVESTMENTS LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS ALEX LEE MOORE, JR. AND GOOD VIBRATIONS ENTERTAINMENT, LLC PURSUANT TO FED. R. CIV. P. 56, LOCAL RULE 56-1