GERARDO A. VAZQUEZ (admitted *Pro Hac Vice*)
gv@gvazquez.com
RALPH R. LONGO, IV (admitted *Pro Hac Vice*)
rl@gvazquez.com
STEVEN B. HERZBERG (admitted *Pro Hac Vice*)
sh@gvazquez.com
**VAZQUEZ & ASSOCIATES, P.A.**
1111 Brickell Ave., Suite 1550
Miami, Florida 33131
Tel. (305) 371-8064

MAURICE D. PESSAH (SBN: 275955)
maurice@pessahgroup.com
SUMMER E. BENSON (SBN: 326398)
sbenson@pessahgroup.com
**PESSAH LAW GROUP, PC**
9100 Wilshire Blvd., Suite 850E
Beverly Hills, CA 90212
Tel. (310) 772-2261

Attorneys for Plaintiff,
RADICAL INVESTMENTS LTD.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RADICAL INVESTMENTS LTD., a St. Lucia Company,<br><br>Plaintiff,<br><br>v.<br><br>GOOD VIBRATIONS ENTERTAINMENT LLC, a Florida Limited Liability Company, et al.,<br><br>Defendants. | Case No. 2:22-cv-02752-SVW-AFM<br>*Assigned to the Hon. Stephen V. Wilson*<br>**PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with Memorandum of Points and Authorities in Opposition; Declaration of Ralph R. Longo IV; Declaration of Olivia Watson]<br><br>Date:      November 21, 2022<br>Time:      1:30 p.m.<br>Courtroom: 10A |

1

COMES NOW, Plaintiff Radical Investments, Ltd. ("Plaintiff" or "RIL"), pursuant to Local Rule 56-2, and hereby submits this Statement of Genuine Disputes of Material Fact in response to the Statement of Undisputed Facts (ECF No. 204-3) lodged concurrently with Defendants Charles Z. Stein Esq.'s ("Stein") and Davidovich Stein Law Group, LLP's ("DS Law Group") (collectively, "Stein Defendants") Motion for Summary Judgment (ECF No. 204).

In this statement, Plaintiff responds to each of the "undisputed material facts" identified in the Stein Defendants' Separate Statement. To note, the Stein Defendants lodged seven (7) sets of thirty-eight (38) identical facts to correspond with the seven (7) sets of issues identified by the Stein Defendants in its Motion. For ease of the Court's viewing, Plaintiff will only file one (1) set of genuine disputes which Plaintiff shall apply to all "undisputed material facts."

| # | Stein Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence |
|---|---|---|
| 1 | 1. Charles Stein is a California attorney and a partner in Davidovich Stein Law Group, LLP.<br><br>Supporting Evidence: Declaration of Charles Stein ("Stein Decl.") ¶2 | Undisputed. |
| 2 | He met Alex Moore, co-defendant in this action, through a transaction in the medical supply business wherein Mr. Stein was representing a client.<br><br>Supporting Evidence: Stein Decl. ¶2 | Disputed to the extent that RIL does not have direct knowledge as to Moore and Stein's initial meeting. Further disputed to the extent this is not a material or evidentiary fact.<br><br>Supporting Evidence:<br>"To be 'material' for purposes of a summary judgment proceeding, a fact must relate to some claim or defense *in issue under the* |

2

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | | |
|---|---|---|---|
| 1 2 3 4 | | | *pleadings*, and it must also be essential to the judgment in some way." *Riverside County Cmty. Facilities Dist. v. Bainbridge 17,* 77 Cal. App. 4th 644, 653 (1999) (emphasis added). |
| 5 6 7 8 9 10 11 12 | 3 | In April 2021, Mr. Moore asked Stein if he would be willing to serve as an escrow agent (i.e. paymaster) in a transaction involving the sale of the COVID-19 vaccine to Radical Investments, Ltd. ("RIL")<br><br>Supporting Evidence: Stein Decl. ¶3 | Disputed to the extent Moore's statement to Stein is inadmissible hearsay.<br><br>Supporting Evidence: Cal. Evid. Code § 1200 |
| 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | 4 | Mr. Moore told Mr. Stein that Good Vibrations Entertainment, LLC ("GVE"), the company which he owned, was obtaining the vaccines from a pharmaceutical manufacturer, AstraZeneca, and was authorized to sell them. After Moore told Stein about this transaction, he introduced Stein to Olivia Watson, who is an attorney and in-house counsel to RIL. Ms. Watson, Mr. Moore, and Mr. Stein discussed Stein's role as the escrow agent.<br><br>Supporting Evidence: Stein Decl. ¶¶2-3 | Disputed to the extent Moore's statement to Stein is inadmissible hearsay. Further disputed to the extent that this UMF is incomplete and misleading Moore, via communications with Stein, which were only produced to RIL during the pendency of this lawsuit, also told Stein (unbeknownst to RIL) that he would give Stein a "Bonus" and that Moore would "make Stein a millionaire" if the transaction closed. In these communications, Moore also indicated that he actually stood to profit $8 million from the transaction, four times what was agreed to per the Sales and Purchase Agreement (the "Contract"). Undisputed to the extent that Moore introduced Stein to Ms. Watson and that they discussed Stein's role as the escrow agent.<br><br>Supporting Evidence: Cal. Evid. Code § 1200 ; Cal. Evid. Code § 356; **Exh.** 7 to Longo Declaration in Support of |

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | | |
|---|---|---|---|
| 1 2 3 4 | | Declaration of Brian T. Smith ("Smith Decl.") ¶7, Ex. E, Transcript of Deposition of Olivia Watson ("Watson RT") 10:3-11 | RIL's Opposition to Stein Defendants MSJ ("Longo Decl.") ¶ 9. |
| 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 | 5 | Mr. Moore and Ms. Watson told Mr. Stein that RIL is a company in St. Lucia which was procuring the vaccines to provide them to the country of Barbados. Alex Moore sent Charles Stein an "Escrow and Paymaster Agreement" ("Escrow Agreement") which sets forth Stein's responsibilities as the escrow agent for the transaction between GVE and RIL. The Escrow Agreement includes an Irrevocable Pay Order as Exhibit A.<br><br>Supporting Evidence: Stein Decl. ¶4, Exhibit A, Escrow Agreement with Irrevocable Pay Order | Undisputed. |
| 22 23 24 25 26 27 28 | 6 | As the escrow agent, Stein would hold the funds in his trust account and disburse them based on the instructions of GVE and RIL.<br><br>Supporting Evidence Stein Decl. ¶5 | Disputed to the extent that this UMF is incomplete and misleading, and violates the best evidence rule. RIL deposited its funds and directed where its funds would be sent. Nowhere in the Escrow & Paymaster Agreement (the "Escrow Agreement") or the Contract does it state that GVE had any basis upon which to direct the destination of the funds, and it was RIL's explicit intent that the funds either go to AstraZeneca directly, or to |

4

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | | AstraZeneca through a qualified intermediary. GVE had no authority whatsoever to direct RIL's funds. The terms of the Contract specifically state that $10.2 million was to be released to the AstraZeneca account. Further, the entirety of the funds belonged to RIL and were solely RIL's property and no other party had authorization as to where to direct the funds. Further, the Escrow Agreement explicitly states that in the event AstraZeneca does not deliver the vaccines to Barbados, the paymaster (Stein) shall return the funds deposited by the buyer without any deduction.<br><br>Supporting Evidence:<br>Cal. Evid. Code §§ 1520-23; Cal. Evid. Code § 356; **Exh. 2** at Article 4., Longo Decl. ¶ 4; **Exh.** 19 at ¶ 2, Longo Decl. ¶ 21. |
| 7 | After the Escrow Agreement was signed, RIL deposited $12,199,980.00 into Mr. Stein's account.<br><br>Supporting Evidence:<br>Stein Decl. ¶5 | Undisputed. – for purposes of clarification and specificity, the funds were deposited into Stein's IOLTA Account. |

5

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 8 | Pursuant to the Escrow Agreement, Mr. Stein received from RIL, an Irrevocable Pay Order which is an Exhibit to the Escrow Agreement. The Irrevocable Pay Order has Prestige's name and bank account information on the bottom of it and is signed by Mark Maloney, on behalf of RIL.<br><br>Supporting Evidence: Stein Decl. ¶4, Ex. A, Escrow Agreement with Irrevocable Pay Order | Undisputed – document speaks for itself. |
| 9 | Prestige's name and bank account information was not on the Irrevocable Pay Order which was included in the original copy of the Escrow Agreement which Stein had previously received and signed. Ms. Watson added this to it after Stein signed the Escrow Agreement.<br><br>Supporting Evidence: Stein Decl. ¶8, Exhibit A, Escrow Agreement with Irrevocable Pay Order Smith Decl. Ex. E. Watson RT 62:15-24 | Disputed to the extent that this UMF is incomplete and misleading. Further disputed to the extent that Defendant Stein may claim that he had anything but explicit instructions from RIL as to where to wire the funds. On April 26, 2021, the day before the funds were to be wired, Stein stated via WhatsApp to RIL that he had been given the account information at Wells Fargo for Prestige Pegasus, LLC ("Prestige"). Stein himself subsequently provided the bank account information for Prestige to RIL, which is where RIL directed the funds be transferred because Prestige was supposedly a qualified intermediary of AstraZeneca. Stein confirmed that he spoke with the CEO of Prestige (Defendant Coley) and that she confirmed that she had a direct relationship with AstraZeneca and that she could fulfill the order, which per the terms of the contract would cost $10.2 million. Stein ultimately |

6

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | | provided the Prestige account information to RIL. Despite this, Stein sent $4.2 million to GVE and $485,000.00 to RDS.<br><br>Quite reasonably, given that it had deposited over $12 million with Stein, RIL demanded proof of where the funds were sent after Stein sent them out on April 27, 2021, telling Stein that "You provided the account information to me and I included this in Exhibit A. You further confirmed you made payment to Prestige. The *only* account it could have been paid to was this (Prestige's) account. Please confirm this is correct. We have only signed off on funds to be sent to Prestige as per Exhibit A. If a further wire is required to pay for the freight we Need to provide an authorization for that wire and we need the account information to authorize this wire. All we are asking for is confirmation that the funds were paid out as instructed by us[.]"<br><br>Supporting Evidence:<br>Cal. Evid. Code § 356;<br>**Exh.** 21, Longo Decl. ¶ 23 (time stamps [26/4/2021, 21:46:04], [27/04/2021, 09:06:04], [27/04/2021, 12:28:45]; [27/04/2021, 12:28:45], [27/04/2021, 20:18:18]) |
| 10 | The Irrevocable Pay Order instructed Stein to pay, "in accordance with the attached invoice and as directed herein." The invoice Stein received showed RIL as the buyer and GVE as the seller of the vaccines. | Disputed to the extent this UMF excludes the entirety of the contractual provision. The full instruction reads: "The Buyer hereby irrevocably and unconditionally confirms and authorizes the release of the Product Purchase Price by Paymaster in the IOLTA Account to Astra Zeneca in accordance with the attached invoice and as directed herein." RIL at all times clearly intended its funds to go to AstraZeneca, and did not give any |

7

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | | |
|---|---|---|---|
| | | Supporting Evidence: Stein Decl. ¶8, Ex A, Escrow Agreement with Irrevocable Pay Order, p. 5 | authorization, at any time, for its funds to go elsewhere. Supporting Evidence: Cal. Evid. Code § 356; **Exh**. 19 at Exhibit A, Longo Decl. ¶ 21. |
| | 11 | Because GVE was the seller, because the invoice showed GVE, and because the payment information on the Irrevocable Pay Order had Prestige's bank account information, Mr. Stein believed that he was supposed to pay GVE and its delegate (i.e. Prestige), not AstraZeneca. Supporting Evidence: Stein Decl. ¶8 | Disputed to the extent this UMF is not supported by any documents or evidence other than Stein's declaration. Further disputed to the extent that this is not an evidentiary or material fact. Further disputed to the extent this UMF constitutes an improper legal conclusion. Further disputed to the extent that RIL cannot surmise Defendant Stein's state of mind or decipher why he chose to misappropriate the funds and pay GVE $4.2 million, other than because he was promised to be made a millionaire and promised a "Bonus" if the transaction closed. Supporting Evidence: *Hayman v. Block*, 176 Cal.App.3d 629, 638-39 (1986) ("affidavits must cite evidentiary facts, not legal conclusions or 'ultimate' facts"); *Marriage of Heggie*, 99 Cal. App. 4th 28, 30 n.3 (2002) ("The proper place for argument is in points and authorities, not declarations"). **Exh**. 7 *generally* and at pp. 0005-0006, Longo Decl. ¶ 9 ; **Exh**. 17 Longo Decl. ¶ 19. |
| | 12 | Mr. Stein relied on Ms. Watson to tell him how the buyer wanted to pay and relied on the Irrevocable Pay Order. He was told by Moore and Watson that Prestige was an intermediary for the transaction. | Disputed. *See* response to UMF No. 9 above. It is clear that RIL intended for its funds to be wired either directly to AstraZeneca or via Prestige as a qualified intermediary. Stein did not follow RIL's instructions. |

8

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | | |
|---|---|---|---|
| | | Supporting Evidence: Stein Decl. ¶9 | |
| | 13 | On April 27, 2021, Mr. Stein disbursed funds from his escrow account in the amount of $2,000,000.00 to Prestige and $2,200,000.00 to GVE. On May 3, 2021, he disbursed $2,000,000.00 to GVE and $485,000 to RDS, a shipping company located in Poland and Dubai.<br><br>Supporting Evidence: Stein Decl. ¶10, Exhibit B | Undisputed. |
| | 14 | After these transfers were made, the vaccines did not arrive in Barbados. RIL took the position that the transfers from Mr. Stein's account were improper under the Escrow Agreement and a breach of its terms. On May 27, 2021, Watson sent Stein a letter demanding return of approximately $12.2 million from his account to RIL.<br><br>Supporting Evidence: Stein Decl. ¶12, Ex. C | Undisputed – the document speaks for itself. |
| | 15 | Ms. Watson next sent Stein a May 28, 2021 letter asserting that he had made a payment out | Disputed – the document cited is incomplete and oversimplifies a highly descriptive letter drafted by RIL. The document attached as Stein's Exhibit D also specifies in great detail the breaches of Stein's fiduciary duties, and |

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | of his account in breach of the Escrow Agreement and in breach of fiduciary duty owed to RIL.<br><br>Supporting Evidence: Stein Decl. ¶13, Ex. D | that RIL had relied on Stein's reassurances as to the veracity of the transaction, and that RIL had only authorized payment to Prestige, whose account details were provided to RIL by Stein himself. RIL sought a return of its funds, in full, because per Article 2 of the Escrow Agreement, it was entitled to a full return of its funds in the event that the vaccines were not delivered.<br><br>Supporting Evidence:<br>Cal. Evid. Code § 356; **Exh**. 19 Longo Decl. ¶ 21. |
| 16 | Mr. Stein responded that based on his reading of the Escrow Agreement and the Irrevocable Pay Order, he had properly disbursed the funds from the escrow account.<br><br>Supporting Evidence: Stein Decl. ¶13, Ex. E | Disputed to the extent that RIL has alleged that Stein did not properly disburse the funds. Further disputed to the extent that this is not a material fact and is not supported by the evidence in the record.<br><br>Supporting Evidence:<br>Cal. Evid. Code §§ 400, 403, 410 ("'direct evidence' . . . directly proves a fact, without an inference or presumption"), 803; *Los Angeles County Office of the Dist. Attorney v. Civil Serv. Comm'n of County of Los Angeles*, 55 Cal. App. 4th 187, 201-202 (1997) ("Rather than offer evidence showing [the fact sought to be proved, the party] merely insinuated [motives for the fact.] Such testimony is mere speculation not supported by any evidence"); *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 635 (2008) ("opposition to summary judgment will be deemed insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation"). |
| 17 | At this point, RIL had a second attorney assisting it; Leonard Pertnoy, Professor of Law, | Undisputed – the document speaks for itself. |

10

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | discussed this situation with Stein, on behalf of RIL. Mr. Stein communicated to Professor Pertnoy on June 7, 2021 that $5,474, 980,00 remained in his escrow account on that date, <br><br>Supporting Evidence: Stein Decl. ¶14, Ex. F | |
| 18 | By June 2021, Alex Moore had told Stein that Mark Maloney, the principal of RIL, had threatened Mr. Moore with criminal charges, bodily injury, and lawsuits, since the vaccines had not been delivered to Barbados. Furthermore, Stein believed Ms. Watson's May 28, 2021 letter was a threat of a lawsuit against him for disbursing funds to GVE and Prestige.<br><br>Supporting Evidence: Stein Decl. ¶13 & 14 | Disputed – these communications constitute inadmissible hearsay. Further disputed to the extent that there is no evidence Mr. Maloney made any threats of physical harm against Mr. Moore. Further disputed to the extent that RIL cannot ascertain what Stein's state of mind or impression was with respect to Ms. Watson's May 28, 2021 letter. Also, with respect to Stein's state of mind/belief, it is not a material or evidentiary fact.<br><br>Supporting Evidence:<br>*Hayman v. Block*, 176 Cal. App. 3d 629, 638-39 (1986) ("affidavits must cite evidentiary facts, not legal conclusions or 'ultimate' facts"); *Marriage of Heggie*, 99 Cal. App. 4th 28, 30 n.3 (2002) ("The proper place for argument is in points and authorities, not declarations"). |
| 19 | Mr. Stein was still under an obligation to both parties, RIL and GVE, in June 2021. Therefore, he was concerned that if he released funds back to RIL, he would be exposing himself to liability | Disputed – Stein was holding RIL's funds; he did not have a duty to GVE with respect to the funds, whatsoever. Further disputed to the extent this UMF ignores the plain terms of the Escrow Agreement, whereby if the vaccines were not delivered, RIL was entitled to a full return of its funds without any deduction. Also, with respect to Stein's state of |

11

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | from the seller, because the Irrevocable Pay Order (which was part of the Escrow Agreement) was irrevocable.<br><br>Supporting Evidence:<br>Stein Decl. ¶18 | mind/belief, it is not a material or evidentiary fact.<br><br>Supporting Evidence:<br>*Hayman v. Block*, 176 Cal. App. 3d 629, 638-39 (1986) ("affidavits must cite evidentiary facts, not legal conclusions or 'ultimate' facts"); *Marriage of Heggie*, 99 Cal. App. 4th 28, 30 n.3 (2002) ("The proper place for argument is in points and authorities, not declarations"); **Exh.** 19 at ¶ 2, Longo Decl. ¶ 21. |
| 20 | As Stein continued to discuss this matter with Watson, she again requested that Stein return to her the funds which remained in his account, i.e. $5,474,830.00 at that time. Stein then sent Watson a draft Termination of Escrow Agreement in Word format and asked to her to make any edits to this document which she desires. Unfortunately, RIL refused to sign this Termination of Escrow Agreement.<br><br>Supporting Evidence:<br>Stein Decl. ¶14, Ex. G | Disputed to the extent that this UMF is incomplete, misleading, misstates the evidence, and does not give full context as to the events which transpired. First, the termination of the Escrow Agreement, which Stein drafted rather than simply sending RIL back its own funds, was a release of Stein and DS Law Group. To call it anything else is a fallacy; paragraph (e) is titled RELEASE in all caps. Second, Stein in essence was holding RIL's funds hostage, as he was asking RIL to sign a release *for a return of its own funds*, to which Stein, GVE, Prestige, nor any other party had any entitlement to; they were the property of RIL. RIL refused to sign the initial draft that Stein sent because it was not satisfactory to RIL. Again, it must be stated that Stein would not send back RIL's own funds without a release in his and his law firm's favor.<br><br>Supporting Evidence:<br>Cal. Evid. Code §§ 210, 403.; Cal. Evid. Code § 356; Watson Declaration in Support of RIL's Opposition to Stein Defendants MSJ ("Watson Decl.") ¶ 51. |
| 21 | Instead of editing the draft of the Termination of | Disputed to the extent that this UMF implies that the document Stein previously sent and |

12

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | Escrow Agreement, Ms. Watson sent back to Stein a document entitled "Release" on July 12, 2021. However, this Release was already signed by Mark Maloney on behalf of RIL when I received it.<br><br>Supporting Evidence: Stein Decl. ¶16, Ex. H | referenced in UMF No. 21 was anything but a release. |
| 22 | When Mr. Stein received the Release from Ms. Watson, he interlineated three words into the recitals. He then signed the Release and signed next to the interlineation. He sent it back to Watson and asked that Maloney sign next to the interlineation also.<br><br>Supporting Evidence: Stein Decl. ¶16 | Undisputed – the document speaks for itself. |
| 23 | Ms. Watson then returned the Release to Mr. Stein with initials next to the interlineation, which he understood to be those of Mr. Maloney.<br><br>Supporting Evidence: Stein Decl. ¶17, Ex. I | Undisputed – the document speaks for itself. |
| 24 | The same day that Mr. Stein signed the Release, July 12, 2021, he made a wire transfer from his | Undisputed. |

13

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | bank account at Bank of the West to RIL's account at 1st National Bank St. Lucia Limited, returning all funds in his account. The wire was sent after 2:30 p.m. PST, after the wire cut-off, and therefore, it went through the following day. Watson confirmed on July 15, 2022 that RIL had received the wire.<br><br>Supporting Evidence: Stein Decl. ¶¶19 & 24, Ex. J & Ex. M | |
| 25 | In the drafting process, Ms. Watson added terms to her Release, wherein she asked for Stein's cooperation in getting the funds back from GVE and Prestige. The Release does not specify what Stein is supposed to do, but he understood that he would be providing information about the parties to Ms. Watson and contacting them to request return of the funds. When entering into the Release, Stein did not know RIL would take the position that he is required to do more than reasonable efforts (providing information and | Disputed to the extent that this UMF implies that Stein complied with the conditions precedent contained in the release agreement ("Release"). Per the terms of the Release, Stein was obligated to use his "best endeavors" to procure a return of the funds prior to being released. Stein was obligated to assist RIL as may be requested by RIL to pursue the beneficiaries of his misappropriations (i.e., GVE/Moore, RDS and Prestige/Coley), and was to provide RIL with correspondence, documentation, or requests for disbursements out of his IOLTA account related to the transaction. Stein made a handful of phone calls and sent an e-mail or two. This does not fulfill the "best endeavors" standard. Further, Stein did not provide, among other things, his WhatsApp communications with Moore until the discovery phase of this lawsuit. These communications should have been produced upon execution of the Release. RIL was unaware that in these communications |

14

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | contacting the parties) to try to recover the funds.<br><br>Supporting Evidence:<br>Stein Decl. ¶20 | between Moore and Stein, Moore was promising Stein a bonus/to make Stein a millionaire if the deal closed. RIL was similarly unaware that Moore indicated to Stein that he stood to profit $8 million from the transaction. Worse still, RIL was unaware that Stein made the admission that he was "incentivized" to make the deal happen. Had it received these communications from Stein, RIL would have realized immediately that Stein could not pursue Moore because they were in essence in cahoots with one another with respect to this transaction. Stein did not provide all of the relevant communications and documents in his possession related to the transaction until he was forced to comply with his discovery obligations during the pendency of this lawsuit – more than a year after the transaction had been terminated – in clear breach of the terms of the Release.<br><br>Supporting Evidence:<br>Cal. Evid. Code § 356; **Exh.** 12 at ¶ 2(b)-(d), Longo Decl. ¶14; **Exh.** 7 *generally* and at pp. 0005-0006 Longo Decl. ¶ 9. |
| 26 | Stein contacted GVE and Prestige to request that they return to him the funds which they had received. On July 11, 2021, Stein sent an email to Alex Moore, the CEO of GVE, and to Moniladai Coley, the CEO of Prestige, wherein he told them, inter alia, "I strongly recommend that all funds you have received in this | Disputed – these communications constitute inadmissible hearsay. S*ee also* response to UMF No. 25.<br><br>Supporting Evidence:<br>Cal. Evid. Code § 1200 |

15

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | | |
|---|---|---|---|
| | | transaction be sent back to my trust account so that I can forward said monies back to Radical." Supporting Evidence: Stein Decl. ¶20, Ex. K | |
| | 27 | Mr. Stein also contacted Prestige by phone to follow up on this email. In doing so, he spoke with Rance Bauman, Global Chief Operations Officer at Prestige, and explained to Bauman that Prestige should return the funds which had been disbursed from his bank account. Mr. Stein exchanged emails with Mr. Baumann in an effort to schedule a phone call with him to discuss this issue in greater detail. Supporting Evidence: Stein Decl. ¶21, Ex. L | Disputed – these communications constitute inadmissible hearsay. S*ee also* response to UMF No. 25. Supporting Evidence: Cal. Evid. Code § 1200 |
| | 28 | Mr. Stein also spoke with Jonathan Sutton, the attorney who was representing Alex Moore at that time and requested that GVE return the funds to RIL. Mr. Sutton told Stein that he would discuss this with Moore. Supporting Evidence: Stein Decl. ¶22 | Disputed – these communications constitute inadmissible hearsay. S*ee also* response to UMF No. 25. Supporting Evidence: Cal. Evid. Code § 1200 |

| | | |
|---|---|---|
| 29 | After the Release was entered into, Watson asked Stein to provide her instructions and correspondence he had received from Alex Moore relating to this transaction, particularly relating to disbursements out of his escrow account. Stein provided these documents to her.<br><br>Supporting Evidence: Stein Decl. ¶23-24, Ex. M & N | Disputed - *see* response to UMF No. 25. Further, this UMF is incomplete and misleading as it is undisputed that Stein did not provide all of the documents within his possession related to disbursements out of his escrow account to RIL, until he was forced to during the pendency of this lawsuit. RIL did not have knowledge of Stein and Moore's communications, in which Moore was directing Stein where and when to send the money, until Stein was forced to hand it over during discovery because he is a party to this lawsuit.<br><br>Supporting Evidence: Cal. Evid. Code §§ 210, 356, 403; **Exh.** 7 to Longo Decl. ¶ 9; Watson Decl. ¶¶ 51-56. |
| 30 | Stein also updated Watson via email on July 19, 2021 regarding a phone call he had with Rance Baumann and a phone call he had with Moore's attorney, both of which calls were an effort to secure the return of the funds held by Prestige and GVE.<br><br>Supporting Evidence: Stein Decl. 24 | Disputed – these communications constitute inadmissible hearsay. S*ee also* response to UMF No. 25.<br><br>Supporting Evidence: Cal. Evid. Code § 1200 |
| 31 | When the Release was entered into between RIL and Stein, RIL requested that Mr. Stein return to it the funds in his account; use best efforts to pursue GVE and Prestige for return of the funds | Disputed to the extent that this UMF is misleading, and to the extent it in any way implies that Stein complied with the terms of the Release. S*ee also* response to UMF No. 25. |

17

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 7 8 | | which they had received; and provide RIL with documentation related to disbursements from his account or otherwise related to the subject transaction. RIL did not request that Mr. Stein assist it in any other way.<br><br>Supporting Evidence: Stein Decl. ¶25 | Supporting Evidence: Cal. Evid. Code §§ 210, 356, 403. |
| 9 10 11 12 13 14 15 16 17 | 32 | None of the persons who received funds from Mr. Stein's bank account ever returned any of the funds to him, Even after this lawsuit was filed, GVE and Prestige still have not returned to RIL any funds.<br><br>Supporting Evidence: Stein Decl. ¶25 | Undisputed. |
| 18 19 20 21 22 23 24 25 26 27 | 33 | After the Release was entered into, Stein researched the issue of whether he, as the escrow agent, could file a lawsuit against GVE and Prestige to compel the return of the funds which they were holding. Stein determined that he did not have standing to do so.<br><br>Supporting Evidence: Stein Decl. ¶26 | Disputed – RIL is not aware of what Mr. Stein did or did not do or what he did or did not determine. Also, with respect to Stein's state of mind/belief as to what he determined, this is not a material or evidentiary fact.<br><br>Supporting Evidence: *Hayman v. Block*, 176 Cal. App. 3d 629, 638-39 (1986) ("affidavits must cite evidentiary facts, not legal conclusions or 'ultimate' facts"); *Marriage of Heggie*, 99 Cal. App. 4th 28, 30 n.3 (2002) ("The proper place for argument is in points and authorities, not declarations"). |
| 28 | 34 | RIL did not ask Stein to represent it in a lawsuit, | Undisputed. |

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | and RIL was never Stein's client. The Release also did not include an assignment of RIL's rights to Stein.<br><br>Supporting Evidence: Stein Decl. ¶26 | |
| 35 | Mr. Stein understood RDS to be located in Dubai and Poland. Moore told Stein that since the funds sent to RDS were used for the company's preparation and securing of the cargo plane, they were non-refundable.<br><br>Supporting Evidence: Stein Decl. ¶28 | Disputed – these communications constitute inadmissible hearsay. Further disputed to the extent that this UMF implies Stein was using his "best endeavors" per his obligations under the Release. RIL's position is that if Stein were to use his best endeavors to seek a return of the funds, that would call for him going beyond the step of simply asking Moore, who stole $4.2 million of Plaintiff's funds, if the funds could be returned from RDS, and taking his word for it when he said they could not be.<br><br>Supporting Evidence: Cal. Evid. Code § 1200 |
| 36 | GVE and Alex Moore spent the entire $4.2 million which GVE had received by the end of July 2021.<br><br>Supporting Evidence: Smith Decl. ¶6 Ex. D, bank records, specifically, RIL 0113, 0119, 0131, & 0145 | Disputed to the extent that Moore may still have a significant amount of funds in cash, based upon his withdrawal from the GVE account. |
| 37 | Mr. Moore would not agree to return the funds that GVE received because his position was that RIL had breached the purchase and sale | Disputed – this is an oversimplification of Moore/GVE's position as to why they did not return the funds. Further, it is an improper legal conclusion and not a material or evidentiary fact. |

19

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | agreement, by terminating it early.<br><br>Supporting Evidence:<br>Smith Decl. 8 Ex. D, Declaration of Alex Lee Moore, Jr. ¶¶39-40 | Supporting Evidence:<br>*Hayman v. Block*, 176 Cal. App. 3d 629, 638-39 (1986) ("affidavits must cite evidentiary facts, not legal conclusions or 'ultimate' facts"); *Marriage of Heggie*, 99 Cal. App. 4th 28, 30 n.3 (2002) ("The proper place for argument is in points and authorities, not declarations") |
| 38 | RIL has admitted that when it signed the Release, it knew that Stein had disbursed funds to GVE and Prestige.<br><br>Supporting Evidence:<br>Smith Decl. ¶6 Ex. A & B, Responses to Requests for Admission #2 & #3 | Undisputed. |

Dated: November 7, 2022

**VAZQUEZ & ASSOCIATES, P.A.**

By: /s/ *Ralph R. Longo IV*
Gerardo A. Vazquez, Esq.
Ralph R. Longo IV, Esq.
Steven B. Herzberg, Esq.
Attorneys for Plaintiff,
RADICAL INVESTMENTS, LTD.

PLAINTIFF RADICAL INVESTMENTS LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO STEIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT