Michael T. Stoller (SBN 120241)
**STOLLER LAW GROUP,PC.**
5747 Hoback Glen Road
Hidden Hills, California 91302
(310) 245-4028
(424) 702-3201 facsimile
michael.stoller@stollerlawgroup.com

John D. Schwalb
**JOHN D. SCHWALB, PLLC**
120 Third Avenue South
Franklin, Tennessee 37064-2511
(615) 794-7100
john@jdschwalb.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RADICAL INVESTMENTS LTD., a St. Lucia Company, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| GOOD VIBRATIONS ENTERTAINMENT LLC, et al. | ) ) No. 2:22-cv-02752-SVW-AFM ) ) |
| Defendants. | ) |

## MEMORANDUM IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT

Comes now the Defendant's Good Vibrations Entertainment, LLC and Alex Lee Moore, Jr., and submit the following memorandum in opposition to plaintiff's motions for summary judgment.[1]

---

[1] This and the related filing are applicable to both of plaintiff's motions, Docket Entries 205 and 206.

## **INTRODUCTION AND FACTS**[2]

Beginning in late 2019 or early 2020, depending on what one views as the true facts, the world as we know it changed dramically.  A virus initially called Novel Corona Virus 19 and laters shortened to COVID-19 which appeared as an epidemic in Wuhan Province, China, spread globally resulting in what is know known as the COVID-19 pandemic with multiple variants.  There was no know vaccination or cure.  Governments, the scientific community and academic community began to work at a frenetic pace to develop a cure and/or vaccine.  One of those vaccines is what is know as the Oxford-Astra Zeneca vaccine or AZD-1222 was developed through government funding at Oxford University in conjunction with Astra Zeneca.  While approved for emergency use authorization by the EU and the World Health Organanization, it was not and never has been approved for use in the United States.

Along with the pandemic there was a new burgeoning industry created to provide personal protective equipment (PPE) ranging from masks to gloves and sanitation and personal sanitation devices and products.  Good Vibrations Entertainment, LLC (GVE) entered that market and In the summer of 2020, GVE began to get involved in thePPE supply chain as a result of the significant need for personal protective equipment (PPE) resulting from the pandemic.  Typically the supply chain involved procuring and providing such items as protective masks, sanitizers, nitrile gloves or matters of that nature.

---

[2]   The factual statements are taken from the contemporaneous filing entitled. Response to Good Vibrations Entertainment and Moore to Plaintiff's L.R. 56.1 Statement of Facts, Statement of Additional Facts Precluding Summary Judgment and Conclusions of Law as well as the Declaration of Alex Moore, Jr. (Docket Entry 153)

As a result of GVE's entry into this market I came in contact with Linda Salud Margon as a result of a company that she owned that had a large presence in the medical supply business. That company is known as United Product and Distribution (UPD) which is owned by LSM Trading. Margon owns or controls LSM Trading.

Alex Moore met Charlie Stein when GVE and a company that Stein represented were supposed to look at a supply of nitrile gloves. Moore through GVE worked as an independent contractor for UPD attempting to put together sales or deals in the PPE business. Moore also had another business that he was active in running that was in no way connected to the PPE business or GVE, except its connection to Moore.

Toward the end of December 2020 as a number of companies, universities and governments were ultimately successful in testing their various formula for a COVID-19 vaccine and completion of some clinical trials, AstraZeneca received emergency marketing authorization (referred to in the United States as emergency use authorization) for the distribution and use of AstraZeneca vaccine which was known as AZD1222. This was widely reported throughout the various news outlets, as well as on AstraZeneca's own website. The EMA granted by the World Heath Organization and the European Community (EU) extended the use or EUA to persons above the age of 18 years. Given the demand for vaccines worldwide, it was safe to assume that not all of the AZD1222 vaccine was or could be produced at a single facility.

The largest vaccine manufacturing facility in the world is located in India and is owned and operated by Serum Institute. India as a whole, and Serum in particular, supply a significant portion of the vaccines used in the world. In late UPD contractors were

provided with information and forms that were needed in order for UPD to provide AZ vaccines. Within days pricing was set as well.

Sometime in March 2021, Radical had approached UPD about obtaining the Astra Vaccine. Radical was purportedly representing the Government of Barbados which was also trying to obtain the single dose Johnson & Johnson-Janssen vaccines through an individual named Cheryl Chamley. UPD did not want to get involved in the transaction, in part, because there were some delay and/or quality control issues in the facility in Australia, that was one of the facilities manufacturing the vaccines, and from which it generally obtained the same, due in no small part by the countrywide lockdown. Notwithstanding this, UPD did indicate that the independent contractors could run the contracts through their own company which would be fullfiled through UPD's supply chain.

Moore's company was one of those contractors. Moore and GVE were introduced to Radical through Chamley and another person named Marsha LaFontinave. Radical and/or the Government of Barbados clearly understood that the vaccines would be manufactured under a license from Astra Zeneca or at an Astra Zeneca partner. At the time, the world demand for COVID 19 vaccines was significanty greater than anything that could be supplied out of a single facility or even by a single manfacture. This was recognized by the Barbados Ministry of Health as it specifically referred to the possible necessity of Embassy calls between Barbados and India, the location of Serum Institute which manufactured the bulk of the Astra Zeneca vaccine under the name Covishield. Serum had been on board to manufacture the vaccine as far back as 2020.

As far as obtaining vaccines out of a Belgium manufacturing facility, every

government trying to obtain the vaccine and their agents, knew or should have known that the British Government and the EU which had funded the research by AstraZeneca was first in line with the order and in fact both were embroiled in a dispute over the failure of Astra Zeneca to timely delivery of the 400 million promised doses. Ultimately, the dispute resulted in the EU taking legal action against AstraZeneca in April 2021. The dispute had been brewing for sometime and was heavily covered in the media. In April 2021, GVE and Radical reached an agreement regarding obtaining or facilitating the AZD1222 vaccine which was being manufactured by a number of companies for AstraZeneca. The initial agreements were marked up by counsel for Radical. The final versions of the Purchase Agreement, Paymaster Agreement along with the addition of a non-disclosure agreement were executed by the parties.

Regardless of the titles used in the Purchase Agreement, Radical was not the buyer nor was GVE the seller. A private individual or company could not buy the vaccines, only governments could. The seller in all COVID vaccine transactions was the manufacturer and typically sold through an allocation holder. The material received from UPD clearly indicated that they were for government sales only and the delivery point was the Barbados Ministry of Health.

Moore and GVE were introduced to Prestige Pegasus through a business acquaintance because Prestige was trying to buy masks in a partnership of somekind with Protecti Global Holdings. Protecti was a very large player in the PPE industry. Prestige was the entity that purportedly had the contacts with Serum which Moore believed from published reports to be one of the largest vaccine manufacturer in the world and which

would be manufacturing the AZD1222 vaccine.

Radical was well aware of the fact that the contact would be through Prestige and in turn Serum. Moore never represented that he was an allocation holder of the AZD-1222 vaccine. In fact, Olivia Watson, counsel for Radical is the person who placed the banking information for Prestige on the Irrevocable Pay Order. Prior to the release of the $10,200,000.00, Radical demanded and Prestige provided an AstraZeneca invoice which was provided to Radical.

The invoice was blacked out, which Moore did not believe was unusual since he believed that believed that Prestige was probably paying less than the $2,000,000.00 it was being paid and in any event it would have been substantially less than the amount which Radical had agreed to pay to obtain the vaccines for Barbados compared to the price through UPD had Moore sourced the vaccines through UPD. The invoice was confusing to Moore since he was not the buyer, but the government of Barbados was the purported buyer on who's behalf Radical was working.

Notwithstanding this, Mark Maloney the principal of Radical signed an irrevocable pay order to the paymaster, Stein, pay $10,200,000.00 to Prestige despite the fact that GVE was named on the invoice as the buyer and the agreement called for it to be paid to AstraZeneca.

Prestige had agreed to provide the vaccines through Serum for $2,000,000.00. This could yield a substantial profit to GVE of $8,000,000.00 less the transportation costs. Moore advised Stein that that Prestige was not supposed to get the entire $10,200,000.00 but only $2,000,000.00, the price for which it had agreed to provide the vaccines. Moore

advised Stein to pay the transportation company. Had the entire amount been paid to Prestige someone would have had to pay for the transportation and assuming that Prestige was nothing more than a fraud, GVE would have a lost profit of what amounts to about 7.5 million dollars and Radical would have suffered a loss of $10,200,000.00

On behalf of GVE, rather than withdraw the entire profit or 7.5 million for facilitating the transaction, Moore told Stein to hold the remaining funds of approximately 5.5 million dollars which represented unearned commission of 2 million and the additional profit. Moore had some concern that Prestige might have underbid the amount but I was aware that 3.7 million dollars would cover the last price quoted through UPD for one million doses at $3.70 per dose.

Within about one week, Radical discovered what Prestige was being paid when they were sent an email outlining the amounts paid out of the escrow account. Radical began to deal directly with Prestige and Serum which they were prohibited from doing under the confidentiality agreement. As a result of Radical dealing with Prestige, Coley started attempting to deal directly with the government of Barbados and attempted to get the government to enter into a contract directly with Prestige for $23.00 a dose which was the price or slightly below the price that Radical was apparently going to charge Barbados.

Once Radical discovered Radical discovered how much it was paying relative to the cost it got buyers remorse and cancelled the order in an attempt to increase its profit and in effect cut GVE and Prestige out of the equation. The effect of Radical's action is that Barbados has not vaccinated many of its people, despite the fact that the vaccines could have been supplied through an alterative source to Prestige. Serum Institute shutdown the

production of the vaccine in December 2021 because its inventory of the AstraZeneca vaccine topped 200,000,000 doses and there was not sufficient demand.

At no time did I or GVE defraud or intend to defraud Radical. To the contrary it is Radical that attempted to defraud GVE. In the letters presented from the Ministry of Health there is clearly a mistatement of intention. The letter indicates that the vaccines were needed and intended solely to vaccinate the population of Barbados and they would not be sold. According to government population reports, Barbados has a population of approximately 285,000. Of that those persons below the age of 18 are somewhere between 50,000 and 70,000. That leaves, between 215,000 and 225,000 who are within the class of persons covered by the emergency use authorization. The AstraZeneca vaccine is a two dose vaccine which means that at most it would only need 450,000 dose to fully vaccinate its population assuming that 100 percent of the population actually took the doses. Given the fact that Barbados received, 33,600 doses of vaccines through the United Nations COVAX facility on April 6, 2021, before the agreement was ever executed the amount is further reduced. Exhibit Q. In short, what is apparent, is that Radical had every intention of reselling the vaccine and simply had the someone in the government of Barbados unknowing lie one behalf of Radical so it could profit from the agreement.

In connection with the distributions made by the paymaster, RDS Cargo a logistics company was paid $485,000.00 for the transportation of the vaccines. Neither Moore or GVE had no prior dealings with RDS. That information was supplied by Prestige. Had GVE or Moore intended to defraud Radical, They certainly could have directed Stein to simply wire all of the profit to GVE and not worry about paying any sums of money to a

freight company.

Within a week of the transfer of funds to Prestige, RDS and GVE, matters seemed to fall apart. Despite the fact that there was a force majeure clause in the agreement demands for delivery dates were requested. Moore had no idea when the vaccines would be released by AstraZeneca because any information that I received would have been from Prestige would have been the same information given to directly to Radical and the Government of Barbados. In June 2021 Moore received an email that containing a copy of a letter that had been purportedly sent to the Prime Minister of Barbados from Michael Howarth at Serum Pharma acknowleding that the order had been placed with Astra Zeneca but that Astra Zeneca had been overwhelmed with other orders. This initially appeared problematic to me because the person listed as the as the Prime Minister had not been prime Minister since 2008 and had died a year earlier. He received an updated letter dated a couple of days later but did not receive it until July 2021 which was after the contract had been terminated and a demand for the return of funds made. Coley had quit communicating with him and was apparently communicating directly with the Barbadian Prime Minister and Maloney. On June 28, 2021, Radical through its outside counsel, terminated the escrow agreement via an email and demanded the return of the escrowed funds which were followed by a series of back and forth emails.

After the vaccines continued to be delayed or not delivered, Moore contacted Michael Howard with Serum directly. On July 12, 2021 Moore sent Howarth an email because he had received an some communication or email indicating that Serum Pharma had no relationship with AstraZeneca. Howarth responded back that while the order had

been placed, Serum Pharma was not yet licensed to manufacture the AstraZeneca vaccine. Even after the Radical cancelled the order and demanded its money back, it was clear that AstraZeneca had more orders than it could fill at the time. It was embroiled in litigation with the EU over the failure to meet the delivery schedules.

Moore approved the remained of the funds held in escrow which could have been used to obtain the vaccine through the UPD channels or directly from Serum Institute in India. He did not return the remaining funds because the agreement contained a force majeure clause and the return prevented him from obtaining vaccines from an alternative source. Absent the buying nation being one of the sponsors of the research, or having an early order for virtually all production such as the United States did with regard to Pfizer, Johnson & Johnson/Jannsen and Moderna, it would simply have to wait in line, until there was an sufficient supply or another supply chain available, but any dosages coming out of Belgium would be behind Great Britain and the EU which funded the research and ordered first.

In light of the force majeur provision in the agreement and the outstanding orders, it is GVE and my position that the contract was terminated before GVE was given the opportunity to perform and that had the agreement not been terminated, even assuming Coley absconded with the money she received, there was sufficient monies remaining to covered the cost of the vaccines through Serum Institute or another AstraZeneca licensed manufacturer.

## ARGUMENT

### A. Defendant's Did Not Violate California's Unfair Competition Law

Plaintiff's argument seems to be based almost exclusively on claims that GVE/Moore was only entitled to a commission. Nothing in the agreement provides that GVE/Moore were not entitled to a profit. To the contrary, UPD would not deal with Radical but allowed contractors such as GVE/Moore to contract and supply the vaccines through UPD channels. Radical's price was was significantly greater than either Prestige's quoted price or UPD's quoted price. Under either scenario GVE/Moore would have had a significant built in profit. Radical had been trying for sometime to procure vaccines and was unable to do so. UPD would not deal directly with Radical and it is apparent that none of the vaccine manufactures would either. Radical possesses neither a manufacturer, distributors or resellers license for vaccines so it had to go to someone who had access to the holder of an allocation or directly to an allocation holder. There is nothing unfair or deceptive about what amounts to a middle-man mark-up and Plaintiff has cited no authority for the same. Furthermore, what is clear is that Radical ignored the contract and waived most all of its claimed safety provisions. Nothing in the contract provides that the funds were to be paid to anyone other than Astra-Zeneca. Notwithstanding this, despite claiming to release the funds based upon the invoice to GVE, rather than release the funds to Astra Zeneca, it authorized the release of the funds to Prestige Pegasus who's name appears nowhere on the invoice. What is apparent is that Radical never followed the contract in any way shape or form.

### B. Radical is Not Entitled to Pierce the Corporate Veil

While Radical correctly states that law as to what factors should be considered, it ignores that fact that there is no case law which indicates what constitutes adequate capitalization. Adequate capitalization is inherently a factual question. Where you have a situation such as this case where GVE roles is access to the allocation holder of vaccines, given the fact that the buyer has to be a government and the seller is the allocation holder, the intermediary would not need any monies to be properly capitalized. Especially where there is an escrow agreement.

GVE is a sole member LLC. Any profit, losses, monies or assets are ultimately the property of the sole member or sole shareholder. The sole shareholder is free to spend money which is ultimately his in any manner he sees fit. Whether he can right is off as a business expense as opposed to it being taxes as a distribution may be a different matter, but people who earn substantial sums of money are free to spend those sums largely in any manner they deem fit as long as it is not illegal.

### C. Plaintiff's Misrepresentation Claims are without Merit.

Plaintiff's argument seems to assert that Moore/GVE had an obligation to tell Radical how much GVE would be making on the deal from a profit standpoint or that it was somehow limited to the 2 million dollar commission. No representations were made one way or the other about the profit that GVE would realize. In fact, one of the reasons for the Non-Disclosure agreement and presumably the blacking out of the pricing for the vaccines was because that was non of Radical's business. Radical was willing to pay a certain price for the vaccines. When a person purchases a product, the manfacturer or seller of the

product does not have an obligation to tell the buyer what they are paying for the product. To the extent that such was required under the contract, Radical waived that provision. Either way, it does not amount a misrepresentation simply because GVE/Moore made a profit. Nothing in the agreement indicates that it is a cost plus contract or price plus contract.

To the extent that the claims are based upon representations or statements passed on to Radical from Coley or Prestige, they are not Moore or GVE's representations, they are the representations of Prestige and Coley and Radical was clearly aware that such was the case since both GVE/Moore and Watson and Maloney were copied on the same emails and message that Moore forwarded.

### D. **Fraud and Conspiracy Claim**.

Plaintiff asserts various fraud and conspiracy claims as well. The claims are in reality part of the same shotgun approach. Essentially the claims are that everyone defrauded or conspired to defraud Radical. Ignoring the fact that Radical entered the agreement by first submitting a letter that it prepared for a government employees signature which it clearly knew was false or which it clearly knew was not true–that the vaccines were solely for Barbados and would not be resold, it has failed to produce any evidence that anyone other than Prestige and Coley defrauded everyone. Had Prestige or Coley, against whom a default judgment has been entered, actually provided the vaccines this matter would never have been filed, unless or course Radical still wanted more profit from GVE. Plaintiff has produce no evidence that establishes that GVE/Moore knew, at the time the funds were released, that Prestige or Coley going to defraud

everyone. To the contrary, Moore had every reason to believe and hope that the vaccines were going to be delivered. He authorized the payment of the freight company, he expected to realize another 3.5 million dollar profit. Had he wanted to defraud Radical he could easily have insisted the additional 3.5 million profit be distributed to him and absconded like Coley. Perhaps he was too hopeful, but that does not make his conduct either fraudulent nor does it constitute a conspiracy.

E. **Breach of Contract**

Radical's breach of contract broken down to its essential core is that GVE breached the contract because it failed to deliver the vaccines. The claim ignores a couple of essential points. First, the moment that Radical released the funds it was clear that Radical was looking to Prestige to deliver the vaccines, not GVE. Secondly, even assuming that Coley had not absconded with the funds, given the force majeure clause, GVE had an automatic extension of time to deliver. The clause provides:

> **Art. 12 Force Majeure**
> The parties shall not be in breach of any of its obligation under this Agreement where **failure to perform or delay in performing any obligations is due wholly or in part, directly or indirectly, upon the occurrence of: Act of God, act of public enemy, act of governmental bodies or agencies foreign or domestic, sabotage, riot, fire, floods, typhoon, explosions or other catastrophes, epidemics or quarantine restrictions, labour unrest or labour sabotages, accident, freight embargoes, exhaustion of raw materials, delays occasioned by carriers or delays of a seller of the seller or because any other event beyond the control of the seller, for the period of time occasioned by any such occurrence.** A party is not liable under a force majeure event in so far as it proves (a) that the failure was due to an impediment beyond its control, (b) that it could not reasonably be expected to have taken the impediment and its effects upon its ability to perform into account at the time of the conclusion

> of the contract, and (c) that it could not reasonably have avoided or overcome the impediment or its effects.

Because the vaccines were the subject of litigation with the British government and Astra was required to supply certain entities first, Barbados would not have been eligible to receive the vaccines at the time it cancelled the contract. Its cancellation of the contract was the breach under this scenario.

Under the assumption that Prestige and Coley simply absconded and defrauded everyone, GVE still had alternative sources for the vaccines, namely the UPD distribution channel although again, due to the preexisting obligations, Radical and the Government of Barbados would have to wait. The fact that Radical has never procured or supplied AZD-1222 even after terminating the agreement is a clear indication that its objectives of realizing a profit on the sale of vaccines at the expense of the Barbadian people was abandoned. The Barbados government could have received the vaccines for next to nothing through the COVAX facility from which they received 33,600 doses before the agreement giving rise to this case was ever executed. Alternatively, they could have received the vaccines later in the fall of 2021 when Serum Institute quit manufacturing the vaccines due to lack of demand. In all, when the lack of demand dissipated Radical simply chose to pull out of an agreement where they would no longer be able to make a profit, especially at the equivalent price of $12.00 a dose. Rather than GVE breaching the agreement, it was Radical that breached the agreement and the decision to do so was a wise move on its part because it stood to lose significantly more had it waited to for the vaccines. That is, it chose to breach the contract to cut its losses as opposed to end up holding 1 million doses that would eventually expire that it had paid 12.20 per dose for and

trying to sell it to Barbados or any other government that could likely get it for free or next to nothing due to the reduced demand, increased stockpiles that existed at Serum Institute or any other manfacturer of the Astra Zeneca AZD-1222 vaccine.

### F. GVE's Counter-Complaint for Breach of Contract

Radical, in its capacity as counter-defendant, has also moved for summary judgment, asserting a portion of the same facts in support of it's motion for summary judgment in its capacity as Plaintiff. For the same reasons it is not entitled to summary judgment in its capacity as Plaintiff it not entitled in its capacity as counter-defendant. Radical's entire posture in this case blindly ignores the fact that it entered into an agreement during a pandemic to procure vaccines on behalf of a country that had to stand in line to obtain it vaccines. It had to do so because there was a pandemic, the pandemic created an excess demand for the vaccine that Astra Zeneca was unable to timely meet. Astra could not meet its existing obligations resulting in the British government bring suit against it. The contract was signed by Radical and GVE on April 16, 2021. Less than 10 days after it was signed Astra was sued by the British Goverment and the EU over its failures to meet the supply it had promised. See, Docket Entries 153 at ¶ 14 and 153-1, Exhibit F. All of these are clearly within the force majeure clause which extended the time for GVE to comply with the agreement.

Had the Agreement not been terminated, there remained sufficient funds in escrow to have provided the vaccine, through an alternative source whether that be through UPD or directly with Serum Institute which had already been supplying Barbados through the COVAX Facility Program of the United Nations. See Docket Entry 153 at ¶¶ 29 and 40.

# CONCLUSION

For all of the reasons set forth above, the Motions for Summary Judgment should be denied.

Respectfully submitted,

*/s/ Michael T. Stoller*
Michael T. Stoller (SBN 120241)
**STOLLER LAW GROUP,PC.**
5747 Hoback Glen Road
Hidden Hills, California 91302
(310) 245-4028
(424) 702-3201 facsimile
michael.stoller@stollerlawgroup.com

*/s/ John D. Schwalb*
**JOHN D. SCHWALB, PLLC**
120 Third Avenue South
Franklin, Tennessee 37064-2511
(615) 794-7100
(615) 794-6333
john@jdschwalb.com

# CERTIFICATE OF SERVICE

I certify that the foregoing has been served via the electronic filing system of the Central District of California all counsel or record including the following:

Gerardo A. Vazquez
gv@gvazquez.com
Ralph R. Longo, IV
rl@gvazquez.com
Steven B. Herzberg
sh@gvazquez.com
**VAZQUEZ & ASSOCIATES, P.A.**
1111 Brickell Ave., Suite 1550
Miami, Florida 33131

Maurice D. Pessah
maurice@pessahgroup.com
Summer E. Benson
sbenson@pessahgroup.com
**PESSAH LAW GROUP, PC**
661 N. Harper Ave., Suite 208
Los Angeles, CA 90048

Rinat Klier-Erlich
rerlich@zelmserlich.com
Brian T. Smith
bsmith@zelmserlich.com
**ZELMS ERLICH & MACK**
20920 Warner Center Lane, Suite B
Woodland Hills, California 91367

Mark T. Drooks
mdrooks@birdmarella.com
Sharon Mayer
smayer@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561

and was served upon the following entities or persons via first class mail:

Prestige Pegasus LLC
c/o Rance Bauman, Registered Agent
7182 Edgewood Drive
Highlands Ranch, CO, 80130

Moniladae Coley
6625 Reseda Blvd.
Reseda, CA 91335

this 7th day of November 2022

　　　　　　　　　　　　　　　　　　　　　　　*/s/ John D. Schwalb*