Mark T. Drooks – State Bar No. 123561
  mdrooks@birdmarella.com
Sharon Mayer – State Bar No. 212862
  smayer@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Defendants Warner, Norcross +
Judd LLP and James L. Scott

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RADICAL INVESTMENTS LTD., a St. Lucia Company,<br><br>              Plaintiff,<br><br>    vs.<br><br>GOOD VIBRATIONS ENTERTAINMENT LLC, a Florida Limited Liability Company, et al.,<br><br>              Defendants. | CASE NO. 2:22-cv-02752-SVW-AFM<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS WARNER NORCROSS + JUDD LLP AND JAMES L. SCOTT IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:     November 21, 2022<br>Time:     1:30 p.m.<br>Crtrm.:  10A<br><br>Assigned to Hon. Stephen V. Wilson, Courtroom 10A |

3832748.1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS & AUTHORITIES ................................................. 6

I.      INTRODUCTION ................................................................................... 6

II.     THE COURT LACKS PERSONAL JURISDICTION OVER THE
        WNJ DEFENDANTS ............................................................................ 8

        A.      The Court Did Not Previously Rule on Its Personal Jurisdiction
                Over the WNJ Defendants. ........................................................ 8

        B.      The Court Lacks Personal Jurisdiction over the WNJ Defendants ....... 10

                1.      RIL Has Failed to Show Any Basis for the Court's
                        Exercise of General Jurisdiction. ................................... 10

                2.      RIL Has Failed to Show Any Basis for the Court's
                        Exercise of Specific Jurisdiction. ................................. 10

III.    RIL'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ........ 15

IV.     RIL FAILS TO STATE A CLAIM AS TO THE WNJ DEFENDANTS ....... 16

V.      CONCLUSION ................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bernhard v. Bank of Am. Nat. Tr. & Sav. Ass'n,*
5
   19 Cal. 2d 807 (1942) ................................................................................. 19

6

*B.L.M. v. Sabo & Deitsch,*
7
   55 Cal. App. 4th 823 (1997) ............................................................... 17, 18

8

*Burger King Corp. v. Rudzewicz,*
9
   471 U.S. 462 (1985) ................................................................................. 11

10

*Burger v. Pond,*
   224 Cal. App. 3d 597 (1990) .................................................................. 20
11

12

*Chang v. Lederman,*
   172 Cal. App. 4th 67 (2009) .................................................................. 21
13

14

*Clemmer v. Hartford Ins. Co.,*
   22 Cal. 3d 865 (1978) ............................................................................. 19

15

*Courtney v. Waring,*
16
   191 Cal. App. 3d 1434 (1987) ........................................................... 18, 19

17

*Goodman v. Kennedy,*
18
   18 Cal. 3d 335 (1976) ............................................................................. 17

19

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
20
   564 U.S. 915 (2011) ................................................................................. 10

21

*Hanson v. Denckla,*
   357 U.S. 235 (1958) ................................................................................. 11
22

23

*Help At Home, Inc. v. Medical Capital, L.L.C.,*
   260 F.3d 748 (7th Cir. 2001) .................................................................. 12
24

*Johnson v. Superior Court,*
25
   38 Cal. App. 4th 463 (1995) .................................................................. 19

26

*Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law,*
27
   787 F.2d 7 (1st Cir. 1986) ...................................................................... 13

28

3

THE WNJ DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

*Mayes v. Leipziger,*
   674 F.2d 178 (2nd Cir. 1982) ............................................................................. 13

*Newsome v. Gallacher,*
   722 F.3d 1257 (10th Cir. 2013) ........................................................................ 13

*Omega Video Inc. v. Superior Court,*
   146 Cal. App. 3d 470 (1983) ............................................................................ 17

*Osornio v. Weingarten,*
   124 Cal. App. 4th 304 (2004) .......................................................... 16, 17, 19, 22

*In re Packaged Seafood Prods. Antitrust Litig.,*
   338 F.Supp.3d 1118 (S.D. Cal. 2018) .............................................................. 10

*Pebble Beach Co. v. Caddy,*
   453 F.3d 1151 (9th Cir. 2006) .......................................................................... 11

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,*
   133 Cal. App. 4th 658 (2005) .......................................................................... 16

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ........................................................................... 11

*Scott v. Breeland,*
   792 F.2d 925 (9th Cir. 1986) .............................................................................. 9

*Sher v. Johnson,*
   911 F.2d 1357 (9th Cir. 1990) .......................................................................... 13

*Weaver v. Superior Court,*
   95 Cal. App. 3d 166 (1979) .............................................................................. 17

**Statutes**

California Code of Civil Procedure § 340.6 .................................................... 15, 16

**Rules**

Fed. R. Civ. P. 15(a)(2) ........................................................................................ 9

Local Rule 7-10 ..................................................................................................... 9

**Other Authorities**

*Fuld, Lawyers' Standards and Responsibilities in Rendering Opinions*,
   33 BUS. LAW. 1295 (1978)..................................................................................21

1 Witkin, *California Procedure 4th, Attorneys* §§ 323-333....................................21

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

Plaintiff Radical Investments Ltd. ("RIL") has failed to meet its burden to show that this Court has personal jurisdiction over the newly added Defendants Warner Norcross + Judd LLP ("WNJ") and James L. Scott ("Scott" and together with WNJ, the "WNJ Defendants").

RIL is wrong in claiming that the Court already has ruled on the issue.  When the Court granted RIL leave to file the Second Amended Complaint ("SAC") over WNJ's objections, it did not determine that it had personal jurisdiction over the WNJ Defendants, nor could it do so at the time, without a motion to dismiss.

RIL has very little to say on the merits of the jurisdictional issue.  It does not dispute that the alleged representation in the April 24, 2021 letter neither emanated from California nor was aimed at anyone in California.  It originated from either *Michigan* or *Florida* and was allegedly directed at RIL in *Barbados*.  Nor does RIL dispute that neither Scott nor Alex Moore ("Moore") was present in California during the single phone call that preceded the letter.

Critically, indeed fatally, RIL points to no conduct *by the WNJ Defendants* that either occurred in or was directed at California.  Instead, RIL improperly relies solely on the conduct of other parties.  It argues only that Defendant Good Vibrations Entertainment LLC ("GVE") was a California entity and that the transaction occurred in California because the escrow agent was located in California.  RIL makes no effort to reconcile these assertions with the allegations in the SAC, where RIL alleged in no uncertain terms that GVE was a *Florida* entity, that the transaction was negotiated in *Florida* and that it was set to occur in *Barbados*.

RIL's argument in any event fails under its current version of the facts.  Case law is clear that a non-resident attorney is not subject to personal jurisdiction in California simply because he or she represents a California client or has

communications with a client located in California.  RIL does not even attempt to explain why this case law, cited in the moving papers, is not dispositive of its jurisdictional argument.

If the Court is inclined to exercise jurisdiction, however, the claim against the WNJ Defendants should still be dismissed because it is time-barred on its face.  RIL contends that it did not discover Scott's alleged negligence until his deposition, but does not dispute that earlier events put it on *inquiry notice* as to its potential claim. Indeed, by definition, RIL cannot dispute that it was aware of GVE's non-performance by May 2021, when it sent notice of its intent to terminate the transaction.  At that time, it must have known that it relied on the letter that forms the basis for its claims.  RIL's claim therefore is time-barred.

Finally, RIL's legal malpractice claim fails because the WNJ Defendants did not owe RIL a duty of care.  Although RIL cites the correct standard for determining whether the case falls within the limited exception in which an attorney's liability extends to third parties, RIL utterly fails to analyze its application to the allegations here.  Most fundamentally, courts have consistently refused to extend the attorneys' duty of care to third parties whose interests are adverse to those of their clients. RIL's sole response is that the April 24, 2021 letter was intended to induce its reliance and to clear its objection to GVE's non-performance.  That argument, however, only underscores that its interests conflicted with those of GVE at the time.  Moreover, RIL was not identified in the letter as the recipient or the intended beneficiary, and the language of the letter does not permit the conclusion that it was written solely for RIL's benefit.  Finally, RIL does not dispute that GVE is a party to the proceeding and can bring a malpractice claim in its own name.  Under these circumstances, the WNJ Defendants' duty of care does not extend to RIL.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER THE WNJ DEFENDANTS

### A.   The Court Did Not Previously Rule on Its Personal Jurisdiction Over the WNJ Defendants.

RIL's assertion that the Court previously ruled that it may exercise personal jurisdiction over the WNJ Defendants is patently incorrect. There has been no such ruling by the Court. Instead, the issue was raised in WNJ's opposition to RIL's Motion for Leave to Amend, where WNJ argued that granting leave to amend would be futile, among other things, because the Court lacks personal jurisdiction over the WNJ Defendants. *See* Declaration of Sharon Mayer in support of Motion to Intervene, Ex. 1 (proposed Opposition to RIL's Motion for Leave to Amend), at p. 17-20 (Dkt # 136-1).[1] Presumably recognizing the apparent merit of the argument, the Court instructed RIL to address the personal jurisdiction argument in its reply brief. August 19, 2022 Order (Dkt # 159). RIL then filed a reply brief, arguing that the Court has personal jurisdiction, and the Court granted RIL leave to file the Second Amended Complaint. RIL's September 2, 2022 Reply (Dkt # 167); September 15, 2002 Order (Dkt # 176). The Court's order did not address, let alone suggest that it had resolved, the personal jurisdiction issue. *Id.*

There has been **no** prior motion to dismiss by the WNJ Defendants and **no** prior determination by the Court on the question of personal jurisdiction over the WNJ Defendants. WNJ's Opposition to RIL's Motion for Leave to Amend asked the Court to deny RIL's request for leave to amend the complaint; not to dismiss it

---

[1]   RIL falsely asserts that WNJ was the moving party on this issue, by arguing that WNJ raised the personal jurisdiction argument in its *motion* to intervene. That is not true. The argument was raised in the proposed Opposition to RIL's Motion for Leave to Amend, which was attached as Exhibit A to the declaration of Sharon Mayer in support of WNJ's Motion to Intervene. *See* Declaration of Sharon Mayer in support of Motion to Intervene, Ex. 1 (proposed Opposition to RIL's Motion for Leave to Amend), at p. 17-20 (Dkt # 136-1).

1  for lack of personal jurisdiction.  Accordingly, the most the Court could have

2  decided on RIL's Motion for Leave to Amend was that RIL had a sufficiently

3  colorable argument on personal jurisdiction that it would allow RIL to file a Second

4  Amended Complaint, so that the issue could be addressed on a motion to dismiss.

5  Any other conclusion would run afoul of the WNJ Defendants' due process

6  rights.  *First*, because RIL's argument on personal jurisdiction was raised on reply

7  in support of its Motion for Leave to Amend, the WNJ Defendants did not have an

8  opportunity to respond to it.  *See* Local Rule 7-10.  If the WNJ Defendants were the

9  moving party, they would have had an opportunity to reply as a matter of law.

10  *Second*, the standard on a motion for leave to amend the pleadings is

11  manifestly lower than the standard that RIL must meet to defeat the WNJ

12  Defendants' motion to dismiss for lack of personal jurisdiction.  While leave to

13  amend the complaint should be "freely give[n]... when justice so requires," (Fed. R.

14  Civ. P. 15(a)(2)), the WNJ Defendants' motion to dismiss requires RIL to meet the

15  burden of making a *prima facie* showing that the Court has jurisdiction over the

16  WNJ Defendants.  To do so, RIL may not rely simply on the pleadings and is

17  "obligated to come forward with facts, by affidavit or otherwise, supporting

18  personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  That

19  burden is substantially more demanding than showing lack of futility on a motion

20  for leave to amend.

21  *Third*, Scott was not a party to WNJ's opposition to the Motion for Leave to

22  Amend.  Depriving him of the opportunity to challenge the Court's personal

23  jurisdiction over him based on the opposition brief of another party offends basic

24  principles of justice.  RIL thus seeks to avoid proper scrutiny of the Court's

25  jurisdiction and hijack due process.

26

27

28

**B.      The Court Lacks Personal Jurisdiction over the WNJ Defendants.**

**1.      RIL Has Failed to Show Any Basis for the Court's Exercise of General Jurisdiction.**

RIL admits that it has the burden to demonstrate a basis for the exercise of personal jurisdiction over the WNJ Defendants, but utterly fails to meet that burden. Aside from citing the standard for general jurisdiction, RIL makes no effort to show that it is satisfied here.  RIL thus implicitly concedes the obvious: this Court lacks general jurisdiction over either of the WNJ Defendants.

The uncontroverted evidence compels this conclusion.  RIL does not dispute that Scott neither resides nor practices law in California; that he owns no property in California and holds no California licenses; that he does not engage in business in California or pay any income taxes in California.  Declaration of James L. Scott ("Scott Decl.") (Dkt # 203-2) ¶ 7.  There is therefore no basis for the exercise of general jurisdiction over Scott.

And, as an entity defendant, WNJ is "at home" and hence "domiciled" only where it is organized or has its principal place of business.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (articulating the "at home" test regarding a corporation); *In re Packaged Seafood Prods. Antitrust Litig.,* 338 F.Supp.3d 1118, 1140 (S.D. Cal. 2018) (applying the "at home" test to a limited partnership).  RIL does not dispute that WNJ is organized under the laws of Michigan and has its principal place of business in Michigan.  SAC ¶ 10; Scott Decl., ¶ 2.  It is therefore "at home" in Michigan; not in California.

**2.      RIL Has Failed to Show Any Basis for the Court's Exercise of Specific Jurisdiction.**

As more fully discussed in the moving papers, specific personal jurisdiction may be exercised over a non-resident defendant only where: "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in

10

the forum, (2) the claim arises out of or results from defendant's forum related activities, and (3) the exercise of jurisdiction is reasonable." *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1155 (9th Cir. 2006).  To demonstrate purposeful availment here, RIL must establish that the WNJ Defendants: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).  RIL has failed to satisfy each part of this analysis.  It has failed to show that Scott's alleged conduct *occurred in* California, was *directed at* California or *caused harm in* California; that its claim arises from any California-related activity *by the WNJ Defendants*; or that the exercise of personal jurisdiction over them in California would be reasonable.

RIL does not dispute, nor can it, that the April 24, 2021 letter that forms the basis for its claim was neither sent to nor issued from California; rather, it was sent by Moore from Florida to RIL in Barbados.  SAC ¶¶ 1-3, 30-33.  Nor can RIL dispute that, during the sole telephone call between Scott and Moore that preceded the letter, neither party was located in California; Scott was in Michigan and Moore was in Florida.  Scott Decl., ¶ 9.  RIL therefore cannot point to any conduct by the WNJ Defendants that either took place in California or was directed at California.

The fundamental flaw, of constitutional dimensions, in RIL's opposition is that instead of relying on conduct *by the WNJ Defendants* aimed at California, its entire personal jurisdictional argument relies on the conduct and contacts of other parties.  But purposeful availment must be based on the intentional conduct of the *defendants themselves* and not that of third parties.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (same).

RIL argues, for example, that GVE is a California entity and that the WNJ Defendants thus represented a California client (including by receiving a phone call

from a "310" number[2]) in connection with a transaction that was negotiated and set to occur in California.  RIL offers no proof for any of these assertions, and makes no effort to reconcile this argument with the allegations of the SAC, which explicitly alleges:

- That GVE is a "**Florida** limited liability company organized under the laws of the State of **Florida**," with its principal place of business in "the Southern District of **Florida**," not California.  SAC ¶ 2 (emphasis added);

- That RIL is a company formed under the laws of St. Lucia, with its principal place of business in **Barbados**, not California.  *Id.*, ¶ 1;

- That Moore, who is GVE's sole member, CEO and COO, at all relevant times resided in **Florida**, not in California.  *Id.*, ¶¶ 3, 30;

- That the Purchase Agreement was negotiated on behalf of RIL from **Florida**, not California.  *Id.*, ¶ 29;

- That the transaction at issue contemplated the supply of vaccines for the government of **Barbados**, not California.  *Id.*, ¶¶ 1, 32.

RIL is bound by its own allegations.  *See Help At Home, Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001) ("a party is bound by what it states in its pleadings" (internal quotes omitted)).  It cannot pivot now by recharacterizing the parties and the transaction at issue in order to manufacture a basis for the exercise of personal jurisdiction over the belatedly added parties.

RIL argues that factual conflicts must be resolved in favor of the plaintiff, citing *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  Here, however, RIL's argument is belied by its *own* allegations.  There is no reason to favor RIL's currently convenient allegations over those that it made when it was

---

[2]   RIL's assertion also begs the question how *accepting* a phone call *from* a California area code can be deemed intentional conduct aimed *at* California.  What is more, Scott cannot be presumed to have memorized every area code in North America, such that answering a call from an area code can be deemed an intentional act directed specifically at that jurisdiction.  This sort of conclusion would render the "purposeful availment" standard meaningless.

1   trying to lay jurisdiction in Florida.  Moreover, RIL does not support its

2   jurisdictional argument with evidence, but merely relies on speculation and

3   conclusory characterizations.  There are therefore no conflicting declarations that

4   warrant giving deference to RIL's most recent version of the facts.

5        But even if RIL's assertions were factually true, its arguments still fail as a

6   matter of law.  As more fully discussed in the moving papers, neither the

7   representation of a California client by a non-resident attorney, nor other contacts

8   incidental to that representation, such as phone calls to or from the forum state,

9   satisfy the purposeful availment requirement as to the non-resident attorney.  *Sher v.*

10  *Johnson*, 911 F.2d 1357 (9th Cir. 1990) ("[o]ut-of-state legal representation [of a

11  California client] does not establish purposeful availment of the privilege of

12  conducting activities in the forum state, where the law firm is solicited in its home

13  state and takes no affirmative action to promote business within the forum state.");

14  *Mayes v. Leipziger*, 674 F.2d 178, 185 (2nd Cir. 1982) (no personal jurisdiction in

15  New York over a California law firm representing a New York resident in litigation

16  in California even though the firm sent letters and made phone calls to the client in

17  New York); *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, *Attorneys at Law,*

18  787 F.2d 7, 9, 11 (1st Cir. 1986) (no personal jurisdiction in New Hampshire over a

19  Massachusetts law firm representing a New Hampshire client in various legal

20  matters in Massachusetts where the firm solicited the client in its own state);

21  *Newsome v. Gallacher*, 722 F.3d 1257, 1280 (10th Cir. 2013) (recognizing the

22  "majority" approach as one that declines to find personal jurisdiction over an out-of-

23  state law firm based solely on its out-of-state representation of an in-state client).

24       Although these cases, devastating to RIL's position, were prominently cited

25  in the moving papers, RIL makes no attempt even to address them.  Its silence on

26  the issue speaks volumes: ***Even if GVE were a California client and even if Moore***

27  ***had spoken with Scott from his "310" number, the purposeful availment test still***

28  ***would not be met***.

1      The location of the escrow agent, attorney Charles Stein and his firm

2 (collectively, the "Stein Defendants"), in California does nothing to establish

3 purposeful availment by the WNJ Defendants.  RIL does not dispute, nor can it, that

4 the WNJ Defendants were not parties to the Escrow Agreement or the Purchase

5 Agreement, had no involvement in drafting these agreements, and did not select the

6 escrow agent.  In fact, there is no allegation that the WNJ Defendants even saw

7 these agreements before this action was filed, or had any communications with the

8 Stein Defendants.  The Stein Defendants' contacts with California therefore have no

9 bearing on whether the Court has jurisdiction over the WNJ Defendants.[3]

10      Equally unavailing is RIL's argument that the Purchase Agreement and the

11 Escrow Agreement included a California forum selection clause.  Having neither

12 signed nor seen those agreements, the WNJ Defendants are not bound by them.  The

13 forum selected by the parties to those agreements is not a contact that can be

14 attributed to the WNJ Defendants.

15      RIL's reliance on a draft opinion that RIL's general counsel Olivia Watson

16 drafted and sent to Scott is another example of its wholly misguided attempt to

17 premise jurisdiction on the conduct of others.  Ms. Watson's draft was her own

18 "wishful thinking" of what the letter should include.  Declaration of Ralph Longo

19 ("Longo Decl.") (Dkt # 212-1), Ex. 2.  Regardless of what Ms. Watson wrote in her

20 draft, there is no dispute that Scott did not adopt it and never signed it.

21      RIL does not even try to satisfy the second prong of the "effects test" - that

22 the alleged conduct caused injury that was likely to be suffered in California.

23 Ignoring this part of the test will not make it go away.  The only aspect of the

24 transaction that involved California is the location of the Stein Defendants, who

25 allegedly distributed the funds in a manner inconsistent with the Purchase

26

27 [3]    Moreover, the transaction was entered into and "occurred" where the parties

28 were located and not where the funds were escrowed.

Agreement.  That, however, is not where the alleged harm was suffered.  If RIL relied on the April 24, 2021 letter to its detriment, the harm was suffered in Barbados - where RIL resides - not where the escrow agent allegedly committed an unrelated tort.  The location of the escrow agent is precisely the type of random and fortuitous contact on which the Court's jurisdiction cannot be based.

RIL further does not dispute that the exercise of personal jurisdiction over the WNJ Defendants would be unreasonable.  Indeed, it offers no response to the following:

- California has no particular interest in adjudicating a dispute between a St. Lucia/Barbados entity, on the one hand, and Michigan residents, on the other hand, concerning the purchase of vaccines for the government of Barbados.  Nor does California have any interest in adjudicating a claim against Michigan lawyers who allegedly sent a letter to Florida, which in turn caused an injury to a St. Lucia/Barbados entity.

- It should not be lost on the Court that this case was transferred from Florida to California solely based on a forum selection clause in a July 2021 settlement agreement between the Stein Defendants and RIL, to which the WNJ Defendants are not a party.

- California is neither a convenient nor efficient forum for the WNJ Defendants.  The WNJ Defendants are not alleged to be involved in the fraudulent scheme that is likely to consume most of the Court's time during pre-trial and trial proceedings; only one of RIL's thirty-three causes of actions is asserted against the WNJ Defendants.  A separate trial for the WNJ Defendants in Michigan will be far more efficient than dragging them into an ongoing fraud case in California.

Thus, particularly in view of the tenuous and indirect contacts asserted as to them, the exercise of jurisdiction over the WNJ Defendants would be unreasonable.  Notably, RIL's opposition disputes none of these points.

## III.   RIL'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

RIL does not dispute that the applicable limitations period is the one-year provided in California Code of Civil Procedure § 340.6.  According to RIL, its claim is not time-barred because it did not discover that malpractice was committed until Scott's deposition on July 18, 2022.  The statute of limitations, however, begins to run once "the plaintiff discovers, *or through the use of reasonable diligence should*

THE WNJ DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

1   *have discovered*, the facts constituting the wrongful act or omission…"  CCP §

2   340.6.  Thus, once a plaintiff has "sufficient knowledge" to put it on "inquiry

3   notice" that it has a potential claim against defendants, the limitation period begins

4   to run.  *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133

5   Cal. App. 4th 658, 682 (2005).  RIL does not even address the date on which it was

6   put on inquiry notice.

7        As more fully discussed in the moving papers, RIL knew or should have

8   known that it has a potential claim against the WNJ Defendants by no later than

9   May 28, 2021, when RIL delivered its notice of intention to terminate the agreement

10   after concluding that GVE was not going to perform.  SAC ¶ 53.  At that time, RIL

11   knew or should have known that any assurances in the April 24, 2021 letter, on

12   which it claims to have relied, were questionable, at best.

13        Ms. Watson's April 25, 2021 draft opinion letter, attached to RIL's

14   opposition, confirms that RIL was on inquiry notice even sooner than that.  Ms.

15   Watson's draft reflects RIL's dissatisfaction with the April 24, 2011 letter and

16   includes what RIL wanted Scott's letter to confirm.  Longo Decl., Ex. 2.  With Scott

17   refusing to sign Ms. Watson's draft, by April 25, 2021, RIL already was on inquiry

18   notice that the contents of the April 24, 2021 letter were in question and could give

19   rise to a claim.  RIL could not delay the accrual of the limitations period by making

20   a tactical decision not to investigate the potential claim or depose WNJ or Scott.

21        RIL waited until October 10, 2022, almost 16 months after May 28, 2021 and

22   almost 17 months after April 25, 2021, before filing its SAC adding the WNJ

23   Defendants as parties.  The legal malpractice claim therefore is time-barred.

24   **IV.   RIL FAILS TO STATE A CLAIM AS TO THE WNJ DEFENDANTS**

25        RIL's legal malpractice claim must be dismissed because the WNJ

26   Defendants' duty of care does not extend to RIL, a third party to the alleged

27   attorney-client relationship.  Each of the factors articulated in *Osornio v.*

28

3832748.1

16

1  *Weingarten*, 124 Cal. App. 4th 304, 330 (2004) on the issue of liability weighs in

2  favor of this conclusion.

3      Most fundamentally, the sixth factor described in *Osornio* - the burden on the

4  profession - requires dismissal because RIL's interests were adverse to those of

5  GVE, the alleged client.  Courts have consistently refused to extend the attorney's

6  duty of care to third parties whose interests were adverse to those of the client.

7  *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 838 (1997) ("it would be

8  anomalous to hold that a person in an adverse or antagonistic position [to the

9  attorney's client] could nonetheless rely on a legal opinion of the attorney as a basis

10  for holding the attorney liable for negligent misrepresentation."); *Weaver v.*

11  *Superior Court*, 95 Cal. App. 3d 166, 180 (1979) ("In the case at bar a former

12  litigant is suing adverse counsel.  Clearly, an adverse party is not an intended

13  beneficiary of the adverse counsel's client."); *Omega Video Inc. v. Superior Court*,

14  146 Cal. App. 3d 470, 480 (1983) ("It is the present state of California law that an

15  attorney may not be sued for negligent representation of a client by an adverse party

16  in an action who claims to have suffered resulting injury from such negligence.");

17  *Goodman v. Kennedy*, 18 Cal. 3d 335 (1976) (third party not permitted to recover on

18  the basis of attorney's erroneous advice to clients that shares of stock could be

19  issued to clients and sold to third party without jeopardizing registration exemption).

20  RIL was GVE's transactional counterpart, and its interests were adverse to GVE in

21  connection with the agreements at issue.  This was particularly true when Moore

22  sent the April 24, 2021 letter to RIL, allegedly to resolve the then-pending dispute

23  over GVE's compliance with the Purchase Agreement.  SAC ¶¶ 36-38.  Any duty of

24  care that the WNJ Defendants may have had thus did not extend to RIL.

25      In attempting to distinguish *B.L.M.*,[4] RIL fails to address the precise point for

26

27  ─────────────
[4]   RIL does not even try to distinguish any of the other cases that are cited in the

28  moving papers on this point.

which the WNJ Defendants cite it – the adversity between the party claiming to rely on the attorney's work product and the client.  Instead, RIL argues that the April 24, 2021 letter "was used to supplement and confirm GVE's representations to RIL, and that the WNJ Defendants were aware that RIL was the intended beneficiary of the [letter]."  Opp. at 15:7-9.  If by this contention RIL is arguing that it was not truly an adverse party because its interests coincided with those of GVE, a similar argument was rejected in *B.L.M*.  The dissent there argued that the parties were involved in arms-length negotiations and were cooperating in trying to build the development project.  *B.L.M*, 55 Cal. App. 4th at 838-39.  The majority rejected this argument, explaining:

> [T]he appointment of Sabo & Deitsch as special counsel to Rialto and general counsel to the redevelopment agency would create a primary duty of loyalty on the part of the firm toward those clients.  The fact that those entities were involved in arm's-length negotiations with B.L.M. regarding development of the project would preclude representation of B.L.M. by Sabo & Deitsch, in the absence of a written waiver.

> We conclude that it would be inappropriate to hold an attorney liable to a third party for a legal opinion which the third party could not, under the Rules of Professional Conduct, have contracted to obtain from that attorney.  We therefore hold that the reliance by B.L.M. on the legal opinion of Sabo & Deitsch regarding payment of prevailing wage was not justifiable under the facts alleged, and that B.L.M. has failed to sufficiently allege facts to support its claim.

*Id.*, at 839.  Here, as in *B.L.M.*, the WNJ Defendants could not represent both GVE and RIL in the underlying transaction without a waiver because their interests were in conflict.  The WNJ Defendants' duty of care therefore cannot extend to RIL if, as RIL contends, the WNJ Defendants were representing GVE.

The cases RIL cites only underscore the point that RIL seeks to obfuscate: an attorney does not owe a duty of care to an adverse party.  In *Courtney v. Waring*, 191 Cal. App. 3d 1434 (1987), for example, the court determined that the attorneys

1   who prepared a franchise prospectus that failed to disclose material information

2   were liable to the franchisees because they knew that the prospectus would be

3   shown to prospective franchisees and that the information contained in it would be

4   used to induce these persons to purchase the franchises.  *Id.*, at 1435.  Unlike here,

5   however, when the attorneys prepared the prospectus on behalf of the franchisor, the

6   prospective franchisees had not yet been solicited and were not parties adverse to

7   the attorney's client.  The court therefore saw no conflict in extending the attorneys'

8   duty of care.

9       RIL also cites *Johnson v. Superior Court*, 38 Cal. App. 4th 463, 473 (1995).

10  There, the court *refused* to extend the attorneys' duty of care to the limited partners

11  because the attorneys were hired to represent the general partner in the limited

12  partners' buyout and dissolution of the partnership.  The limited partners' interests

13  therefore were adverse to those of the general partner, and the attorneys thus did not

14  owe them a duty of care.[5]

15      Contending that the sixth factor supports liability, RIL states that the April 24,

16  2021 letter was specifically intended to induce reliance by RIL.  Opp. at 16:11-25.

17  That argument, however, fails entirely to address the sixth factor - the burden on the

18  profession.  Instead, it addresses only the first factor - the extent to which the

19  services were intended to affect the plaintiff.  In fact, RIL offers the same response

20  as to each of the factors.  But, as RIL recognizes elsewhere, the extent to which the

21  services were intended to affect the plaintiff is only one of six factors that should be

22  weighed in considering whether the attorney owes a duty of care to a third party

23  (with the sixth factor at times being considered dispositive).  *Osornio*, 124 Cal. App.

24

25  _____

    [5]   RIL also cites *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 875 (1978) and

26  *Bernhard v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 19 Cal. 2d 807, 811 (1942).  Those
    cases involved the estoppel effect of a prior criminal conviction in a subsequent civil

27  proceeding and the concept of "privity."  They have nothing to do with the matters

28  at issue here.

at 330.  RIL offers no authority to support its attempt to elevate the first factor to trump all the others.

The WNJ Defendants demonstrated in the moving papers that the fifth factor, the policy of preventing future harm, weighs against liability because courts have found no future harm where, as here, the client is a party to the proceeding who can bring a claim in its own name. *Burger v. Pond*, 224 Cal. App. 3d 597 (1990). Instead of analyzing the application of this factor, RIL seeks to distinguish *Burger* on the misguided basis that the transaction there did not intend to benefit the plaintiff.  Opp at 16:26-17:8.  Again, RIL does not discuss *Burger* for the proposition for which it is cited.  Nor does it argue that there will be any future harm by refusing to extend the WNJ Defendants' liability here.

The fourth factor considers the closeness of the connection between the conduct and the injury.  Again, RIL's sole response is that the letter was intended to induce its reliance and persuade it that GVE had the ability to perform under the agreement.  This argument grossly overstates the content of the letter.  *See* SAC, Ex. 4.  At most, the letter confirmed that GVE "has been involved in the medical supply and distribution business, and has negotiated contracts for the right to promote and sell COVID-19 vaccine products." *Id.*  It did not, as RIL argues, confirm GVE's ability to perform under the Purchase Agreement.  The letter did not state that GVE had purchased the vaccine from AstraZeneca, that GVE had performed all conditions precedent to the release of the funds, or even that GVE had the capacity to procure any particular amount of vaccine within any timeframe.  *Id.*

Moreover, recognizing the limited representations contained in the April 24, 2021 letter, upon receiving it, RIL's general counsel Olivia Watson immediately responded with a substantially different draft, reflecting what RIL wanted the letter to state.  Longo Decl., Ex. 2.  There is no dispute that Scott did not sign Ms. Watson's draft.  But RIL moved ahead and authorized the release of funds notwithstanding the inadequacy of the letter.  Ms. Watson's draft further

20

underscores the absence of any reliance on the April 24, 2021 letter and its tangential connection to the outcome.  The fourth factor therefore weighs against liability.

Finally, the first two factors, the extent to which the transaction was intended to affect the plaintiff and the foreseeability of harm to it, do not support liability here.  As more fully discussed in the moving papers, courts generally find liability only when the plaintiff is the expressly identified beneficiary of the legal work.  *See Chang v. Lederman*, 172 Cal. App. 4th 67, 82 (2009) ("California decisions recognize an enforceable duty of care in cases involving a negligently drafted or executed testamentary instrument when the plaintiff was an ***expressly named*** beneficiary of an ***express bequest***") (emphasis in original); 1 Witkin, *California Procedure 4th, Attorneys* §§ 323-333 (cases generally extend the attorney's liability to third parties only where the non-client "is the ***direct, actual and identified*** beneficiary of the legal work…") (emphasis added).  For an opinion letter to trigger liability, the letter must be ***either addressed to the third party or expressly authorizes his reliance***.  *See* Fuld, *Lawyers' Standards and Responsibilities in Rendering Opinions*, 33 BUS. LAW. 1295, 1309 (1978) ("To whom does the opining lawyer owe duties?  It is clear that he has an obligation to his client, and if the lawyer addressed his opinion to a third party, he has duties to the third party.").

Here, the letter is addressed "To Whom It May Concern."  SAC, Ex. 4.  RIL is not specifically identified as the addressee or the intended beneficiary of the letter.  Moreover, the letter does not identify the transaction or indicate that it was written for the limited purpose of the transaction at issue.  It appears to contain a general confirmation for future transactions by GVE.  *Id.*  RIL's contention that Scott possessed documents that included a reference to RIL, at most, shows that Scott was aware of the pending transaction with RIL.  That, however, does not make RIL the explicitly identified beneficiary of the letter and it is not enough to satisfy the high bar for extending the attorneys' liability to a third party.

1    Notably, RIL's argument that the letter was intended to induce its reliance is

2 in tension with its contention that it was the intended beneficiary of the letter.  If, as

3 RIL alleges, the letter was intended to satisfy GVE's non-performance (the failure to

4 provide the required AstraZeneca invoice) and resolve RIL's objection to releasing

5 the escrowed funds , then the intended beneficiary of the legal work was GVE – the

6 party whose non-performance would be forgiven; not RIL.  The six factors

7 articulated in *Osornio* therefore overwhelmingly require dismissal of RIL's legal

8 malpractice claim.

9 **V.    CONCLUSION**

10    For all the foregoing reasons, Defendants Scott and WNJ respectfully urge the

11 Court to grant their motion and dismiss the SAC for lack of personal jurisdiction.  If

12 the Court is inclined to exercise jurisdiction, Scott and WNJ request that the SAC be

13 dismissed because the claim is time-barred and/or based on RIL's failure to state a

14 claim.

15

16 DATED:  November 14, 2022          Respectfully submitted,

17                                   Mark T. Drooks
                                     Sharon Mayer
18                                   Bird, Marella, Boxer, Wolpert, Nessim,
                                     Drooks, Lincenberg & Rhow, P.C.
19

20

21                                   By:    */s/ Sharon Mayer*
                                   _____
22                                        Sharon Mayer
                                     Attorneys for Defendants Warner, Norcross
23                                   + Judd LLP and James L. Scott

24

25

26

27

28

THE WNJ DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

## PROOF OF SERVICE

***Radical Investments Ltc., v. Good Vibrations Entertainment, LLC, et al.***
**Case No. 2:22-CV-02752-SVW-AFM**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561.

On November 14, 2022, I served the following document(s) described as:

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS WARNER NORCROSS + JUDD LLP AND JAMES L. SCOTT IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system, as set out on the attached Service List.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules, as indicated below and on the attached Service List.

**BY MAIL:**  By placing a true copy thereof in sealed envelopes addressed to the parties listed on the attached Service List and causing them to be deposited in the mail at Los Angeles, California.  The envelopes were mailed with postage thereon fully prepaid.  I am readily familiar with our firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 14, 2022, at Los Angeles, California.

*/s/ Debbey Beatty*
Debbey Beatty

***Radical Investments Ltd v. Good Vibrations Entertainment LLC, et al.***;
**USDC Case No 2:22-cv-02752-SVW-AFM**

## VIA CM/ECF NOTICE OF ELECTRONIC FILING

| Counsel Of Record | | Party Represented |
|---|---|---|
| **Gerardo A. Vazquez**<br>**Ralph R. Longo, IV**<br>**Steven B. Herzberg**<br>Vazquez and Associates<br>Email: gv@gvazquez.com<br>Email: rl@gvazquez.com<br>Email: sh@gvazquez.com | **Maurice David Pessah**<br>**Summer E. Benson**<br>Pessah Law Group PC<br>Email: maurice@pessahgroup.com<br>Email: sbenson@pessahgroup.com | **Radical Investments Ltd.** |
| **John D. Schwalb**<br>John D. Schwalb, PLLC<br> Email: john@jdschwalb.com<br><br>**Ronald Jay Cohen**<br>Rice Pugatch Robinson and Schiller PA<br>Email: ecf.rcohen@rprslaw.com | **Michael Thomas Stoller**<br>Stoller Law Group PC<br>Email: michael.stoller@stollerlawgroup.com | **Good Vibrations Entertainment LLC and Alex Lee Moore, Jr.** |
| **Brian Thomas Smith**<br>Zelms Erlich and Mack<br>Email: bsmith@zelmserlich.com | **Rinat Klier-Erlich**<br>Zelms Erlich and Mack LLP<br>Email: rerlich@zelmserlich.com | **Charles Zohan Stein, Esq. and Davidovich Stein Law Group LLLP** |

## VIA U.S. MAIL

| Counsel Of Record | Party Represented |
|---|---|
| **Prestige Pegasus LLC**<br>6625 Reseda Boulevard<br>Reseda, CA 91335 | **Pro Se: Prestige Pegasus LLC** |
| **Moniladae Coley**<br>6625 Reseda Boulevard<br>Reseda, CA 91335 | **Pro Se: Moniladae Coley** |