# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | February 10, 2023 |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [204, 205, 206]

## I.   Introduction

Before the Court are three motions for summary judgment filed Plaintiff Radical Investments Limited ("Plaintiff") and Defendants Charlie Stein ("Stein") and Davidovich and Stein Law Group ("DS Law Group") (collectively the "Stein Defendants").   ECF Nos. 204, 205, 206.   For the foregoing reasons the Court GRANTS in part and DENIES in part the motions.

## II.   Factual and Procedural Background[1]
### a.   Factual Background

At the heart of the instant case is a failed attempt by Plaintiff to procure doses of the COVID-19 vaccines on behalf of the government of Barbados.   Plaintiff's Statement of Uncontroverted Facts (ECF No. 205-3) ("Plaintiff's SUF") at ¶ 2; Declaration of Olivia Watson[2] (ECF No. 205-2) ("Watson Decl.") at ¶ 4.   On or around late March of early April 2021, Mark Maloney, the principal of Plaintiff, was

---

[1] All facts are undisputed unless otherwise stated and are derived from the parties' briefs and supporting materials. Nothing in this section should be construed as a factual finding; rather, this section is merely background information regarding the instant lawsuit. "To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to consider them in reaching its decision." *Sarieddine v. Vaptio, Inc.*, 2021 WL 4731341, at *1 (C.D. Cal. June 15, 2021).

[2] Olivia Watson is legal and commercial director to a group of companies which includes Plaintiff.   Watson Decl. at ¶ 1.

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

introduced to Defendant Alex Moore ("Moore").   Plaintiff's SUF at ¶ 3; Watson Decl. at ¶ 7.   At the time, Moore by and through his company, Good Vibrations Entertainment ("GVE") (collectively "the Moore Defendants"), represented that he had a solid commercial track record with respect to sourcing and commercializing COVID-19 Personal Protective Equipment, including being able to source COVID-19 vaccines from AstraZeneca.   Plaintiff's SUF at ¶ 4; Watson Decl. at ¶ 8.

### The Purchase Agreement and Escrow Agreement

Several weeks later, on April 16, 2021, Plaintiff and GVE entered into a contract for the purchase and delivery of doses of the AstraZeneca vaccine to Barbados.   Plaintiff's SUF at ¶ 5; Watson Decl. at ¶ 9; *Id.* at Ex. A.   The purchase agreement designated GVE as the seller and Plaintiff as the buyer.   Watson Decl. at Ex. A.   The agreement also referred to terms in the escrow agreement between the parties and Stein.   *Id.*   Under the purchase agreement, Plaintiff would pay $10.2 million for the vaccines and an additional $2 million as commission.   *Id.*   Upon execution of the agreement, RIL would deposit $12.2 million into an Interest on Lawyer's Trust Account ("IOLTA") account held by the Stein Defendants ("the escrow account").   *Id.*

In terms of the specific mechanics of the purchase agreement, the transaction would occur in two stages.   First, within 24 hours of funds being placed into the escrow account, GVE was required to provide an invoice from Astra Zeneca which contained: 1) the total price of the vaccines; 2) confirmation that delivery would be within seven days of receipt of payment; and 3) the details of the account maintained by Astra Zeneca into which the purchase price for the vaccines ($10.2 million) was to be deposited.   *Id.*   Upon receiving a complying invoice, RIL would send and execute an irrevocable pay order to the Stein Defendants, which would result in the Stein Defendants' releasing $10.2 million to an account maintained by AstraZeneca.   *Id.*

The escrow agreement contained a sample of the irrevocable pay order, which named GVE the seller and Plaintiff the Buyer and further stated that:

The Buyer hereby irrevocably and unconditionally confirms and authorized the release of the Product Purchase Price by Paymaster in the IOLTA Account to Astra Zeneca in accordance with the attached invoice as directed herein.   The Pay order directed herein is irrevocably confirmed

Initials of Preparer                 : 

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

and payable to Astra Zeneca, without protests delays and/or deductions.

*Id.* at Ex. B.

Second, within 24 hours of release of the $10.2 million, GVE was required to procure delivery of the vaccines to Barbados. *Id.* at Ex. A. Specifically, GVE was required to provide an original bill of lading from AstraZeneca to RIL. *Id.* Upon receipt of the bill of lading, RIL would send and execute a second irrevocable pay order to the Stein Defendants, authorizing the release of the remaining $2 million to GVE. *Id.* The vaccines were to be delivered to Plaintiff within seven days of receipt of the payment for the products. *Id.*

### *Dispersal of Funds and Aftermath*

On April 21, 2021, Plaintiff deposited $12.2 million to the escrow account held by the Stein Defendants. Declaration of Olivia Watson in support of Plaintiff's Opposition to the Stein Defendants' Motion for Summary Judgement (ECF No. 213-11) ("Watson Decl. 2") at ¶ 21; On April 22, 2021, GVE provided a redacted invoice, which Plaintiff contends did not comply with the terms of the agreement. Plaintiff's SUF at ¶ 15; Watson Decl. at ¶ 19; Ex. C. The invoice did not contain: 1) AstraZeneca's bank account information, 2) AstraZeneca's contact information; and 3) payment terms and price. Watson Decl. at ¶ 19; Ex. C. Plaintiff made further requests for an unredacted invoice, but Moore stated he could not provide one due to confidentiality provisions with certain intermediaries. Plaintiff's SUF at ¶ 16; Watson Decl. at ¶ 21,

Despite these issues with the invoice, Moore assured Plaintiff that everything was fine and provided two opinions letter from the Stein Defendants and Warner Norcross + Judd LLP.[3] Plaintiff's SUF at ¶ 16; Watson Decl. at ¶ 23; Ex. D. These letters stated that GVE had been involved in the medical supply and distribution business and had negotiated contracts for the right to sell AstraZeneca products through its distribution channel for government only. *Id.*

---

[3] Warner Norcross + Judd LLP and James L. Scott were Defendants that were dismissed for lack of personal jurisdiction. ECF No. 237.

Initials of Preparer                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

On April 26, 2021, Moore told Plaintiff that the funds could not be sent directly to AstraZeneca and instead needed to go through an authorized supplier.   Plaintiff's SUF at ¶ 18; Watson Decl. at ¶ 28. Moore identified Defendants Prestige Pegasus LLC and its CEO Defendant Moniladai Coley as authorized suppliers with an AstraZeneca supply contract.   Plaintiff's SUF at ¶¶ 19-20; Watson Decl. at ¶ 28.

Then on April 27, 2021, Plaintiff executed an amended irrevocable pay order which included Prestige's bank account information on it.   Watson Decl. at ¶ 30.   Plaintiff contends that the irrevocable pay order only authorized Stein to release $10.2 million to Prestige.   Watson Decl. 2 ¶¶ 37-39.   Stein disbursed the funds as follows:

- $2 million to Prestige released on April 27, 2021
- $2.2 million to GVE released on April 27, 2021
- $40,000 to Defendant Stein's personal bank account released on April 27, 2021
- $2 million to GVE released on May 3, 2021
- $485,000 to RDS, a foreign freight company charged with handling the delivery of the vaccines released on May 3, 2021.

Plaintiff's SUF at ¶ 16; Watson Decl. at ¶ 32; Stein Decl. ¶10; Exhibit B.   Stein received instructions from Moore via email on April 27, 2021, and May 3, 2021, to disburse the funds in the manner that Stein did.   Watson Decl. at ¶ 31; Ex. E; Declaration of Charles Z. Stein (ECF No. 204-1) ("Stein Decl.") at ¶¶10, 24; Ex. N.   Neither Stein nor Moore notified Plaintiff of these instructions sent by Moore, nor was Plaintiff aware of these instructions.   Watson Decl. 2 at ¶¶ 37-39. Stein contends that this dispersal conformed with the instructions that were provided and the purchase and escrow agreement, because GVE was the seller, the invoice showed GVE, and Stein believed that Prestige was an intermediary who would receive commission.   Stein Decl. at ¶ 8.   Based on these facts Stein contends that he believed he was supposed to pay GVE or its delegate, Prestige, per the instructions of GVE.   *Id.*

Following Stein's dispersal of funds, on April 27, 2021,[4]  Plaintiff sought wire confirmations,

---

[4]  The date of when Plaintiff sought confirmation of the wire transfers only appears in the Second Amended Complaint.   The

|  | : |
|--|---|
| Initials of Preparer | |
|  | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

which would reflect what Stein had wired out of the escrow account.   SAC (ECF. No 189) at ¶ 41; Ex. 7; Watson Decl. 2 at ¶ 40.   Stein responded that the request was outside the scope of his duties as paymaster.   *Id.* at ¶ 41.   Plaintiff did not learn that the funds dispersed in the manner that Stein dispersed them, until on or about May 29, 2021.   *Id.* at 47.

It is undisputed that the AstraZeneca invoice sent to Plaintiff was a forgery and Plaintiff ultimately never received the vaccines.   Plaintiff's SUF at ¶ 16; Watson Decl. at ¶¶ 24, 38.   The transaction was official terminated on or about June 2021.   Plaintiff's SUF at ¶ 28; Watson Decl. at ¶ 38; Declaration of Ralph Longo[5]  (ECF No. 205-1) ("Longo Decl.") at Ex. 8.

### *Settlement Release with Stein*

On May 27, 2021, Plaintiff sent a letter to Stein requesting the return of the $12.2 million from the escrow account to RIL.   Stein Defendants' Statement of Uncontroverted Facts (ECF No. 204-3) ("Stein Defendants' SUF") at ¶ 14; Stein Decl. at ¶ 12; Ex. C.   And on May 28, 2021, Plaintiff submitted another letter stating that Stein had made unauthorized distributions from the escrow account and that Stein had breached the escrow agreement.[6]   Stein Defendants' SUF at ¶ 15; Stein Decl. at ¶ 13; Ex. D.

In response, Stein sent a letter, dated May 30, 2021, contending that he properly distributed the funds and that he would hold onto the remaining funds in the escrow account (approximately $5,474,980) unless the parties agreed to "rollback" the transaction.   Stein Decl. at ¶ 13; Ex. E. On July 7, Stein informed Plaintiff that around $5,474,980 remained in the account and that Stein could not send funds back to Plaintiff without authorization from Moore.   Stein Decl. at ¶ 14; Ex F.[7]

On July 9, 2021, Stein sent Plaintiff a "Termination of Escrow Agreement," which sought release from liability in exchange for Stein wiring the remaining funds to Plaintiff.   Stein Defendants'

---

Court includes this fact for background and does not utilize it to decide any of the issues.
[5] Ralph Longo IV is counsel of record for Plaintiff.   Longo Decl. at ¶ 1.
[6] At this time, Plaintiff did not know that Stein had disbursed the funds in the manner that he did, and instead contended that release of funds was improper because Plaintiff never received a complying invoice from Moore.   *Id.*
[7] Exhibit F of the Stein Declaration contains a typo denoting it as Exhibit ""

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | |
| | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|--|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

SUF at ¶ 20; Stein Decl. at ¶ 14; Ex. G.   On July 12, 2021, Plaintiff sent a document entitled "Release." Stein Defendants' SUF at ¶ 21; Stein Decl. at ¶ 16; Ex. H.   The settlement release ("Settlement") further conditioned release of liability on: 1) Stein wiring the remaining balance in the escrow account to Plaintiff; 2) Stein using his best endeavours to pursue the disbursed funds; 3) Stein providing Plaintiff with such assistance as may be requested to allow Plaintiff to pursue the disbursed funds; 4) Stein providing such correspondence, documentation, or other communication related to requests for disbursement, as Plaintiff may request; 5) Stein paying Plaintiff any sums related to the disbursed funds that he receives.   Stein Decl. at Ex. H.   Stein included an alteration for one of the recitals[8] and then signed the Release.   Stein Defendants' SUF at ¶ 22; Stein Decl. at ¶ 16; Ex. G.   That same day, Plaintiff returned a copy of the agreement with Maloney's initial on it, and Stein wired the remaining funds to Plaintiff.   Stein Defendants' SUF at ¶ 24; Stein Decl. at ¶¶ 19, 24; Exs. J; M.

Following the entering of the Settlement, Stein wired the remaining funds in the escrow account (approximately $5,474,830) to Plaintiff around July 12, 2021.   Stein Decl. ¶ 19.   Moreover, Stein contacted GVE and Prestige requesting that they return the disbursed funds.   These included: 1) an email Stein sent to Moore and Prestige recommending that they return the funds; 2) a phone call to Prestige where Stein spoke with an executive of Prestige explaining that the funds should be returned; and 3) a discussion with Stein's attorney requesting that the funds be returned.   Stein Defendants' SUF at ¶¶ 26-28; Stein Decl. at ¶¶ 20-22.   Finally, in response to Plaintiff's request for all correspondence and communication regarding the dispersal of funds, Stein sent Plaintiff his email correspondence with Moore.   Stein Defendants' SUF at ¶¶ 29; Stein Decl. at ¶¶ 23-24 Exs. M; N.

### *Messages Between Stein and Moore*

During discovery, WhatsApp messages between Stein and Moore were produced by Defendants Moore and Stein to Plaintiffs.   Longo Decl. at ¶ 9.   These messages spanned from around April 21, 2021, to June 23, 2021.   Longo Decl. at Ex. 7; Watson Decl. at Ex. E.   Among other things, these messages demonstrated that Stein and Moore were in communication with one another during the pendency of the transaction.   Among the many things discussed in these messages, Moore told Stein: 1)

---

[8] Stein added the phrase "("Radical alleges that")" in one of the recitals.   Stein Decl. at ¶ 16; Ex. G.

| | : | |
|--|---|--|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

that GVE would be making $8 million in profit from the transaction; 2) that Moore would make Stein a millionaire and provide Stein a "bonus"; 3) that the vaccines costed $ 2 million as opposed to 10.2 million, and 4) instructions to release $159, 980.   Watson Decl. at ¶¶ 31, 35, 36; Ex. E.

The instant lawsuit ensued.   The operative complaint alleges thirty-three claims against eight defendants.   These claims include:

- Piercing the Corporate Veil against GVE
- Civil Conspiracy against all Defendants
- Violation of the California Unfair Competition Law against the Moore Defendants
- Fraud and Negligent Misrepresentation against the Moore Defendants
- Unjust Enrichment against the Moore Defendants
- Conversion against the Moore Defendants
- Breach of Contract against the Moore Defendants
- Fraud against the Stein Defendants
- Negligence against the Stein Defendants
- Breach of Contract against the Stein Defendants

*See* SAC.

**b. Procedural Background**

The action was initially filed on September 17, 2021, in the Southern District of Florida.   ECF No. 1.   On April 26, 2022, Defendants' transfer request to the Central District of California was approved. Order, ECF No. 57.   The Stein Defendants brought a motion for judgement on the pleadings, which this Court denied on August 2, 2022.   ECF Nos. 92, 130.

After a status conference held on October 17, 2022, the Court ordered the parties to file their anticipated motions for summary judgement.   ECF No. 197.   Accordingly, the Parties filed their motions on October 31, 2022: one by the Stein Defendants, and two by Plaintiff.   ECF Nos. 204-206. At the hearing, Plaintiff was ordered to provide a supplemental lodging regarding Plaintiff's request for correspondence between Stein and Moore made following the signing of the settlement release.   ECF

Initials of Preparer                    :

                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Nos. 228, 229. The Stein Defendants were ordered to submit a response to the lodging, which the Stein Defendants provided. ECF No. 230.

### III.    Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### IV.    Evidentiary Objections[9]

"At the summary judgment stage, a district court should 'focus on the admissibility of the [evidence's] contents' and not the form in which the evidence is presented—it is sufficient that a party will be able to produce evidence in its admissible form at trial. *Sarieddine v. Vaptio, Inc.*, No. 220CV07785VAPMRWX, 2021 WL 4731341, at *1 (C.D. Cal. June 15, 2021) (alterations in original); see *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

---

[9] Plaintiff also provides their own evidentiary objections to statements made in the Stein Declaration, but these objections are based on California cases and California evidence code. Nonetheless, considering the federal equivalent of the California rules, the Court OVERRULES these objections as MOOT, since many all of these objections either duplicate the summary judgment standard or are to statements that the Court does not rely on.

Initials of Preparer    :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|--|

| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* |
|-------|----------------------------------------------------------------------|

Many of the Defendants' 45 objections are duplicative of the summary judgment standard. Moreover, the Stein Defendants' objections to exhibits attached to the Longo Declaration are OVERRULED as MOOT, since the Court will not rely on those exhibits, with one exception. Exhibit 7 of the Longo Declaration contains and Exhibit E of the Watson Declarations, which contain WhatsApp messages between Stein and Moore. The Stein Defendants object to this exhibit on grounds of personal knowledge, hearsay, and attorney-client privilege.

First, the Stein Defendants contend that Plaintiff's counsel Ralph Longo lacks personal knowledge as to how the WhatsApp messages were maintained by Stein or Moore or what period of time the messages concerns. The Court is satisfied that the messages are sufficiently authenticated, given that they were produced by Moore and Stein during the pendency of the action. Longo Decl. at ¶ 9; *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 972 (C.D. Cal. 2006) ("In the present case, all of the documents included in Exhibit 14 and 15 were produced by StreamCast in discovery. This constitutes sufficient circumstantial evidence for a reasonable jury to find the documents authentic.").

Second, the Stein Defendants' hearsay objection is OVERRULED, since the Court considers these statements either for a non-hearsay purposes or for purposes that fall within an existing hearsay exception. The Court considers the statements in the WhatsApp messages as a verbal act or for the messages' effect on the listener. *See* Fed.R.Evid. 801(c) Advisory Note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991). Moreover, the statements made by Stein used against Stein are admissible as an opposing party's statement, and the statements made by Moore are admissible under the state of mind hearsay exception. Fed.R.Evid. 801(d)(2); Fed.R.Evid. 803(3).

Finally, the Stein Defendants' assertion of attorney-client privilege fails. The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship.[10] *Costco Wholesale Corp. v.*

---

[10] "In a federal action such as this based on diversity of citizenship jurisdiction, state law governs attorney-client privilege

| | : |
|--|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

*Superior Ct.*, 47 Cal. 4th 725, 733 (2009).   Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply.   *Id.*   "The privilege is also to be strictly construed 'where the [attorney-client] relationship is not clearly established.'" *Uber Technologies, Inc. v. Google LLC*, 27 Cal.App.5th 953, 967 (2018).

California Evidence Code Section 912(a) provides "the right of any person to claim a privilege ... is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone." Cal. Evid. Code § 912(a).   Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."   *Id.*   The attorney-client privilege may be waived, but only by the holder of the privilege.   *McDermott Will & Emery LLP v. Superior Ct.*, 10 Cal. App. 5th 1083, 1101 (2017).

Here, the Stein Defendants' objections as to attorney-client privilege fail, because they have neither met their burden in establishing facts necessary to demonstrate the privilege applies, and, in the alternative, the attorney-client privilege has been waived.   First, the Stein Defendants offer no evidence or factual support for the contention that Stein and Moore were in an attorney client-relationship at the time of the WhatsApp messages occurred.   The Stein Defendants' only argument is a single line in their objection contending that the WhatsApp messages are privileged "in the event that this Court finds that [Stein and Moore] had an attorney client relationship."   The Stein Defendants Objections to Plaintiff's Evidence (ECF No. 221-2) at 4.   Stein's support for the contention that Stein and Moore were in an attorney client relationship is based on Plaintiff's allegation in the Second Amended Complaint. Beyond this, the Stein Defendants assert no facts, nor have they provided a privilege log to support their argument that the attorney-client privilege applies to this communication.   Certainly, the Stein Defendants' contingent reliance on an unproven allegation is insufficient to meet their burden in establishing that the privilege applies.

---

claims." *Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1081 (C.D. Cal. 2010).   Accordingly, California law applies.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

       Second, even if the attorney client privilege does apply, the Court finds that it has been waived by the purported holder of the privilege--Defendant Moore.  Plaintiff included this exhibit in their motion for summary judgment against Moore. Yet, Moore, the purported client, has not raised any objection as to the use of the exhibit.  *See Moriarty v. Am. Gen. Life Ins. Co.*, No. 17-CV-1709-BTM-WVG, 2021 WL 6197289, at *11 (S.D. Cal. Dec. 31, 2021) ("The party holding the privilege waives the privilege if it is not claimed at the first opportunity.").  Indeed, Moore admits to making the statement contained in the exhibit several times.  See Moore's Statement of Undisputed Facts (ECF No. 215) at ¶¶ 17, 25, 26.  Thus, Moore's failure to raise the attorney client privilege coupled with his admission are sufficient to demonstrate waiver of the alleged attorney-client privilege.

       Accordingly, the Court OVERRULES the Stein Defendants' objections to the use of this exhibit 7 of the Longo Declaration.

### V.    Plaintiff's Motions for Summary Judgment

       Plaintiff filed two motions for summary judgment seeking summary judgment on their own claims and theories of liability and against the Moore Defendants' counterclaim.  Plaintiff's first motion seeks summary judgment on the following claims and theories of liability: 1) piercing the corporate veil against Moore; 2) a violation of California's UCL against the Moore Defendants; 3) intentional and negligent misrepresentation against the Moore Defendants; 4) unjust enrichment against the Moore Defendants; 5) conversion against the Moore Defendants; 6) breach of contract against the Moore Defendants; and 7) civil conspiracy against the Moore Defendants.  Relatedly, Plaintiff's second motion seeks summary judgment on the Moore Defendants' counterclaim for breach of contract.[11]

#### a.  Piercing the Corporate Veil

---

[11] Although the Moore Defendants provided their "statement of genuine dispute of material fact" one day later in violation of L.R. 56-2, the Court will nonetheless consider it.

Initials of Preparer

:

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Plaintiff first contends that they are entitled to summary judgment on their theory of alter ego liability – piercing the corporate veil of GVE to hold Moore accountable for the actions of GVE.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Turman v. Superior Court*, 17 Cal. App. 5th 969, 980 (2017) (internal quotation marks and citations omitted). Under California law,[12] "'[a]lter ego is an extreme remedy, sparingly used.'" *Conde v. Sensa*, 259 F. Supp. 3d 1064, 1069 (S.D. Cal. 2017) (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539, 99 Cal.Rptr.2d 824 (2000)).   Thus, a "heavy burden rests on the shoulders of the party seeking to pierce the corporate veil." *Santa Clarita Org. for Planning & Env't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016) (citations omitted).   Further, "the determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact." *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (2011); *see also TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1020 (N.D. Cal. 2012).

Before the doctrine may be invoked, two elements must be established: "'(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.'" *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (citations omitted); *see also AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.1996).

---

[12] The parties did not discuss a potential choice of law issue as to what law the Court should apply to pierce the corporate veil of GVE.  GVE is a limited liability company organized under the law of the State of Florida, SAC at ¶ 2, and in their complaint, Plaintiff cites Florida law for the standard of piercing the corporate veil, SAC at ¶¶ 141-143.   Nonetheless, the Court finds that California law applies.   "When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).   "Under California's choice-of-law rules, the court begins with California law in conducting the alter ego analysis because no party has invoked the law of a foreign state." *Pizana v. SanMedica Int'l LLC*, No. 118CV00644DADSKO, 2022 WL 1241098, at *13 (E.D. Cal. Apr. 27, 2022); *see Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) ("By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims.").   The Moore Defendants make no reference or attempt to invoke Florida law.   Accordingly, California law applies.

Initials of Preparer                                              :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Several types of facts can establish a unity of interest:

[1] inadequate capitalization, [2] commingling of funds and other assets of the two entities, [3] the holding out by one entity that it is liable for the debts of the other, [4] identical equitable ownership in the two entities, [5] use of the same offices and employees, [6] use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, [7] lack of segregation of corporate records, and [8] identical directors and officers.

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002) (citations omitted). "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *Id.* But "the California Supreme Court has held that undercapitalization alone will justify piercing the corporate veil." *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir. 1988); *but see Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 326 (C.D. Cal. 2004) (citing *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213, 11 Cal. Rptr. 2d 918, 922 (1992) ("courts have cautioned against relying too heavily in isolation on the factors of inadequate capitalization or concentration of ownership and control.").

Here, Plaintiff argues that summary judgment is appropriate because Moore: 1) comingled funds and other assets, failed to segregate funds of the separate entities, and engaged in unauthorized diversion of corporate funds to other than corporate uses; and 2) failed to adequately capitalize GVE. To support these contentions, Plaintiff points to GVE's bank records showing that Moore withdrew the entirety of the $4.2 million sent by Stein to GVE, leaving a zero account balances. *See* Longo Decl. at Ex. 15. Additionally, Plaintiff cites to deposition testimony that Moore: 1) gave away approximately $2 million dollars to friends and family and made withdrawals that reduced GVE's balance to zero; 2) spent hundreds of thousands of dollars on exotic dancers; and 3) spend $100,000 on a BMW 850i. *Id.* at Ex. 16.

In response, the Moore Defendants contend that the determination of adequate capitalization is an inherently a factual question, and that because GVE is a single member LLC, Moore was free to spend money in any manner he sees fit. Moore also contends that another authorized user withdrew funds from the GVE account and the BMW was titled in the name of GVE. *Id.* at 303-304.

Initials of Preparer     :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Drawing all reasonable inference in the Moore Defendants' favor, the Court cannot find that Plaintiff has met their heavy summary judgment burden to pierce the corporate veil. Missing from Plaintiff's evidence is any establishment that Moore's use of the funds was improper. *See Cambridge Elecs. Corp.*, 227 F.R.D. at 328 ("Without additional evidence demonstrating the circumstances under which MGA paid the expenses referenced in the documents, they do not evidence 'siphoning off.'"). Plaintiff has not provided any evidence as to what Moore was entitled to receive as compensation or a salary, and the nature of GVE and its business expenses. Plaintiff primarily focus on Moore's deposition testimony that demonstrates that he gave away around $2 million to friend and family and spent hundreds of thousands of dollars on "exotic dancers." Plaintiff's Motion for Summary Judgement (ECF No. 205) ("Plaintiff's Mot.") at 15.

But the fact that Moore spent around $2 million on personal expenses, such as giving it away to friends and families and spending it on "exotic dancers," is insufficient to pierce the corporate veil. The record before the Court shows a lack of evidence that Moore was not entitled to those funds as compensation. Thus without additional context, the Court cannot determine as a matter of law the extent to which Moore's use of the funds were improper personal uses as opposed to business expenses. *See Cambridge Elecs. Corp.*, 227 F.R.D. at 328 ("Without evidence that Roger T. was not entitled to the money—e.g., that it was not part of his compensation or a legitimate dividend—his use of the money does not raise triable issues of fact warranting a trial."). The Court therefore cannot conclude as a matter of law that Moore's use of funds justifies piercing the corporate veil. *See Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1215 (1992) ("The plaintiff has a gaping lacuna in its proof with respect to any evidence that Mr. Gardner generally treated corporate assets as his own or disregarded the separate nature of the business").

As for inadequate capitalization, Plaintiff has not presented sufficient evidence for the Court to determine that as a matter of law GVE was undercapitalized. Although Plaintiff provides evidence that GVE's bank account is zero, *see* Longo Decl. at Ex. 15, Plaintiff has not provided any additional context such as the nature of GVE's business, its liabilities, or its assets. Without these metrics, the Court cannot determine as a matter of law that GVE was inadequately capitalized. *See Slottow v. Am. Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1360 (9th Cir. 1993) (noting that "initial capitalization of $500,000 was woefully inadequate for a corporation that handled trust agreements of the magnitude involved here."); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst*, 854 F.2d 1538, 1543 (9th Cir.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

1988) ("The undercapitalization of the corporation is easily illustrated. Aqualec has no assets and most of its capitalization came from Ethridge."); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1142 (C.D. Cal. 2015) ("Here, NetApp makes no allegations regarding Nimble AUS' assets or its liabilities.").   Indeed, Moore contends that he used the funds from the transaction to purchase a corporate asset – the BMW.   *See* Longo Decl. at Ex. 16.

Finally, Plaintiff has failed to provide evidence or arguments pointing to other important factors such as failure by Moore to adhere to corporate formalities.   *Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*, No. CV1502513MMMAJWX, 2015 WL 13333486, at *8 (C.D. Cal. Sept. 24, 2015) ("As the Ninth Circuit has noted, facts that are "critical" in finding alter ego liability are inadequate capitalization, commingling of assets, and disregard of corporate formalities.")

Plaintiff has accordingly failed to provide sufficient evidence to meet their burden at summary judgment that the corporate veil should be pierced as a matter of law. Accordingly, summary judgment is DENIED as to this theory of liability.

### b. Breach of Contract

Next, Plaintiff contends it is entitled to summary judgment as to their breach of contract claim against the Moore Defendants.   Plaintiff also seeks summary judgment against the Moore Defendants on their counterclaim for breach of contract.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."   *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121 (2011).

Here, Plaintiff has provided sufficient evidence to satisfy its summary judgment burden as to all elements.   First, the parties do not dispute that RIL and GVE entered into a binding purchase agreement on or around April 16, 2021.   Watson Decl. at ¶ 9; Ex. A.

Second, Plaintiff has provided sufficient evidence of their performance and the Moore Defendants breach of the contract.   The terms of the agreement were as follows: Within 24 hours of

Initials of Preparer          :
                              PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

funds being placed into the escrow account, GVE was required to provide RIL an invoice from
AstraZeneca.   Watson Decl. at Ex. A.   The invoice had to include: 1) the total price; 2) confirmation
that delivery will be within seven days of receipt of payment; and 3) details of the account maintained
by AstraZeneca that funds were to be sent to.   *Id.*   Upon receipt of an invoice complying with these
requirements, RIL was to execute an irrevocable pay order.   *Id.*   Once Stein received the pay order, he
was to release $10.2 million dollars in accordance with the instructions on the pay order.   *Id.*   If an
invoice was not provided to RIL within the required time, the $10.2 million designated to pay for the
vaccines to be returned to RIL.   *Id.*

Then, within 24 hours of payment to AstraZeneca, GVE was required to procure delivery of the
vaccines.   *Id.*   GVE was to provide an original bill of lading for the vaccines to RIL.   And upon
receipt of the original bill of lading, RIL was to execute a second irrevocable pay order.   *Id.*   Once
Stein received this second pay order, he would release the $2 million designated as commission for
GVE.   *Id.*   The agreement further provided that delivery of the vaccines would occur within seven days
of receipt of the payment for the vaccines.[13]   *Id.*

Here, Plaintiff fulfilled its obligations under the contract by paying funds into the escrow
account.   Watson Decl. at ¶ 14; Stein Defendants' SUF at ¶ 7; Stein Decl. at ¶ 5.   As a result, GVE was
required to provide a complying invoice within 24 hours of the placement of funds.   Although Moore
provided a highly redacted invoice, Plaintiff authorized an amended release of funds in response to the
opinion letters provided by Moore.   Watson Decl. 2 at ¶ 2.   This amended release of funds obligated
GVE to procure delivery of the vaccines within 7 days.   The parties do not dispute that as of the
issuance of this order Plaintiff has still not received the vaccines.   Accordingly, GVE breached the
agreement by failing to procure delivery of the vaccines within the requisite time.   Plaintiff's SUF at ¶
28; Watson Decl. at ¶ 38.   Finally, as a result of the breach, Plaintiff has suffered damages of at least
$4.2 million – the amount of funds released to Moore.

In response, the Moore Defendants contend that: 1) "the moment that Radical released the funds
it was clear that Plaintiff was looking to Prestige to deliver the vaccines," and 2) the Force Majeure

---

[13]   The purchase agreement states that AstraZeneca would deliver the vaccines, but from reviewing the agreement as a whole,
it is clear that the Moore Defendants were required to procure delivery of the vaccines.   *Id.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

clause in the agreement gave GVE an automatic extension of time to deliver the vaccines, because the vaccines that were to be delivered were the subject of litigation with the British government and AstraZeneca. The Moore Defendants' Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 214) at 14-16.

First, the Moore Defendants provide no admissible evidence or support for their assertion that Plaintiff's amended pay order releasing funds to Prestige relieved GVE of its obligation under the purchase agreement to deliver the vaccines.

Second, the Moore Defendants have provided no evidence as to the alleged event that would justify invoking the Force Majeure clause. The only evidence that the Moore Defendants cite to is Moore's declaration, which refers to an exhibit that is missing. Moore's declaration does not establish that he has personal knowledge of the facts contained in this missing exhibit nor has he even explained what this missing exhibit is. Accordingly, the Court cannot consider those portions of Moore's declaration. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) ("Declarations must be made with personal knowledge; declarations not based on personal knowledge are inadmissible and cannot raise a genuine issue of material fact.") (citing *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990)); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 (9th Cir.2002) (disregarding "uncorroborated and self-serving" declarations based on facts beyond the declarant's personal knowledge); *Morrow v. City of Oakland*, No. C 11-02351 LB, 2013 WL 6698467, at *10 (N.D. Cal. Dec. 19, 2013), *aff'd*, 690 F. App'x 517 (9th Cir. 2017) (holding that statements of facts relying on exhibits not submitted to the court were inadmissible evidence). Thus, the Moore Defendants have failed to raise a genuine issue of material fact as to their breach and their counter-claim.

Accordingly, the Court GRANTS summary judgment as to Plaintiff's breach of contract claim. Moreover, because the Moore Defendants rely on the same inadmissible evidence to support their counterclaim for breach of contract, the Court GRANTS summary judgment for Plaintiff as to the Moore Defendants counterclaim for breach of contract.

### c. Conversion

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Under California Law, the elements required to prove a claim of conversion are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. *Regent Alliance Ltd. v. Rabizadeh*, 231 Cal.App.4th 1177, 1181 (2014).   "[I]t is not essential that the plaintiff shall be the absolute owner of the property converted but she must show that she was entitled to immediate possession at the time of conversion."   *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999) (quotations and citations omitted).   "Money can be the subject of an action for conversion if a specific sum capable of identification is involved."   *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452, 61 Cal. Rptr. 2d 707, 709 (1997).

Here, Plaintiff contends that the Moore Defendants converted the $4.4 million, which Plaintiff authorized to go to Prestige, by holding onto the funds and spending them.   Plaintiff also contends that they had an immediate right of possession to the funds, because the funds were deposited with the intent to procure the vaccines, and the vaccines were not delivered.   In other words, because GVE breached the contract by not delivering the vaccines, Plaintiff was entitled to return of all $12.2 million dollars.

But Plaintiff's argument does not address the fact that the funds that the Moore Defendants received were irrevocably authorized to go to Prestige – a third party to the contract.[14]   A reasonable jury could find that at the time the Moore Defendants received the $4.4 million[15] from the escrow account and spent the funds, the entity with ownership and right to immediate possession of the funds was not Plaintiff, but Prestige.

While a breach of contract would entitle Plaintiff to damages, which would include sums paid to third parties that were caused by the breach of contract, it does not necessarily follow that Plaintiff had ownership or an immediate right of possession to funds already delivered to third parties.   The Court recognizes that there is a clause in the escrow agreement that could be read to entitle Plaintiff to return of all deposited funds, the $12.2 million, if Plaintiff did not receive the vaccines.   But Plaintiff has not addressed this clause in their argument, nor is it clear as a matter of law that this clause would entitle

---

[14] The parties do not address whether Prestige was a third-party beneficiary to the agreement or an assignee.
[15] This figure refers to the two wire transfers of $2.2 million and $2 million from the escrow account to the Moore Defendants on April 27, and May 3, 2021.   Plaintiff's SUF at ¶ 16.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Plaintiff to receive funds that they irrevocably authorized to go to a third party.   Thus, Plaintiff has
failed to establish as a matter of law that at the time the funds were converted Plaintiff had ownership or
an immediate right of possession to the $4.4 million.   Accordingly, summary judgment is DENIED.

### d.  Intentional and Negligent Misrepresentation

To state a claim for fraud via intentional misrepresentation, a plaintiff must allege (1) a false
representation of a material fact, (2) knowledge of the falsity of the statement, (3) intent to defraud, (4)
justifiable reliance, and (5) resulting damage.   *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996).
"The elements of negligent misrepresentation are the same except for the second element, which for
negligent misrepresentation is the defendant made the representation without reasonable ground for
believing it to be true."   *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 792 (2013).

Here, Plaintiff identifies two misrepresentations: 1) the Moore Defendants repeated
misrepresentation of their ability to procure COVID- 19 vaccines; and 2) that the Moore Defendants'
commission on the contract was $2 million.

As an initial matter, the Court notes that summary judgment is inappropriate, because Plaintiff
have not addressed why the economic loss rule should apply to the present claim.

Under California law, the economic loss doctrine "requires a purchaser to recover in contract for
purely economic loss due to disappointed expectations, unless he can demonstrate harm above and
beyond a broken contractual promise."   *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979,
988 (2004).   The economic loss rule exists to enforce the boundary between contract and tort, ensuring
that breach of contracts claims are not redressed as tort claims.   *See Robinson Helicopter Co.*, 34 Cal.
4th 979, 988, 102 P.3d 268, 273 (2004) ("the economic loss rule "prevent[s] the law of contract and the
law of tort from dissolving one into the other.") (citations omitted).   Thus, the "economic loss rule bars
tort claims that arise out of the same conduct as contract claims and involve the same damages."   DiDio
v. Jones, No. CV134949PSGAGRX, 2014 WL 12591676, at *3 (C.D. Cal. July 3, 2014); *see Audigier
Brand Mgmt. v. Perez*, No. CV 12-5687-CAS RZX, 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012)
("many courts have applied the economic loss rule to bar recovery in tort where the damages a plaintiff
seeks are the same economic losses arising from the alleged breach of contract.") (cleaned up and

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|--|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

citations omitted); Asmodus, Inc. v. Junbiao Ou, No. EDCV162511JGBDTBX, 2017 WL 3575467, at *4 (C.D. Cal. June 20, 2017) ("Since the economic loss rule applies to fraud claims if they rely on the same allegations as breach of contract claims, Counterclaimants must allege either that the contract was fraudulently induced or they suffered some harm independent from the alleged contract damages as a result of Counterdefendants' intentional and tortious conduct.").


　　　Here, Plaintiff's misrepresentation claims and breach of contract claim arise from the same conduct and seek the same damages.   Plaintiff's misrepresentation claims essentially recast violations of the contract – failure to deliver the vaccine and the Moore Defendants receipt of more funds than the contract allocated to them – as intentional and negligent misrepresentations.   And to establish damages for their intentional misrepresentation and breach of contract claims, Plaintiff's cites to the same paragraph in the Watson Declaration–"RIL has been damaged in the amount of $6,685,000.00, $4.2 million of which appears to have spent or withdrawn in cash by Defendants GVE/Moore."   Watson Decl. at ¶ 42; Plaintiff's Motion for Summary Judgement (ECF No. 205) ("Plaintiff's Mot. at 20, 24. And, Plaintiff's negligent misrepresentation claim, which incorporates many of the same arguments as their intentional misrepresentation claims, also asserts damages in the amount of $4.2 million. Plaintiff's Mot. at 21.   Accordingly, the economic loss rule applies to Plaintiff's claims for misrepresentation.

　　　Although there are several exceptions to the economic loss rule.   These exceptions include: 1) fraudulent inducement; and 2) fraud in the performance which exposes a plaintiff to liability for personal damages independent of the plaintiff's economic loss.   Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 989 ("Tort damages have been permitted in contract cases where […] the contract was fraudulently induced") (citations omitted); Id. at 993 ("Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss.").   Plaintiff has not explained why any of these exceptions apply.   Thus, this basis alone is sufficient for the court to deny summary judgement. [16]

---

[16] Before Plaintiff presents its misrepresentation claims to the jury, they must clarify whether these claims fall under an applicable exception to the economic loss rule.

| | : | |
|--|--|--|
| Initials of Preparer | | |
| | PMC | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Additionally, the Court also notes that summary judgment is inappropriate because triable issues of fact remain.   As to Plaintiff's allegation that Moore misrepresented his ability to procure vaccines, Plaintiff has failed to establish the second element – knowledge of the falsity of the statement – as a matter of law.   Plaintiff contends that Moore/GVE "knew they were entirely misrepresenting their ability to procure the Vaccines" and unhelpfully cites to an almost 55-page exhibit as support from this proposition.   Plaintiff has not pointed to specific statements demonstrating that, as a matter of law, Moore knew he was unable to procure vaccines. Contrary to Plaintiff's contention, it is not clear from the Court's review of the exhibit that Moore knew he was unable to procure the vaccines.   Indeed, there are several messages in the record that could indicate that Moore believed that he was able to procure the vaccines.   These include statements from Moore to Stein stating: 1) "They [(RIL)] are getting product", Watson Decl. Ex. E at 00008; 2) "She [(the principal of Prestige)] confirmed order last night," *Id.* at 00015; and 3) "Sunday we get pick up time then deliver", *Id.* at 00021.   Drawing all reasonable inferences in favor of the Moore Defendants, a reasonable juror could find that Moore did not know that he could not procure the vaccines.   Thus, summary judgment as to these misrepresentations is DENIED, because Plaintiff has failed to meet their burden as to Plaintiff's knowledge of the falsity of the alleged misrepresentations.

For similar reasons, the Court also DENIES summary judgment as to Plaintiff's claim for negligent misrepresentation.   Plaintiff has not provided sufficient evidence for the Court to determine as a matter of law that Moore/GVE lacked reasonable grounds for believing they could procure vaccines. Plaintiff relies on the same argument and evidence in their intentional misrepresentation argument, which the Court has rejected.

     **e.   Civil Conspiracy**

Since the Court denies summary judgment as to Plaintiff's negligent and intentional misrepresentation and Plaintiff has not established another predicate tort, the Court DENIES summary. judgment as to civil conspiracy.   *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1136 (2014), as modified on denial of reh'g (Feb. 27, 2014) ("There is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

damage results therefrom.").

### f.   UCL and Unjust Enrichment

The UCL and Unjust Enrichment are causes of action that are limited to equitable relief.   Under *Sonner v. Premier Nutrition Corp,* a plaintiff must establish that they lack an adequate remedy at law before securing equitable restitution for past harm.   971 F.3d 834, 844 (9th Cir. 2020).

Here, Plaintiff's claims for equitable relief against the Moore Defendants arise from the same facts of their causes of actions seek legal damages.   Plaintiff's Mot. at 18, 22.   The most significant of these is Plaintiff's breach of contract claim, on which the Court grants summary judgment in Plaintiff's favor.   In light of this, Plaintiff has failed to demonstrate that they lack an adequate legal remedy.

In fact, the Court is inclined to grant summary judgment sua sponte against Plaintiff on these claims since, Plaintiff's breach of contract claim demonstrate that Plaintiffs do have an adequate remedy at law.   Fed.R.Civ.P. 56(f).   Accordingly, Plaintiff is ORDERED TO SHOW CAUSE within 21 days as to why their claims under the UCL and for Unjust enrichment should not be dismissed on the aforementioned grounds.

### VI.   The Stein Defendants' Motion for Summary Judgment

Turning to the Stein Defendants' motion for Summary Judgment, the Stein Defendants raise seven issues that they claim either bars the suit in its entirety or entitles them to summary judgment as to specific claims.

### a.   The Settlement Release

The Stein Defendants' primary argument is that Plaintiff's lawsuit is barred under the Settlement that Plaintiff and the Stein Defendants entered into on July 12, 2021.   In response, Plaintiff contends that the settlement does not bar the lawsuit because: 1) they were fraudulently induced by Stein; 2) Stein did not satisfy a condition precedent which required him to perform his "best endeavors" to pursue the allegedly misappropriated funds; and 3) Stein failed to satisfy a condition precedent by failing to provide

Initials of Preparer                 :

                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

request communications related to requests for disbursements out of the escrow account.   The Court
will address each in turn.[17]

### i.  Rescission

Settlement agreements, like all other contracts, may be rescinded where a party has been
fraudulently induced into entering it.   *Vill. Northridge Homeowners Assn. v. State Farm Fire & Cas.
Co.*, 50 Cal. 4th 913, 921, 237 P.3d 598, 602 (2010) ("If a party believes it has been fraudulently
induced to enter into a contract, in order to escape from its obligations the aggrieved party must
rescind.") (citations omitted and cleaned up).

Here, Plaintiff contends that they may rescind the settlement, because they were fraudulently
induced into entering it.   Plaintiff asserts a theory of constructive fraud based on Stein's omission of
information that Stein learned in WhatsApp messages between Stein and Moore.

The Stein Defendant's contend that Plaintiff may not assert a fraudulent inducement claim
because the Settlement included a waiver of section 1542,[18] which amounts to a general waiver of all
known and unknown claims.   Thus, Plaintiff waived their ability to rescind the contract on the basis of
facts later learned.   But even a waiver of section 1542 may be rescinded if it was procured through
fraud.   *See Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG (PLAX), 2012
WL 12883616, at *13 (C.D. Cal. Feb. 23, 2012) ("under California law a release of unknown claims
does not bar a claim for fraudulent concealment premised on the assertion that the defendant's

___

[17] The Stein Defendants make a waiver and estoppel argument, contending that Plaintiff either waived the ability to hold the
Stein Defendants liable or should be estopped from holding the Stein Defendants liable because of Plaintiff's authorization of
the irrevocable pay order and because of Plaintiff's signing of the Settlement with Stein.   These arguments are unclear to the
Court. They repeat issues that are already addressed in other sections of this Order.   For example, the Stein Defendants'
argument that Plaintiff should be estopped from holding Stein liable for his dispersement of funds hinges on whether Stein's
interpretation of the irrevocable pay order was reasonable.   Moreover, the Stein Defendants' argument that Plaintiff waived
the right to sue the Stein Defendants because Plaintiff entered into the Settlement also hinges on whether the Settlement was
valid and was not breached.   Accordingly, to the extent these issues are comprehensible to the Court, they are addressed in
other sections of this Order.
[18] Section 1542 provides that "[a] general release does not extend to claims that the creditor or releasing party does not know
or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have
materially affected his or her settlement with the debtor or released party."   Cal. Civ. Code § 1542.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

misconduct induced the plaintiff into executing the release."); *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1455-57 (9th Cir. 1988) (noting that a jury was properly instructed that a release containing a waiver of unknown claims under Guam Civ. Code § 1542, which is identical to Cal. Civ. Code § 1542, could be set aside if induced by fraud, undue influence, mistake or deceit); *Luciani v. Luciani*, No. 10-CV-2583-JM WVG, 2011 WL 3859707, at *5 (S.D. Cal. Sept. 1, 2011) (holding that settlement release which included a waiver of section 1542 could be rescinded on a theory of constructive fraud).

*Morta* is instructive on this point.   In *Morta*, the Ninth Circuit noted that "[t]he jury was properly instructed that the release could be set aside if induced by fraud, undue influence, mistake or deceit." 840 F.2d at 1455.   The Court then went on to "examine the record to see whether there is any substantial evidence to support rescission on any of these theories."   *Id.*   With respect to the plaintiff's fraudulent inducement theory, the court found that "[t]here was no basis for finding constructive fraud", because the defendant did not owe a confidential or fiduciary duty to the plaintiff.   *Id.* at 1456.

In contrast, here, a reasonable jury could find that Stein engaged in constructive fraud warranting rescission.   To state a claim for constructive fraud, a party must allege (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage.[19]   First, Stein was in a fiduciary relationship with Plaintiff because of his role as an escrow agent in the transaction.   *Tung v. Chicago Title Co.*, 63 Cal. App. 5th 734, 744, 278 Cal. Rptr. 3d 182, 189 (2021), review denied (July 28, 2021) ("An escrow holder is an agent and fiduciary of the parties to the escrow.") (citations omitted).   Second, a reasonable jury could find that information shared with Stein via the WhatsApp message were material facts that would impact Plaintiff's decision to remain in the transaction.   These statements include: "(1) $40,000 was to go to Stein; (2) $159,980 needed to be sent to GVE; (3) $2 million would have to be set aside for "brokers;" (4) the Vaccines would only cost $2 million, not $10.2 million; (5) $8 million would be payable to GVE as profit; and (6) Moore would "Make Stein a millionaire."   Plaintiff's Opp. at 26.   Third, a reasonable jury could find

---

[19] It is unclear whether a showing of injury or damages is required to rescind a contract on the basis of fraud.   *See* 1 Witkin, Summary 11th Contracts § 304 (2022) ("Although injury or damage is an essential element of actionable fraud where damages are sought […], rescission, under some authorities, may be based upon fraud alone."); Restatement (Second) of Contracts § 164 (1981) ("In general, the recipient of a misrepresentation need not show that he has actually been harmed by relying on it in order to avoid the contract.").   While a showing of injury or damages is appropriate to establish liability for constructive fraud, this showing is less relevant where a party is seeking to rescind a contract.

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|--|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

that Plaintiff justifiably relied on Stein's omission in signing the settlement release.[20]   Finally, a reasonable jury could find that Plaintiff sustained an injury.   Plaintiff contends that they would not have authorized the release of funds, which resulted in the loss of $6,685,000, if they aware of that statements made from Moore to Stein: that (1) $40,000 was to go to Stein; (2) $159,980 needed to be sent to GVE; (3) $2 million would have to be set aside for "brokers;" (4) the Vaccines would only cost $2 million, not $10.2 million; (5) $8 million would be payable to GVE as profit; and (6) Moore would "Make Stein a millionaire."   Moreover, a reasonable jury could find giving up the right to bring an action against Stein constituted an injury.   *See Earl v. Saks & Co.*, 36 Cal. 2d 602, 611, 226 P.2d 340, 346 (1951) ("In a sense, anyone who is fraudulently induced to enter into a contract is 'injured'; his 'interest in making a free choice and in exercising his own best judgment in making decisions with respect to economic transactions and enterprises has been interfered with.").   Accordingly, triable issues of fact remain as to whether Plaintiff may rescind the settlement and summary judgement is DENIED as to Plaintiff's rescission theory.

The Court also notes that rescission normally "requires that the aggrieved party provide the other party to the agreement with 'prompt notice' and an 'offer to restore the consideration received, if any.'" *Vill. Northridge Homeowners Assn. v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 921, 237 P.3d 598, 602 (2010) (citation and quotation omitted).   The Stein Defendants point out that under these principles, Plaintiff would need to return the funds held in the escrow account, since those were provided to Plaintiff in consideration of the release.   However, "[a] restoration is not necessary, in order to avoid the bar of a release, where there is no question as to the right of the plaintiff, arising independently of the release itself, to retain what he received."   *Sime v. Malouf*, 95 Cal. App. 2d 82, 111, 212 P.2d 946, 963 (1949).   Under the purchase and escrow agreements, Plaintiff was entitled to receive $2 million of the $5,474,830 that Stein returned to Plaintiff.   But Plaintiff has not established that they were entitled to the remaining $3,474,830.   As discussed above in Section V.c. of this order, under the contract, either

---

[20] The Stein Defendants contends that Plaintiff cannot demonstrate reliance, because a clause in the release states: "No promise, inducement, or agreement not herein expressed has been made to any party, or to his/her/its agents, servants, or employees, to induce acceptance of this Release."   The Stein Defendants' Rep. at 8.   But this clause is irrelevant to Plaintiff's constructive fraud claim because Plaintiff do not contend that they were induced by an affirmative statement or partial representation.

Initials of Preparer                     :

                                        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

AstraZeneca or Prestige was entitled to the $10.2 million dollars which Plaintiff authorized to be released.   At the same time, the Court recognizes that there is a strong possibility that Plaintiff would be entitled to receive all $12.2 million deposited in the escrow account upon breach of the purchase and escrow agreements.

Accordingly, the Court ORDERS Plaintiff and the Stein Defendants brief the following issues: 1) whether under the purchase agreement, escrow agreement, or irrevocable pay order Plaintiff is entitled to a return of the full $12.2 million deposited in the escrow account if Plaintiff did not receive the vaccines; and 2) if Prestige was entitled to receive $10.2 million notwithstanding the failure to deliver vaccines, whether Prestige's claim to the $10.2 million can nonetheless be invalidated.   If Plaintiff would be entitled to the full $12.2 million or Prestige's claim to the $10.2 million is invalid, there would be no need for Plaintiff to return the funds received from Stein.

### ii.  Condition Precedent

Under California law, "parties may make the creation of a contract subject to a condition precedent."   *Taylor Bus Serv., Inc. v. San Diego Bd. of Educ.*, 195 Cal. App. 3d 1331, 1345, 241 Cal.Rptr. 379 (1987).   "[A] condition precedent is either ... an uncertain event that must happen before the contractual right accrues or the contractual duty arises."   *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313, 24 Cal.Rptr.2d 597, 862 P.2d 158 (1993).   "The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract."   *Realmuto v. Gagnard*, 110 Cal. App. 4th 193, 199, 1 Cal.Rptr.3d 569 (2003).

There are two species of conditions precedent: conditions precedent to formation and conditions precedent to performance.   *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020).   "Where a condition precedent to formation is not satisfied, the proposed bargain between the parties does not become a binding contract."   *Id.*   (citations and alterations omitted).   Conversely, if a condition precedent to performance fails, the parties still have a contract, but they lose the right to enforce at least some of its terms.   *Id.*

Here, it is clear that the settlement release contains a condition precedent.   Paragraph (a) of article 3, titled "Release" states "[s]ubject to compliance with Article 2, Radical hereby release acquits

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

and forever discharges [the Stein Defendants] […] from any and all claims and causes of actions that may exist between them[.]" Stein Decl. at Ex. H.  "'Subject to' is generally construed to impose a condition precedent." *Rubin v. Fuchs, 1 Cal. 3d 50*, 54, 459 P.2d 925, 928 (1969).

The Court holds that the condition was a condition precedent to performance.  The Release clearly states that Plaintiff's obligation to release the Stein Defendants of liability is conditioned on fulfilling the conditions of Article 2.  *See Radical Invs. Ltd. v. Good Vibrations Ent. LLC*, No. 222CV02752SVWAFM, 2022 WL 17225017, at *3 (C.D. Cal. Aug. 2, 2022); *see also Athena Cosms., Inc. v. AMN Distribution Inc.*, No. 220CV05526SVWSHK, 2022 WL 4596549, at *9 (C.D. Cal. Aug. 16, 2022) (finding a condition precedent to performance, where the settlement agreement stated "conditional on Defendants making the Settlement Payment, furnishing Schedules 1 and 2 [ ], and Defendants' delivery of the entire remaining inventory" of Athena-branded products, Plaintiff would release its claims.").

Turning to Article 2 of the Settlement, it lists out five different condition precedents, including articles 2 (b) and 2(d) which state:

- Stein shall use his best endeavours to pursue the IOLTA Recipients and all persons to whom funds were disbursed to out of the IOLTA Account in order to procure the return of all sums previously paid out in connection with the Transaction. […]

- Stein shall provide such correspondence, documentation or other communication related to requests for disbursements out of the IOLTA Account or otherwise related to the Transaction together with evidence of all payments made, as Radical may request.

Stein Decl. at Ex. H.

As to article 2(b), the "best endeavours" clause, the Court finds that triable issue of fact as to whether Stein's actions satisfied the clause.  "[W]hen a contract does not define the phrase "best efforts," the promisor must use the diligence of a reasonable person under comparable circumstances." *California Pines Prop. Owners Assn. v. Pedotti*, 206 Cal. App. 4th 384, 395 (2012).  Best efforts does not mean every conceivable effort.  *Id.*  Nor does it require the require the promisor to ignore its own

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

interests, spend itself into bankruptcy, or incur substantial losses to perform its contractual obligations.
*Id.* Rather, best efforts "requires a party to make such efforts as are reasonable in light of that party's
ability and the means at its disposal and of the other party's justifiable expectations." *Id.* at 394-395.
"The question whether a defendant used its best efforts under the circumstances is generally a factual
issue." *US Ecology, Inc. v. State of California*, 92 Cal. App. 4th 113, 136, 111 Cal. Rptr. 2d 689, 707
(2001).

Here, the Stein Defendants contend that Stein satisfied this clause by: 1) communicating with
representatives of Prestige via email and phone to request return of the $2 million that was disbursed to
Prestige; 2) contacting Moore via email and recommending that Moore return the $4.2 million that was
disbursed to the Moore Defendants; and 3) speaking with an attorney that represented Moore seeking
return of the funds.   Stein Defendants' SUF at ¶¶ 26-28; Stein Decl. at ¶¶ 20-22.

In response, Plaintiff emphasizes that determination of whether Stein's actions complied with the
release is a factual question reserved for the jury.   Plaintiff highlights the fact that Stein is a licensed
attorney, a named partner at DS Law Group, and employs attorneys, paralegals, and a COO to contend
that Stein could have taken more actions beyond to pursue the dispersed funds, beyond sending "just
two emails and a couple of phone calls."   Plaintiff's Opp. at 16.   Specifically, Plaintiff argues that Stein
failed to take reasonable step to secure return of the funds by: 1) not suggesting that Plaintiff find an
attorney to file a lawsuit; 2) not diligently following up with Stein or Prestige; 3) not offering Plaintiff
the use or assistance of any of his firms staff; and 4) not offering to file a lawsuit on Plaintiff's behalf.

Drawing all reasonable inference in Plaintiff's favor, genuine issues of fact remain.
Areasonable jury could find that in light of Stein's experience and capabilities, only sending two emails
and making several phone calls to Moore, Prestige, and their representatives did not constitute
reasonable efforts.

As to article 2(d), at the hearing, the Court asked Plaintiff whether they made any requests for
correspondence, documentation or other communication.   Plaintiff responded that they did and
provided a supplemental filing, which contained an email request by a representative of RIL.   ECF No.
229-1.   The email stated:

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

> Please can you share with us *all instructions and correspondence received by you as Paymaster from Alex Moore* relating to this transaction and in particular relating to disbursements out of your IOLTA Account.

*Id.* (emphasis added).   The WhatsApp messages between Stein and Moore clearly fall within this definition and was not provided to Plaintiff until *after* the lawsuit commenced.   A reasonable juror could find that Stein failed to satisfy this condition precedent, excusing Plaintiff's performance – the release of liability.

Stein contends that he nonetheless complied with the condition, because he provided the emails wherein Moore told him what sums should be disbursed.   According to Stein, the fact that the WhatsApp messages are akin to text messages meant that the message were not in the ambit of Plaintiff's request and that Plaintiff was required to ask "Do you also have texts?" The Stein Defendants' Response to Plaintiff's Supplemental Declaration (ECF No. 231) at. 3.   But as far as the Court is aware of – and likely any ordinary speaker of the English language would agree – a text message is a form of correspondence, and "all instructions and correspondence" means "*all instructions and correspondence.*"[21]

Additionally, the Stein Defendants contend that Stein complied with the condition precedent by providing the WhatsApp messages during discovery.   Specifically, the Stein Defendants emphasize that there was "no due date in the Release for providing documents to RIL."   *Id.*   But "[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed." CAL. CIV. CODE § 1657.   And here, a reasonable jury could find that the Stein Defendants provision of

---

[21] To the extent that the Stein Defendants contend that Stein substantially performed by furnishing his email correspondence to Plaintiff, the Court cannot find as a matter of law that Stein substantially performed.   *See Cline v. Yamaga*, 97 Cal. App. 3d 239, 248 (1979) ("What constitutes substantial compliance or substantial performance is a question of fact to be decided by the trier of fact.").   A reasonable juror could find that Stein's did not substantially perform when he omitted the WhatsApp messages.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

these messages during the pendency of the lawsuit was not within a reasonable time.[22]   Accordingly, the Court DENIES summary judgment as to this claim.[23]

### b.  Negligence – No Duty

The Stein Defendants also contend that they are entitled to summary judgment on Plaintiff's negligence claims because Stein did not owe Plaintiff a duty to pay $10.2 million to Prestige.   But drawing all reasonable inferences in Plaintiff's favor, a reasonable jury could find that Stein had a duty to pay the full $10.2 million to Prestige.   Although the irrevocable pay order sent to Stein designated GVE as the seller, it also stated that payment was due to Astra Zeneca, and listed Prestige's bank account information at the bottom of the irrevocable pay order.   Stein Decl. Ex. A.   From these facts, a reasonable jury could find that irrevocable pay order directed Stein to pay $10.2 million to Prestige based on the addition of Prestige's bank account information on the irrevocable pay order.

Moreover, a reasonable jury could find that Stein had a duty to confirm that Plaintiff had authorized the alleged deviation from the written escrow instructions.   Stein Decl. at Ex. A ("Paymaster shall only release Escrow Funds from the IOLTA Account to Astra Zeneca upon receipt of a fully executed Irrevocable Pay Order in the form set forth in Exhibit A and signed by the buyer and to the Seller[.]"; *See Lee v. Escrow Consultants, Inc.*, 210 Cal. App. 3d 915, 924, 259 Cal. Rptr. 117, 123 (Ct. App. 1989) (holding that an escrow agent had a duty to verify the signature of an amendment to an escrow instruction, where the escrow agreement states "no notice demand or change of instructions shall

---

[22] The Parties do not specify exactly when the WhatsApp messages were disclosed, but the lawsuit was filed around two months after Plaintiff made their request for all communications.   A reasonable jury could find that furnishing these messages two months after they were requested was not within a reasonable time.

[23] The Stein Defendants also contend that Plaintiff's breach of contract claim premised on Stein's alleged failure to satisfy the condition precedents of the Settlement fail as a matter of law, because Plaintiff cannot demonstrate clearly ascertainable damages.   This argument was not raised in the Stein Defendants' moving papers; thus, it is inappropriate for the Court to consider this argument.   *See Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp.2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."); *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) (" '[T]he general rule is that [parties] cannot raise a new issue for the first time in their reply briefs.' ").   However, "a court may consider these matters only if the adverse party is given an opportunity to respond." *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1276 (N.D. Cal. 2014).   Accordingly, Plaintiff is ordered to brief this issue.

|  | : |  |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

be of any effect in this escrow unless given in writing by all parties affected thereby"). Thus, the Court also DENIES summary judgment as to this argument.

### c. Causation

The Stein Defendants next contend that Plaintiff has failed to establish causation for the fraud claims.

"A plaintiff asserting fraud by misrepresentation is obliged to establish a complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1062, 141 Cal. Rptr. 3d 142, 161 (2012) (cleaned up and citations omitted). "The causation aspect of actions for damage for fraud and deceit involves three distinct elements: (1) actual reliance, (2) damage resulting from such reliance, and (3) right to rely or justifiable reliance." *Id.* (citations omitted). "Actual reliance occurs when a misrepresentation is an immediate cause of a plaintiff's conduct, which alters his legal relations and when, absent such representation, the plaintiff would not, in all reasonable probability, have entered into the contract or other transaction." *Id.* at 1062-63. (cleaned up and citations omitted)

Here, the Stein Defendants contend that Plaintiff cannot establish actual reliance on the alleged misrepresentations that Stein made regarding his dispersal of funds, because those statements were made *after* Plaintiff authorized the distribution of funds. In other words, Plaintiff could not have relied on a misrepresentation to their detriment, when the detriment occurred before the misrepresentation.

In response, Plaintiff contends that their theories of fraud are based upon Stein's omission of the multiple WhatsApp conversations he had with Moore, which included: "(1) $40,000 was to go to Stein; (2) $159,980 needed to be sent to GVE; (3) $2 million would have to be set aside for "brokers;" (4) the Vaccines would only cost $2 million, not $10.2 million; (5) $8 million would be payable to GVE as profit; and (6) Moore would "Make Stein a millionaire[.]" Plaintiff's Opposition to the Stein Defendants' Motion for Summary Judgment (ECF No. 213) at 26. "Had RIL been privy to this information, RIL would have discovered the scheme to defraud it[.]" *Id.*

The Stein Defendants contend that the SAC does not base Counts XII and XIII ("Fraud") on Stein's failure to disclose the Whatsapp messages, but on Stein's alleged misrepresentation that he had

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

transferred funds in accordance with the paymaster agreement.   SAC at ¶¶ 285-310.   Thus, the Court should not consider this theory of fraud.

But these facts were raised in the pleadings.   Plaintiff's theory of constructive fraud was raised in the SAC through its discussion of the relationship between Stein and Moore.   SAC at ¶¶ 70-79.   The SAC states that "Stein's relationship with Moore, and his expectation of receiving significant payment from Moore if the transaction had been completed, resulted in a non-waivable conflict of interest, which was not disclosed to RIL at the time RIL was fraudulently induced into executing the Release."   *Id.* ¶ 78.

The SAC also includes allegations that Stein knew that the actual cost of the vaccines was $2 million and that the Moore Defendants were actually making $8 million on the transaction.   *Id.* at ¶ 88.   These allegations were incorporated by reference in Plaintiff's fraud claims against the Stein Defendants, placing the Stein Defendants on notice that these allegations could be included in Plaintiff's fraud claim against the Stein Defendants.   *Id.* at ¶¶ 285, 298; *see Bagdasaryan v. City of Los Angeles*, No. 215CV01008JLSKES, 2018 WL 6113104, at *16 (C.D. Cal. Oct. 22, 2018), report and recommendation adopted, No. 215CV01008JLSKES, 2019 WL 1718827 (C.D. Cal. Feb. 14, 2019) ("Plaintiffs incorporated by reference the factual allegations of the TAC in alleging each individual cause of action, thereby expanding the factual predicate of those claims.").   Accordingly, Defendants were aware of these issues and Plaintiff has not asserted new issues not raised in the pleading.   And as discussed above in VI.a.i., the Court finds triable issues as to Plaintiff's constructive fraud claim.   Accordingly, the Court DENIES summary judgment as to this claim.

### d.  Hold Harmless Provision and Assumption of Risk

The Stein Defendants next argue that the indemnification clause of the original escrow agreement bars Plaintiff's negligence claims.   The indemnification clause states:

> Buyer and Seller shall each indemnify and hold harmless Paymaster from and against any and all claims arising from the Paymaster's services under this Agreement as directed by any applicable Irrevocable Pay Order duly executed and delivered to the Paymaster in accordance with the terms hereof, *save in the event of gross negligence or willful misconduct by the Paymaster.*

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|---|---|---|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

Stein Decl. at Ex. A (emphasis added).   As Plaintiff rightfully points out, the hold harmless provision does not apply to claims for gross negligence or willful misconduct, and here Plaintiff brings claims of civil conspiracy, fraud, and gross negligence against Stein.   Moreover, "California does not recognize a distinct cause of action for 'gross negligence' independent of a statutory basis."   *Eriksson v. Nunnink*, 191 Cal. App. 4th 826, 856 (2011). "Gross negligence is pleaded by alleging the traditional elements of negligence: duty, breach, causation, and damages. However, to set forth a claim for 'gross negligence' the plaintiff must allege extreme conduct on the part of the defendant."   *Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1082 (2011) (internal citation omitted).   Thus, to the extent that the indemnification provision applies, it applies to a cause of action, which Plaintiff is not asserting.

Additionally, the Stein Defendants point to the last clause of the Indemnification clause which states that:

> Buyer and Seller, as a material part of the consideration to Paymaster, hereby assumes all risk of damages to property or injury to persons from any transactions contemplated by the Purchase Agreement arising from any cause and Buyer and Seller hereby waives all claims in respect thereof against Paymaster.

Stein Decl. at Ex. A.   From this clause, the Stein Defendants contend that Plaintiff waived or assumed the risk of any alleged negligence or fraud perpetrated by the Stein Defendants.

The Court disagrees with the Stein Defendants' reading of the escrow agreement.   Although this sentence, out of context, may support the Stein Defendants' argument, such a reading would clearly conflict and render inoperative the first sentence of the article which specifically excludes gross negligence and willful misconduct by the Paymaster from the Indemnification clause. *See Hemphill v. Wright Fam.*, LLC, 234 Cal. App. 4th 911, 915, 184 Cal. Rptr. 3d 326, 328 (2015) ("Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless.") (citations omitted). Accordingly, the Court declines to read the clause as barring Plaintiff's claims for willful misconduct and gross negligence and DENIES summary judgment as to these defenses.

| | : | |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|---|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

     **e.  Civil Conspiracy**

     Finally, the Stein Defendants argues that they are entitled to summary judgment as to Plaintiff's civil conspiracy claim, because civil conspiracy is not a separate cause of action.   Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510–11 (1994) (civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation."). Although the Stein Defendants are correct that civil conspiracy is not a standalone cause of action; if the jury concludes that Stein or Moore committed an underlying tort, a reasonable jury could find that there was a civil conspiracy between Stein and Moore.   Because triable issues of fact remain as to Plaintiff's fraud claim, the Court DENIES summary judgment on this issue.

**VII.    Conclusion**

     For the aforementioned reasons, the Court:
- GRANTS Summary Judgment as to:
  - Plaintiff's breach of contract claim
  - Plaintiff's challenge to the Moore Defendants counter-claim for breach of contract
- DENIES Summary Judgment as to:
  - Plaintiff's alter ego theory of liability
  - Plaintiff's civil conspiracy theory of liability
  - Plaintiff's intentional and negligent misrepresentation claim
  - Plaintiff's conversion claim
  - The Stein Defendant's motion for summary judgment
- ORDERS
  - Plaintiff to show cause as to why their UCL and Unjust enrichment claims should not be dismissed.
  - Plaintiff to brief the issue of why its intentional and negligent misrepresentation claims against the Moore Defendants fall under an exception to the economic loss rule and should therefore proceed to the jury.
  - Plaintiff and the Stein Defendants are further ordered to brief the issue of why Plaintiff should be required to return the $5,474,830 that Stein sent to Plaintiff as

                                                                     :

Initials of Preparer

                                  PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-02752-SVW-AFM | Date | |
|----------|------------------------|------|--|
| Title | *Radical Investments Ltd. v. Good Vibrations Entertainment LLC et al* | | |

part of the Settlement in order for Plaintiff to rescind the Settlement.   As mentioned above in the Court's discussion of Plaintiff's rescission theory, normally rescission requires the parties to an agreement to be returned to their original positions.   At the same time, a rescinding party may not be required to return funds which it had a right to receive independent of the rescinded contract. Thus, Plaintiff may not be required to return the $5,474,830 that it received from Stein, if Plaintiff was entitled to return of those funds irrespective of the Settlement.   In briefing this issue, Plaintiff and the Stein Defendants should consider the following issues:

- ▪ 1) whether under the purchase agreement, escrow agreement, or irrevocable pay order Plaintiff is entitled to a return of the full $12.2 million deposited in the escrow account if Plaintiff did not receive the vaccines; and
- ▪ 2) if Prestige was entitled to receive $10.2 million notwithstanding the failure to deliver vaccines, whether Prestige's claim to the $10.2 million can nonetheless be invalidated.

- o Plaintiff is further ordered to address the Stein Defendants' arguments that Plaintiff cannot demonstrate ascertainable damages as a result of the breach of the Settlement.

Plaintiff's responses shall be due within 21 days of the issuance of this order and may not exceed 15 pages.   The Moore Defendants may submit a response no later than 7 days after Plaintiff has submitted their response, with respect to Plaintiff's UCL and Unjust enrichment claims.   The Stein Defendants shall submit their response no later than 7 days after Plaintiff has submitted their response with respect to whether Plaintiff is entitled to a return of the full $12.2 million.   Plaintiffs shall provide their reply to the Stein Defendants' response no later than 7 days after the Stein Defendants' response is filed.

**IT IS SO ORDERED.**

Initials of Preparer                    :

PMC