GERARDO A. VAZQUEZ (admitted *Pro Hac Vice*)
*gv@gvazquez.com*
RALPH R. LONGO, IV (admitted *Pro Hac Vice*)
*rl@gvazquez.com*
STEVEN B. HERZBERG (admitted *Pro Hac Vice*)
*sh@gvazquez.com*
**VAZQUEZ & ASSOCIATES, P.A.**
1111 Brickell Ave., Suite 1550
Miami, Florida 33131
Tel. (305) 371-8064

MAURICE D. PESSAH (SBN: 275955)
*maurice@pessahgroup.com*
SUMMER E. BENSON (SBN: 326398)
*sbenson@pessahgroup.com*
**PESSAH LAW GROUP, PC**
9100 Wilshire Blvd., Suite 850E
Beverly Hills, CA 90212
Tel. (310) 772-2261

Attorneys for Plaintiff,
RADICAL INVESTMENTS LTD.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADICAL INVESTMENTS LTD., a St. Lucia Company, <br><br> Plaintiff, <br><br> v. <br><br> GOOD VIBRATIONS ENTERTAINMENT LLC, a Florida Limited Liability Company, et al., <br><br><br> Defendants. | Case No. 2:22-cv-02752-SVW-AFM <br><br> *Assigned to the Hon. Stephen V. Wilson* <br><br> **PLAINTIFF RADICAL INVESTMENTS LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4** <br><br> Pretrial Conf: September 11, 2023 <br> Trial Date: September 19, 2023 <br> Time: 9:00 a.m. <br> Courtroom: 10A |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................4

II.  RIL'S CLAIMS RELATED TO THE MOORE DEFENDANTS.....................5

  A.  RIL's Claims and Elements..................................................................6

    1.   Summary of RIL's Claims [L.R. 16-4.1(a),(b)] .........................6

    2.   Key Evidence In Support of RIL's Claims [L.R. 16-4.1(c)].......................11

III. SUMMARY, ELEMENTS, AND KEY EVIDENCE & ARGUMENT IN OPPOSITION TO THE MOORE DEFENDANTS' AFFIRMATIVE DEFENSES, ELEMENT [L.R. 16-4.1(d-f)] ...................................................................14

  A.  Preliminary Statement as to the Moore Defendants' Affirmative Defenses..14

IV.  ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(h)] ........................18

V.   IDENTIFICATION OF ISSUES OF LAW [L.R. 16-4.1(i)] ........................18

VI.  BIFURCATION OF ISSUES [L.R. 16-4.3] ...........................................19

VII. JURY TRIAL [L.R. 16-4.4] .............................................................19

VIII. ISSUES TRIABLE TO THE COURT .................................................19

IX.  ATTORNEYS' FEES [L.R. 16-4.5] .....................................................19

X.   ABANDONMENT OF ISSUES  [L.R. 16-4.6]...........................................19

1

# TABLE OF AUTHORITIES

**CASES**

*AT & T v. Compagnie Bruxelles Lambert*
  94 F.3d 586 (9th Cir. 1996).................................................................7

*Bell Atlantic Corp.* v. *Twombly,*
  550 U.S. 544 (2007) ............................................................... 14, 15

*Granberry v. Islay Investments*,
  9 Cal. 4th 738 (1995)...................................................................18

*Kohler v. Staples the Office Superstore, LLC*,
  291 F.R.D. 464 (2013)..................................................................14

*Lazar v. Superior Ct.,*
  12 Cal. 4th 631 (1996)...................................................................9

*Mesler v. Bragg Mgmt. Co.,*
  39 Cal. 3d 290 (1985).....................................................................7

*Powertech Tech, Inc. v. Tessera, Inc.,*
  No. C 10-945 CW, 2012 WL 174648 (N.D. Cal. 2012) .......................................14

*Robinson Helicopter Co. v. Dana Corp.,*
  34 Cal. 4th 979 .........................................................................9

*Ross v. Morgan Stanley Smith Barney, LLC*,
  No. 2:12–CV–09687–ODW, 2013 WL 1344831 (C.D. Cal. Apr. 2, 2013) .........14

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*,
  99 Cal. App. 4th 228 (2002)..........................................................7

**STATUTES**

28 U.S.C. § 133(II)(A)(2) ....................................................................7
28 U.S.C. § 1391(b) ...........................................................................7

**OTHER AUTHORITIES**................................................................

Judicial Council of California Civil Jury Instructions CACI No. 406 ....................15
Judicial Council of California Civil Jury Instructions CACI No. 432 ...................17

Judicial Council of California Civil Jury Instructions CACI No. 1900 .................10

Judicial Council of California Civil Jury Instructions CACI No. 1903 ..................9

Judicial Council of California Civil Jury Instructions CACI No. 2100 ..................8

Judicial Council of California Civil Jury Instructions CACI No. 3600 .................11

**RULES**

Local Rule 16-4..................................................................................................4

PLAINTIFF RADICAL INVESTMENTS LTD.'S MEMORANDUM OF CONTENTIONS
OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4

Pursuant to Local Rule ("L.R.") 16-4 and this Court's Civil Trial Preparation Order (ECF No. 242), Plaintiff Radical Investments Ltd. ("Plaintiff" or "RIL"), hereby respectfully submits the following Memorandum of Contentions of Fact and Law as it relates to the trial set to commence on September 19, 2023.[1]

## I.   INTRODUCTION

This action concerns the attempted purchase of AstraZeneca COVID-19 vaccines ("Vaccines") by RIL.  RIL was authorized by the government of Barbados to procure COVID-19 vaccines. In order to purchase the Vaccines, RIL was directed by Defendant Alex Lee Moore, Jr. aka "Flex" ("Moore") and his company Good Vibrations Entertainment, LLC ("GVE") (collectively "Moore Defendants"), to deposit $12.2 million with Defendant Charles Stein, Esq. ("Stein") and his law firm, Davidovich Stein Law Group ("DS Law Group") (collectively, "Stein Defendants"), who were tasked with serving as the escrow agent for the transaction.

The Vaccines were to be purchased directly from AstraZeneca, a company which was manufacturing and distributing COVID-19 vaccines at that time. RIL provided Stein with very strict escrow and payment instructions which were memorialized in a Purchase and Sale Agreement ("PSA") and attendant Escrow and Paymaster Agreement ("Escrow Agreement"). Despite RIL's instructions, Stein misappropriated the majority of RIL's funds to his co-Defendants, wiring $6.7 million out of his IOLTA account in a manner which was not authorized by RIL. $4.2 million of RIL's funds were wired to Moore Defendants, despite the

---

[1] This memorandum, while based on diligent inquiry and investigation by RIL, necessarily reflects only the current state of RIL's knowledge, understanding, and belief based upon the information made available to RIL. RIL reserves the right to modify, supplement, revise or amend this Memorandum and to correct any inadvertent errors or omissions that may be contained herein. Furthermore, this Memorandum is provided without prejudice to RIL's right to amend as a result of mistake, error, or oversight, and without prejudice to RIL's using, or relying on, at trial, hearing, or otherwise, deposition testimony omitted from this response as a result of mistake, error, or oversight. Finally, RIL notes that the filing of this Memorandum is complicated by the Moore Defendants' reliance on four affirmative defenses, many of which are not cognizant affirmative defenses at all, but which must still be addressed under L.R.16-4.

plain terms of the Escrow Agreement and PSA stating that GVE would only be paid a $2 million commission if the vaccines were successfully delivered. Further, entirely unbeknownst to RIL, Stein and Moore colluded to convince RIL that true cost of the Vaccines was far greater than it actually was. Their intent was to reap an enormous financial windfall upwards of $8 million dollars. This was based on the price differential between the true purchase price for the Vaccines ($2 million dollars) and the "purchase price" of $10.2 million dollars as misrepresented to RIL.

It is undisputed that the vaccines were neither sourced nor delivered to Barbados. Despite Moore's failure to deliver on his repeated promises that the vaccines were forthcoming, Moore accepted, retained, and ultimately spent or withdrew the entirety of the $4.2 million of his ill-gotten gains. Moore testified at length at deposition, and bank records which RIL has secured via subpoena to Moore's bank, reflect that Moore frivolously spent RIL's funds on luxury vehicles, at nightclubs and gentlemen's clubs, on plastic surgery, and that he either sent to family and friends or withdrew millions of dollars in cash.

While the funds were sent by Stein to the GVE bank account, it is abundantly clear based on the evidence in this case that the $4.2 million sent to GVE by Stein was solely used by Moore for his personal benefit. Moore and GVE were so intertwined that there was ultimately no distinction between the two of them. If the acts which were perpetrated by Moore were treated as by GVE, a company with no assets or capitalization to speak of, an inequitable result would result for Plaintiff.

## II.   RIL'S CLAIMS RELATED TO THE MOORE DEFENDANTS

As to the Moore Defendants, this is a civil action concerning piercing the corporate veil, civil conspiracy, fraud, negligent misrepresentation, unjust enrichment, conversion, breach of contract, and violation of the California Unfair Competition Law ("UCL").

//

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 133(II)(A)(2) based on diversity of citizenship amongst the parties. Venue lies in the Central District of California pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this district and this a judicial district in which the Moore Defendants are subject to personal jurisdiction.

### A. **RIL's Claims and Elements**

#### *1. Summary of RIL's Claims [L.R. 16-4.1(a),(b)]*

**Claim 1: Breach of Contract as to the Moore Defendants**

Summary: RIL has already prevailed on its breach of contract claim against the Moore Defendants, with the Court ruling on Summary Judgment that the Moore Defendants breached the agreement by failing to procure delivery of the vaccines within the requisite time. This Court held that Plaintiff suffered damages of at least $4.2 million  dollars – the amount of funds release to Moore. *See* Order Granting in Part and Denying in Part Plaintiff's and Defendants' Motions for Summary Judgment  (ECF No. 240).

**Claim 2: Piercing the Corporate Veil of GVE.**

Summary: RIL has alleged that the corporate veil of GVE should be pierced in order to hold Moore personally accountable for the actions of GVE. More specifically, RIL alleged that Moore used GVE to misrepresent, defraud, and ultimately to swindle RIL out of nearly $6.7 million dollars, and that GVE's only real purpose was to shield Moore himself. Plaintiff has alleged that Moore comingled funds and other assets, failed to segregate funds of the separate entities, and engaged in unauthorized diversion of GVE's funds for non-corporate uses (i.e. his extravagant personal expenditures). RIL also alleged that GVE was undercapitalized. RIL has highlighted in its allegations as well as in its Motion for Summary Judgment that Moore spent the entirety of the funds which were wired to him by Stein within a few months, leaving the GVE bank account with a negative

balance. Moore also testified at deposition that he squandered approximately $2 million via gifts to family and friends, that he spent hundreds of thousands of dollars at nightclubs and on exotic dancers, as well as purchasing a luxury vehicle. Moore also withdrew over $1 million in cash from the GVE account, presumably for his own purposes unrelated to company business.

Elements: To pierce the Corporate Veil, RIL must show that: (1) There be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow. Factors to consider include [1] inadequate capitalization, [2] commingling of funds and other assets of the two entities, [3] the holding out by one entity that it is liable for the debts of the other, [4] identical equitable ownership in the two entities, [5] use of the same offices and employees, [6] use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, [7] lack of segregation of corporate records, and [8] identical directors and officers.

Source: *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (citations omitted); *see also AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). *Virtualmagic Asia, Inc. v. Fil-Cartoons*, *Inc.*, 99 Cal. App. 4th 228, 245 (2002)

**Claim 3: Conversion**

Summary: RIL has asserted that the Moore Defendants converted the sum of $4.2 million dollars. RIL alleged—and it is undisputed—that Moore, had the transaction been successful, would only be entitled to a maximum commission of $2 million. In reality, Moore received $4.2 million as a result of his illicit side dealings with Stein. Upon receipt, Moore should have immediately returned the funds to either RIL or to Stein's Trust Account, as Moore had no entitlement to them. Despite his knowledge of this, Moore improperly retained the funds, and

either spent or withdrew them in their entirety within a few short months, and never delivered the vaccines. Plaintiff clearly deposited its funds with the intent to procure vaccines. Further, pursuant to the plain terms of the Escrow Agreement, in the event that the vaccines were not delivered, RIL was entitled to a full return of its funds without any deduction, or, in the event AstraZeneca failed to issue an invoice (the invoice Moore provided was forged), RIL would also be entitled to a full return of its funds. Despite Moore not delivering the vaccines, and not providing a proper invoice, and despite RIL's repeated requests that Moore return the funds, Moore retained, and ultimately, wasted Plaintiff's funds.

Elements: To establish a claim for conversion, RIL must show that (1) RIL owned/possessed/had a right to possess the funds; (2) That the Moore Defendants substantially interfered with RIL's property by knowingly or intentionally: (i) taking possession of RIL's funds, (ii) preventing RIL from having access to the funds, (iii) destroying RIL's funds, or (iv) refusing to return RIL's funds after RIL demanded their return; (3) that RIL did not consent; (4) that RIL was harmed, and (5) that the Moore Defendants conduct was a substantial factor in causing RIL's harm.

Source: CACI No. 2100 – Conversion. Judicial Counsel of California Civil Jury Instructions (2023 Edition).

**Claim 4: Intentional & Negligent Misrepresentation; Fraud**

Summary: RIL has claimed that the Moore Defendants made multiple misrepresentations with respect to this matter. RIL claims that Moore misrepresented the ability of the Moore Defendants to procure vaccines, as well as that the Moore Defendants misrepresented that all they stood to gain was $2 million dollars in commission had the vaccines been successfully delivered. The Court notes in its Order on Plaintiff's Motions for Summary Judgment that the economic loss rule may apply to Plaintiff's claims. However, RIL has alleged that it was fraudulently induced to enter the contract at the outset because RIL did not know

that Moore truly stood to profit $8 million, not $2 million in commission, as was represented to RIL. RIL has further alleged that it did not know that the true cost of the vaccines, per Moore and Stein's communications (which were unknown to RIL until the pendency of this lawsuit) was only $2 million, not $10.2 million, as Moore had represented. Had RIL known that Moore truly stood to make four times what he represented, or that the vaccines cost over 80% less than what was represented, RIL *never* would have entered into this transaction, and subsequently would not have lost nearly $6.7 million ($4.2 million to Moore, $2 million to Coley, and approximately $500,000 to a mysterious shipping company based out of Poland/Dubai). Thus, because RIL was fraudulently induced to enter the contract, the economic loss rule should not apply.

<u>Elements:</u> To prove fraud via negligent misrepresentation, RIL must establish that: (1) The Moore Defendants represented to RIL that a fact was true; (2) that the Moore Defendants representation was not true; (3) that although the Moore Defendants may have honestly believed that their representation was true, the Moore Defendants had no reasonable grounds for believing the representation was true when they made it; (4) the Moore Defendants intended that RIL rely on this representation; (5) that RIL reasonably relied on the Moore Defendants representation; (6) that RIL was harmed; (7) that RIL's reliance on the Moore Defendants representation was a substantial factor in causing RIL's harm.

To prove fraud via intentional misrepresentation, RIL must show that: (1) The Moore Defendants made a false representation of a material fact to RIL, (2) that the Moore Defendants had knowledge of the falsity of the statement, (3) that the Moore Defendants had an intent to defraud RIL, (4) that RIL acted in justifiable reliance on the false representation, and (5) resulting damage to RIL.

<u>Source:</u> CACI No. 1903 – Negligent Misrepresentation. Judicial Counsel of California Civil Jury Instructions (2023 Edition); *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 989-90 ("Tort Damages have been allowed in

contract cases where [...]the contract was fraudulently induced") (citations omitted) *Id.* at 993. *Lazar v. Superior Ct.,* 12 Cal 4th 631, 638 (1996). CACI No. 1900 – Intentional Misrepresentation. Judicial Council of California Civil Jury Instructions (2023 Edition).

### Claim 5: Civil Conspiracy:

Summary:  RIL has alleged that the Moore Defendants (along with their co-Defendants) conspired with one another, as well as other individuals and entities, to perpetrate an unlawful act upon RIL. To wit: the Moore Defendants conspired with their co-Defendants through fraudulent means to induce Plaintiff to deposit $12.2 million dollars into Stein's escrow account. Despite the Moore Defendants' inability to procure the vaccines, and their concealment of the true cost of the vaccines (and the true amount that they stood to profit), the Moore Defendants actingin concert with their co-Defendants maintained the charade that they could source and deliver vaccines to RIL.  The Moore Defendants did so to induce Plaintiff to not seek a return of its funds, which—unbeknownst to Plaintiff—had already been grossly misappropriated, and largely spent. Moore and his co-Defendant Stein intentionally concealed vital information about the transaction and the costs and commissions associated therewith in order to defraud, misrepresent, and falsely induce Plaintiff to continue with the transaction, so that Defendants could continue to possess and spend their ill-gotten gains at the expense of Plaintiff; their foregoing actions caused Plaintiff to be damaged in the amount of $6.7 million.

Elements: If a jury finds that any of the Defendants committed fraud and/or conversion that harmed RIL, then they must determine whether each of the Moore Defendants are also responsible for the harm. The Moore Defendants are responsible if RIL proves, respectively, both of the following: (1)That the Moore Defendants were aware that their co-Defendants [and others] planned to defraud

RIL/convert RIL's funds; and, (2)That the Moore Defendants agreed with their co-Defendants [and others] and intended that the fraud/conversion be committed.

Mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make the Moore Defendants responsible for the harm.

A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged coconspirators. RIL is not required to prove that the Moore Defendants personally committed a wrongful act or that they knew all the details of the agreement or the identities of all the other participants.

Source: CACI No. 3600 – Conspiracy. Judicial Counsel of California Civil Jury Instructions (2023 Edition).

**Prayer for Relief – Judgment against the Moore Defendants on all Counts**

Summary: RIL is seeking Judgment on all counts against the Moore Defendants, and damages to be awarded therewith.

### 2. *Key Evidence In Support of RIL's Claims [L.R. 16-4.1(c)]*

Because the facts surrounding RIL's claims arise from the same transaction and set of facts, RIL will address all claims concurrently in this section.

RIL will introduce the following categories of evidence regarding its allegations against the Moore Defendants for each of its claims:

- Testimony from RIL's corporate representative, Olivia Watson, regarding the information Moore either shared or omitted from RIL.
- Testimony from Olivia Watson that at no time did RIL have any knowledge of Moore's side dealings with Defendant Stein prior to and/or during the transaction.
- More specifically, Ms. Watson will testify regarding RIL's lack of knowledge of a plethora of material facts during the duration of the transaction. These material facts include: on or before April 26, 2021, Moore/GVE had provided Stein/DS Law with wire instructions which

conflicted with RIL's Irrevocable Pay Order/Disbursement Instructions; Moore and Stein were working together behind the scenes against RIL's interest, and contrary to RIL's understanding that Stein/DS Law were neutral and non-interested in the transaction.

- Ms. Watson will testify that the funds were not wired out of Stein's escrow account in the manner requested by RIL. She will testify that among other improper wires, Stein wired GVE/Moore $4.2 million of RIL's funds at Moore's direction. She will testify that neither Stein nor Moore notified RIL of the instructions sent by Moore, and that Moore retained these funds.

- Ms. Watson will testify that, based on WhatsApp messages produced during the pendency of the case, Moore had offered Stein money to follow his instructions. RIL did not have knowledge that Stein/DS Law had a financial interest offered to them by Moore to improperly wire the Moore Defendants unauthorized amounts of RIL' funds in order for Stein to secure a monetary bonus promised by Moore;

- RIL did not know that Moore offered to make Stein a millionaire if the transaction closed and RIL was led to believe Stein was a neutral, disinterested third party;

- RIL was unaware that GVE/Moore were actually going to profit in the amount of $8 million, and were intending to make a large "spread" on the vaccine purchase; based on WhatsApp communications between Moore/Stein what were produced by Stein during the litigation,  it appears that the $2 million commission, which Moore/GVE were to receive only if the transaction was successful, was to go to Moore's "brokers", not to Moore/GVE as was agreed upon in the Purchase and Sale and Escrow Agreements.

//

PLAINTIFF RADICAL INVESTMENTS LTD.'S MEMORANDUM OF CONTENTIONS
OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4

- Ms. Watson will testify it was requested by both RIL and Stein, numerous times, that GVE/Moore return the funds which were improperly wired to them by Stein;
- Ms. Watson will testify that the AstraZeneca invoice appears now to be a forgery.
- Ms. Watson will testify that RIL never received the vaccines.
- Ms. Watson will testify that GVE/Moore were to only receive a commission if the transaction were successful.
- Ms. Watson will further testify generally as to what occurred before, during, and after the transaction.
- Ms. Watson will testify that Moore provided RIL with opinion letters from two American attorneys to further induce RIL to deposit its funds into Stein's escrow account. RIL will introduce bank statements and testimony from Mr. Moore that will show that Moore frivolously spent, squandered, transferred, or withdrew the entirety of the $4.2 million of RIL's funds which were improperly wired to him by Moore on luxury cars, exotic dancers, nightclubs, plastic surgery, on family and friends, and on other lavish expenditures.
- Further documentary evidence which supports Ms. Watson's testimony, business records, including e-mail correspondence, WhatsApp Messages, and various business and bank records procured by RIL during the course of the transaction and during the pendency of this lawsuit.

//
//
//
//
//

PLAINTIFF RADICAL INVESTMENTS LTD.'S MEMORANDUM OF CONTENTIONS
OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4

### III. SUMMARY, ELEMENTS, AND KEY EVIDENCE & ARGUMENT IN OPPOSITION TO THE MOORE DEFENDANTS AFFIRMATIVE DEFENSES, ELEMENTS [L.R. 16-4.1(D-F)]

The Moore Defendants plead a counterclaim against RIL. However, RIL prevailed and was awarded Summary Judgment as to as to GVE's counterclaim. (*See* ECF No. 240.)

### A. Preliminary Statement as to the Moore Defendants' Affirmative Defenses

With respect to the Moore Defendants' Affirmative Defenses, each is factually deficient and should be stricken. In the Ninth Circuit, it is not entirely clear whether the heightened pleading standard of under *Twombly* and *Iqbal* applies to affirmative defenses. *See*, *e.g.*, *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 468 (2013) (discussing that "the Ninth Circuit has not yet adopted the Twombly/Iqbal pleading standard for affirmative defenses," and that "it is clear this point of law is unresolved."). While district courts have split on this issue, most have found that the heightened pleading standard does apply to affirmative defenses. *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 10–945 CW, 2012 WL 1746848, at *4 (N.D. Cal. 2012) (collecting cases). Absent further direction from the Supreme Court or the Ninth Circuit, and consistent with this Court's prior orders, the Court will apply the *Twombly*/*Iqbal* standard to affirmative defenses. *See*, *e.g.*, *Ross v. Morgan Stanley Smith Barney, LLC*, No. 2:12–CV–09687–ODW, 2013 WL 1344831, at *1–3 (C.D. Cal. Apr. 2, 2013) (interpreting *Iqbal* and *Twombly* to apply to affirmative defenses).

Applying the *Twombly*/*Iqbal* standard to affirmative defenses serves an important purpose: requiring at least some valid factual basis for pleading an affirmative defense and preventing defendants from adding defenses in an answer based on pure conjecture. *Id*. at *2; *see also Ins. Co. of the State of*

*Pennsylvania v. Citizens of Human. LLC*, No. SACV1301564JVSDFMX, 2014 WL 12689271 (C.D. Cal. Feb. 24, 2014).

Most succinctly stated, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Based on the foregoing, it is clear that the Moore Defendants' Affirmative Defenses offer no factual content or support of any significance whatsoever. Thus, they should be summarily stricken.

RIL hereby incorporates by reference this preliminary statement in opposition to each of the affirmative defenses discussed hereinbelow.

### First Defense: Apportionment of Fault/Comparative Fault[2]

Summary: The Moore Defendants argue that to the extent that they were negligent, that Plaintiff was also negligent in that it did not perform adequate due diligence as it relates to Defendants Prestige Pegasus/Coley. This Affirmative Defense is deficient as pled and RIL is entitled to judgement as a matter of law.

Elements: The Moore Defendants must show that Defendants or Plaintiff were negligent or were a substantial factor in causing the damages Plaintiff is alleged to have suffered. If the Moore Defendants can show that Plaintiff or other Defendants were a substantial factor in causing RIL's damages, any award made in favor of the plaintiff in this case must be reduced by an amount equal to the percentage of the fault of others in causing or contributing to the damages as alleged in the complaint. CACI No. 406 – Apportionment of Responsibility – Judicial Counsel of Civil Jury Instructions (2023 Edition).

---

[2] The Moore Defendants do not title their Affirmative Defenses, they merely state that "Defendants aver and allege that to the extent it is negligent, that Plaintiff is negligent. More particularly, they state Plaintiff had the opportunity to and could have performed due diligence as it related to Prestige Pegasus and Coley but failed to do so". RIL assumes this is Affirmative Defense is meant to be an "Apportionment of Fault/Comparative Fault" defense, although it is woefully insufficient as pled and should be stricken for the reasons articulated in Plaintiff's preliminary statement above.

Key Evidence & Argument in Opposition: RIL incorporates the Key Evidence In Support of its Claims in Section (II)(A)(2) above. RIL further states that the Moore Defendants conveniently ignore the fact that no other person, not Coley, not Prestige Pegasus, and certainly not Plaintiff, wrongfully retained $4.2 million of Plaintiff's funds, or was conspiring with escrow agent Stein to reap enormous profits. The facts of this case are clear: the Moore Defendants wrongfully received, retained, and ultimately spent $4.2 million of RIL's funds. No apportionment or comparative fault defense can absolve the Moore Defendants of culpability. Further, this Defense is improperly pled and is entirely unsupported by facts or evidence, and thus, RIL is entitled to judgment as a matter of law as to this Defense.

### Second Defense: Moore Individually Not Liable[3]

Summary: The Moore Defendants state that an agreement was executed with GVE, not Moore, and that Moore himself is not individually liable because he did not individually sign or guarantee the contract. This Affirmative Defense is deficient as pled and RIL is  entitled to judgement as a matter of law.

Elements: Plaintiff refers to its claim of "Piercing the Corporate Veil" in Section (II)(A)(1) above.

Key Evidence & Argument in Opposition: RIL incorporates the Key Evidence In Support of its Claims in Section (II)(A)(2) above, and further states that the evidence RIL will present at trial will show that due to Moore's actions, the corporate veil of GVE should be pierced, and Moore should be held individually liable. Further, this Defense is improperly pled and is entirely unsupported by facts or evidence, and thus, RIL is entitled to judgment as a matter of law as to this Defense.

---

[3] This Affirmative Defense also does not have a title; thus, Plaintiff will assume the Moore Defendants intended it to be that Moore is not individually liable.

**Third Defense: Intervening and Superseding Cause[4]**

Summary: The Moore Defendants state that RIL is barred in whole or in part from prosecuting its causes of action due to intervening and superseding causes, and that the negligence or wrongful conduct of other parties was an intervening or superseding cause of the loss, injury, or conduct of which RIL has complained. This Affirmative Defense is woefully deficient as pled and RIL is  entitled to judgement as a matter of law.

Elements: To prevail on this Affirmative Defense, The Moore Defendants must show by a preponderance of the evidence that they are not responsible for RIL's harm because of the misconduct of a third party. To avoid legal responsibility for the harm, the Moore Defendants must prove all of the following: (1) a third party's conduct occurred after the conduct of Moore Defendants; (2) a reasonable person would consider a third party's  conduct a highly unusual or an extraordinary response to the situation; (3) Moore Defendants did not know and had no reason to expect that a third party would act in a [negligent/wrongful] manner; and (4) the kind of harm resulting from a third party's conduct was different from the kind of harm that could have been reasonably expected from Moore Defendants conduct. Judicial Council of California Jury Instructions CACI No. 432 (2023 Edition).

Key Evidence & Argument in Opposition: RIL incorporates the Key Evidence In Support of its Claims in Section (II)(A)(2) above, and further states that the Moore Defendants have not proven *any* of the elements required for this Affirmative Defense. The Moore Defendants also do not address how Prestige/Coley's acts excuse the Moore Defendants actions – *to wit,* Coley did not force GVE/Moore to retain and spend $4.2 million dollars of RIL's funds. Further,

---

[4] This Affirmative Defense is also untitled. Plaintiff will thus have to assume that this Affirmative Defense (which is one cursory, entirely unsupported sentence) is meant to state that Defendants Prestige Pegasus and Coley defrauded both RIL and the Moore Defendants and thus were an intervening and superseding cause of Plaintiff's Damages.

this Defense is improperly pled and is entirely unsupported by facts or evidence, and thus, RIL is entitled to judgment as a matter of law.

**Fourth Defense: Set-Off[5]**

Summary: The Moore Defendants state to the extent they are liable, that they are entitled to setoff for all sums paid by the Stein Defendants. This Affirmative Defense is woefully deficient as pled and RIL is entitled to judgement as a matter of law.

Elements: The right to a setoff is based on the equitable principle that when parties in litigation hold cross-demands for money, one demand should be applied against the other and the plaintiff may recover the balance due, if any. *See, Granberry v. Islay Investments*, 9 Cal. 4th 738, 744 (1995).

Key Evidence & Argument in Opposition: RIL incorporates the Key Evidence In Support of its Claims in Section (II)(A)(2) above. This Defense is improperly pled and is entirely unsupported by facts or evidence, and thus, RIL is entitled to judgment as a matter of law as to this Defense. Further, this is not a Defense which necessitates a response from Plaintiff at this time.

## IV.    ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(h)]

RIL does not anticipate any major evidentiary issues in this case. The vast majority of exhibits and evidence in this case are business records which were maintained by RIL during and after the transaction, or business records which were obtained during the pendency of this lawsuit via discovery requests or via subpoenas to third parties.

## V.    IDENTIFICATION OF ISSUES OF LAW [L.R. 16-4.1(i)]

With respect to Issues of Law, RIL refers to the Court's Order on the Plaintiff's and Defendants' Motions for Summary Judgment (ECF No. 240). The most germane issue of law in this case is whether or not a sufficient evidentiary basis exists to pierce the corporate veil of Defendant GVE and find Defendant

---

[5] This Affirmative Defense is also untitled.

Moore personally liable. RIL contends that GVE was inadequately capitalized, was used for an improper and illegal purpose, was a mere instrumentality, and that Moore used these funds, to which he had absolutely zero entitlement, solely for his own purposes. GVE was a mere façade for Moore to conduct his illicit and fraudulent dealings, and the only real purpose of GVE was to perpetuate this scheme. GVE was a mere shell Moore used to attempt to escape personal liability for his own actions. RIL argues that to allow him to escape personal liability, based on the totality of these circumstances, would be inequitable.

## VI.   BIFURCATION OF ISSUES [L.R. 16-4.3]

This trial will be against the Moore Defendants on all issues, there is no bifurcation of any issues to be tried.

## VII.   JURY TRIAL [L.R. 16-4.4]

In its operative pleading, RIL has not demanded a trial by jury for this upcoming trial. However, the Court issued an Order that this case will proceed to a Jury Trial. RIL has made clear via various motions to the Court that it prefers a bench trial in this case.

## VIII.   ISSUES TRIABLE TO THE COURT

1. Whether RIL shall prevail on its claims against the Moore Defendants.
2. The Moore Defendants' Affirmative Defenses

## IX.   ATTORNEYS' FEES [L.R. 16-4.5]

RIL has demanded attorneys' fees with respect to its Civil Conspiracy Claim.

## X.   ABANDONMENT OF ISSUES  [L.R. 16-4.6]

RIL's claims as to Unjust Enrichment, Violation of the UCL.

Dated: August 21, 2023

Respectfully submitted,

VAZQUEZ & ASSOCIATES
*Attorney for RIL*
1111 Brickell Avenue Suite 1550
Miami, Florida 33131
Telephone (305) 371-8064
Facsimile (305) 371-4967

By:    ***/s/ Ralph R. Longo IV***
RALPH R. LONGO IV, ESQ.
Florida Bar No.: 124169
RL@GVazquez.com

PLAINTIFF RADICAL INVESTMENTS LTD.'S MEMORANDUM OF CONTENTIONS
OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4