| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11 | GERARDO A. VAZQUEZ (admitted *Pro Hac Vice*)<br>gv@gvazquez.com<br>RALPH R. LONGO, IV (admitted *Pro Hac Vice*)<br>rl@gvazquez.com<br>STEVEN B. HERZBERG (admitted *Pro Hac Vice*)<br>sh@gvazquez.com<br>**VAZQUEZ & ASSOCIATES, P.A.**<br>1111 Brickell Ave., Suite 1550<br>Miami, Florida 33131<br>Tel. (305) 371-8064<br><br>MAURICE D. PESSAH (SBN: 275955)<br>maurice@pessahgroup.com<br>**PESSAH LAW GROUP, PC**<br>9100 Wilshire Blvd., Suite 850E<br>Beverly Hills, CA 90212<br>Tel. (310) 772-2261<br><br>Attorneys for Plaintiff,<br>RADICAL INVESTMENTS LTD. |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RADICAL INVESTMENTS LTD., a St. Lucia Company,<br><br>Plaintiff,<br><br>v.<br><br>GOOD VIBRATIONS ENTERTAINMENT LLC, a Florida Limited Liability Company, et al.,<br><br>Defendants. | Case No. 2:22-cv-02752-SVW-AFM<br><br>**PLAINTIFF RADICAL INVESTMENTS LTD'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT GOOD VIBRATIONS ENTERTAINMENT LLC**<br><br>[*Filed concurrently with the Declarations of Ralph Longo, Esq., and Ms. Olivia Watson*]<br><br>Hearing Date: March 25, 2024<br>Time: 1:30 p.m.<br>Courtroom: First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, California 90012 |

PLAINTIFF RADICAL INVESTMENT LTD'S MOTION FOR DEFAULT JUDGMENT

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 25, 2024, at 1:30 p.m. Pacific Time, or as soon thereafter as the matter may be heard before the Honorable Stephen V. Wilson in Courtroom 10A of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiff Radical Investments Ltd. ("Plaintiff") will and hereby does move for Default Judgment against Defendant Good Vibrations Entertainment LLC ("Defendant") on Plaintiff's claims. The clerk has previously entered default of said Defendant on January 26, 2024.

This motion is made under the Federal Rules of Civil Procedure, Rule 55(b)(2). The motion is supported by this notice, the concurrently filed memorandum of points and authorities, all declarations and exhibits submitted concurrently herewith; and all other documents filed in the civil action, which bear upon the issues presented.

DATED: February 22, 2024

                                  **VAZQUEZ & ASSOCIATES, P.A.**

                                  By: */s/Ralph R. Longo IV*
                                      Gerardo Vazquez, Esq.
                                      Ralph R. Longo IV, Esq.
                                      Steven B. Herzberg, Esq.
                                      Attorneys for Plaintiff,
                                      RADICAL INVESTMENTS LTD.

PLAINTIFF RADICAL INVESTMENT LTD'S MOTION FOR DEFAULT JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

### A. Introduction

This case concerns the sale of AstraZeneca COVID-19 vaccines ("Vaccines"). In April of 2021, to meet pandemic-driven demand, Plaintiff Radical Investments Ltd. ("Plaintiff" or "RIL") was contracted to provide Vaccines to the Government of Barbados. On April 16, 2021, Plaintiff entered into a Purchase and Sale Agreement (the "Contract") with Defendant Good Vibrations Entertainment, LLC ("GVE"). GVE entered into the Contract by and through Defendant Alex "Flex" Moore ("Moore," and together with GVE, "Defendants"). Pursuant to the Contract, GVE was to supply RIL with one million Vaccines in exchange for $12,200,000, with $10,200,000 ($10.20 per dose) due upon execution of the Contract and the remaining $2,000,000 to paid as a commission to Defendant GVE ("GVE Commission"). There is no dispute that the Contract constitutes a legally enforceable agreement.

Per the Contract, delivery of the Vaccines was to be determined upon RIL's receipt of an original bill of lading ("Bill of Lading"), evidencing delivery of the Vaccines via air to Barbados. The Vaccines were to be inspected prior to shipment and a report was to be prepared by the Swiss verification and inspection service known as SGS prior to RIL's acceptance of the Vaccines.

Upon execution of the Contract, RIL was to deposit the sum of $12,200,000.00 (collectively the "Funds") into an escrow account (the "Escrow Account") belonging to co-Defendants Charles Z. Stein, Esq. ("Stein" or "Escrow Agent") and the Davidovich Stein Law Group ("DS Law Group") (collectively, "Stein Defendants"), to be released in accordance with the terms of the parties' escrow agreement ("Escrow Agreement"). Specifically, $10,200,000.00 was to be paid directly to the Manufacturer/AstraZeneca assuring delivery of the Vaccines.

//

The terms of the Escrow Agreement provided, *inter alia*, as follows:

> WHEREAS the Buyer [Plaintiff] desires assurances that the funds placed into the escrow account will be released to the Manufacturer of the Products [AstraZeneca] in accordance with the terms of the Purchase Agreement and that the commission due to Seller [Defendants] **will be released only upon delivery of the original bill of lading** to the Buyer in respect of the Products shipped by AstraZeneca to the Buyer within the timeline stated in the Purchase Agreement.

(**Exh.** B to Watson Decl., ¶16) (emphasis added).

Following delivery of the Vaccines, and full performance of the aforementioned terms of the Contract, RIL would thereafter authorize Escrow Agent, in writing, to release from its Escrow Account the remaining sum of $2,000,000.00 – the GVE Commission. GVE's Commission was only to be paid upon delivery of the Vaccines to RIL.

By April 26, 2022, despite Plaintiff's depositing of the Funds (over twelve million dollars), Defendants had neither delivered the Vaccines nor provided Plaintiff a copy of the Bill of Lading from AstraZeneca to RIL. Accordingly, RIL was not amenable to execute the irrevocable pay order to release the Funds then entrusted to the Escrow Agent absent further assurances. It was evident to RIL that GVE could not deliver the Vaccines. Anticipating that RIL would demand the return of the Funds, on or about April 27, 2021 and May 3, 2021, Moore, without any authority, instructed Escrow Agent Stein to make two wire transfers totaling $4,200,000.00 to GVE, promising Stein that he would "[make] him a millionaire." (pp. 0005-0006 **Exh.** 7 to Longo Decl., ¶10)

Using GVE as a vehicle to commit his fraudulent scheme, Moore induced RIL to believe that GVE had a successful track record of fulfilling COVID-19 vaccine and related equipment orders. In reality, Moore used GVE as a conduit to receive the $4,200,000.00, which he in turn siphoned to his personal account to finance his extravagant lifestyle. (**Exh.** 16 to Longo Decl., ¶ 19)

On or about May 29, 2021, RIL discovered that Escrow Agent Stein had unlawfully wired GVE $4,200,000.00, $2.2 million more than Moore would have received even had the transaction successfully closed. Moore has testified, and bank records show, that Moore quickly emptied GVE's bank accounts by way of substantial cash withdrawals and mysterious wire transfers for his own personal benefit. It is evident that Moore used GVE for the purpose of committing fraud against Plaintiff. (**Exh.** 15 to Longo Decl., ¶18)

In fact, as described above, Moore spent the funds on luxury vehicles, at gentlemen's clubs, nightclubs, and on financing the lifestyles of multiple exotic dancers (i.e., jewelry, plastic surgery, and expensive travel). (*e.g.* account credits/withdrawals on 5/3/21; 5/6/21; 5/21/21; 5/24/21; 6/21/21; 6/7/21; 6/8/21; 6/16/21; 6/21/21; 6/22/21; 6/25/21; 6/28/21; 6/30/21; 7/6/21; 7/7/21; 7/8/21; 7/12/21 ; 7/13/ 21; 7/16/21; 7/19/21; 7/21/21; 7/22/21; 7/26/21; 7/28/21; 8/2/21; 8/5/21; 8/9/21; 8/10/21; 8/20/21; 8/23/21. **Exh.** 15 to Longo Decl., ¶18) Moore withdrew $10,000.00 in cash from the GVE bank account *more than one-hundred times*. (*Id.*) He withdrew other large sums of cash as well between May and August of 2021. (*Id.*)  In fact, Moore withdrew so much money and spent RIL's funds so frivolously that by the beginning of September 2021, Moore had spent, withdrawn, or transferred the entirety of the $4.2 million RIL deposited into the Escrow Account and that Stein unlawfully released to GVE/Moore. (*Id.*)

Moore, by his own admission at his deposition, testified that he gave away approximately two million dollars to "friends and family." pp. 164-65 **Exh.** 16 to Longo Decl., ¶19). Indeed, Moore testified that he spent hundreds of thousands of dollars on exotic dancers in West Palm Beach, Florida, stating that he gave a woman named "Nyla Tito" whom he met at the Rhino Gentleman's club $300,000.00-$500,000.00. (pp. 165-66 **Exh.** 16 to Longo Decl., ¶19). Moore went on to testify that he gave up to $100,000.00 to another exotic dancer named Roxie Romero, whom he also met at the Rhino Gentleman's club in West Palm Beach,

Florida. (*Id.* at 169.) Moore testified that he gave his mother Joyce Moore $200,000.00. (*Id.* at 170.) Moore further testified that he spent $100,000.00 on a BMW 850i. (*Id.* at 177.) A review of Moore's bank records corroborates that he frivolously spent millions of Plaintiff's funds on luxury goods and various forms of entertainment. (**Exh.** 15 to Longo Decl., ¶18)

Defendant GVE never delivered the Vaccines, and RIL has yet to recover the monies unlawfully obtained by GVE. (Watson Decl., ¶42) Further, the record in this case is clear, as will be discussed further below, that GVE is no longer represented by counsel. GVE's prior counsel was allowed to withdraw from this matter by this Court on August 22, 2023 (ECF No. 309). Now, nearly six months later, despite being given multiple opportunities by this Court, GVE has failed to have counsel of record appear on its behalf. Thus, pursuant to the case law discussed herein, GVE as a company cannot and has not defended itself in this action, and thus Default Judgment should be granted.

## II.   ARGUMENT

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has provided seven factors for consideration by the district court to determine whether to enter a default judgment, known commonly as the *Eitel* factors. They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, **all well-pled factual allegations in the complaint are taken as true**,

except those with regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (emphasis added).

Here, the *Eitel* factors favor the entry of default judgment.

As to the first factor, this factor weighs in favor of default judgment because there is a significant possibility of prejudice to Plaintiff if default judgment is not entered. GVE has failed to defend this action for nearly six (6) months, and is presently unrepresented by counsel, despite this Court providing ample opportunity for GVE to obtain new counsel. Plaintiff will be left without a remedy for the injury suffered if default judgment is not entered. This factor favors entry of default judgment.

As to the second and third factors, the merits of Plaintiff's claim are clearly sufficient, as the vast majority of the facts in this case are undisputed. As stated above, at his deposition, GVE's sole member Mr. Moore admitted that he freely spent the funds which he was not entitled to, and that the vaccines were never delivered to Barbados. As stated above, it is undisputed that the $4,200,000.00 in funds were deposited into the GVE bank account without any justification whatsoever, and that they were quickly and frivolously spent. With respect to the sufficiency of Plaintiff's Complaint, Plaintiff's allegations are extremely detailed and well pled, and Plaintiff has already obtained partial Summary Judgment against GVE based upon Plaintiff's claims. (ECF No. 240). Thus, these factors also weigh in favor of default judgment.

As to the fourth factor, the sum of money at stake is $4,200,000.00. This amount is significant. *See Eitel*, 782 F.2d at 1472 (finding that the fact that $2,900,000 was at stake, when considered in light of the parties' dispute as to material facts, supported the court's decision not to enter judgment by default). At the same time, the fraudulent conduct alleged is extensive and involves multiple breaches of contract and fraud on GVE's behalf. Notably, the amount of alleged misappropriated funds was more than double what GVE would have received in the

event the transaction had been successfully consummated. Additionally, GVE spent all the funds it wrongfully received, as is undisputed in this action. All things considered, the amount requested does not weigh strongly against entry of default judgment.

As to the fifth factor, there is no dispute of material fact. Here, as stated, the vast majority of facts in this case are undisputed, and are supported by extensive documentation, which Plaintiff has made a part of the record and incorporated via the attached declarations and the exhibits thereto. For the sixth factor, it is unlikely that default was the result of excusable neglect because GVE has had nearly six months to obtain new counsel to defend itself in this action. This Court, on the record, advised GVE's sole member Alex Moore multiple times of GVE's need to obtain new counsel. The Court's warnings were not heeded, and GVE has remained unrepresented. Thus, this factor, therefore, weighs in favor of default judgment.

Finally, the seventh factor weighs in favor of default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate." *J & J Sports Prods, Inc. v. Concepcion*, No. 10-CV-05092, 2011 U.S. Dist. LEXIS 60607, at *5, 2011 WL 2220101 (N.D. Cal. June 7, 2011). Thus, the general policy in favor of merits decisions is outweighed by the specific considerations made in this case.

DATED: February 22, 2024

                                                   **VAZQUEZ & ASSOCIATES, P.A.**

                                                   By: */s/Ralph R. Longo IV*
                                                         Gerardo Vazquez, Esq.
                                                         Ralph R. Longo IV, Esq.
                                                         Steven B. Herzberg, Esq.
                                                         Attorneys for Plaintiff,
                                                         RADICAL INVESTMENTS LTD.

8